Neville L. Johnson, State Bar No. 66329
Douglas L. Johnson, State Bar No. 209216
Daniel B. Lifschitz, State Bar No. 285068
**Johnson & Johnson LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Tel:  310-975-1080
Fax:  310-975-1095
njohnson@jjllplaw.com
djohnson@jjllplaw.com
dlifschitz@jjllplaw.com

Steven A. Schwartz
**Chimicles Schwartz Kriner
& Donaldson-Smith LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
steveschwartz@chimicles.com
*Pro Hac Vice Forthcoming*

Edward Siedle
**Law Offices of Edward Siedle**
17789 Fieldbrook Circle West
Boca Raton, FL 33496
Tel.: 561-703-5958
esiedle@aol.com
*Pro Hac Vice Forthcoming*

Robert J. Kriner, Jr.
Emily L. Skaug
**Chimicles Schwartz Kriner
& Donaldson-Smith LLP**
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel.: 302-656-2500
Fax: 302-656-9053
rjk@chimicles.com
els@chimicles.com
*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCES FISHER,<br><br>Plaintiff, on behalf of herself and all other similarly and situated members of the SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS,<br><br>v.<br><br>SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND | **CASE NO.** 2:21-cv-5215<br><br>**APPLICATION FOR LEAVE TO FILE PROPOSED COMPLAINT PURSUANT TO 29 U.S.C. § 501** |

RADIO ARTISTS, a labor organization; GABRIELLE CARTERIS, an individual; DAVID P. WHITE, an individual; DUNCAN CRABTREE-IRELAND, an individual; RAY RODRIGUEZ, an individual; MICHAEL PNIEWSKI, an individual; DAVID HARTLEY-MARGOLIN, an individual; JOHN T. MCGUIRE, an individual; JOHN CARTER BROWN, an individual; AND LINDA POWELL, an individual.

Defendants.

## APPLICATION FOR LEAVE TO FILE PROPOSED COMPLAINT PURSUANT TO 29 U.S.C. § 501(b)

1. Pursuant to Section 501(b) of the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 501(b) ("LMRDA"), Plaintiff Frances Fisher, by and through her counsel, hereby respectfully requests leave to file the attached proposed complaint to pursue claims under the LMRDA against Defendants Gabrielle Carteris, David White, Duncan Crabtree-Ireland, Ray Rodriguez, John T. McGuire, Michael Pniewski, David Hartley-Margolin, John Carter Brown and Linda Powell as officers, agents, shop stewards and/or representatives of The Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA" or the "Union") for violations of the duties provided under 29 U.S.C. § 501(a).

2. Plaintiff, Frances Fisher is and has been at all times material hereto a SAG-AFTRA dues-paying member. Plaintiff has been a member of the SAG-AFTRA National Board and First Vice President of the SAG-AFTRA Los Angeles Local since August 29, 2019.

3. Section 501(b) of the LMRDA authorizes suit by union members against "any officer, agent, shop steward, or representative of any labor organization" for violations of Section 501(a) "in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure

an accounting or other appropriate relief for the benefit of the labor organization" upon a finding of good cause by the court. 29 U.S.C. § 501(b) ("No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte.").

4. By this verified application and exhibits attached hereto, Plaintiff demonstrates good cause and justification for prompt filing of Count II of the proposed Complaint for violations of 29 U.S.C. § 501(b).

## Procedural Background of Count II

5. SAG and AFTRA merged into SAG-AFTRA in 2012. Proposed Compl. ¶ 3.[1] The health plans of SAG and AFTRA continued thereafter separately, until they were merged, effective January 1, 2017. *Id*. ¶ 35. The Union touted the merger as "strengthen[ing] the overall financial health of the plan while ensuring comprehensive benefits for all participants," and "provid[ing] a robust foundation of healthcare for our membership, which the [SAG-AFTRA Health Plan] [T]rustees can continue to improve upon, nurture and grow over time." *Id*. ¶¶ 3, 33, 37.

6. On August 12, 2020, the Union and the SAG-AFTRA Health Plan announced dramatic changes to the Union health benefit structure ("Benefit Cuts") that targeted senior SAG-AFTRA members. *Id*. ¶ 7. The Benefit Cuts effectively eliminated benefits under the SAG-AFTRA Health Plan for thousands of Union members and their families by (i) drastically increasing the eligibility requirements for many members to qualify for SAG-AFTRA Health Plan coverage, (ii) prohibiting members age 65 and older taking a Union pension from using any residual earnings toward the income requirement to qualify for SAG-AFTRA Health Plan coverage, and (iii) modifying the earnings period for Union members age 65

---

[1] All paragraph references ("¶ XX") are to the Proposed Complaint unless otherwise indicated.

and older to run from October 1 to September 30, cutting short the time available to these members to obtain the sessional earnings necessary to meet the increased eligibility requirements and retroactively eliminating coverage for which some members had already qualified. Contributions from employers pursuant to the operative CBAs, which are based on *all* (both sessional and residual) earnings of each member, will continue to fund the SAG-AFTRA Health Plan but will be essentially worthless to these members whose SAG-AFTRA Health Plan coverage has been eliminated by the Benefit Cuts. Union dues, likewise, will continue to be assessed based on *all* earnings of the member. *Id*.

7. Plaintiff and other SAG-AFTRA members, including those of the SAG-AFTRA Los Angeles Local Union's leadership, scrambled to form SOSHealthPlan.com to assist jilted members with their abrupt loss of SAG-AFTRA Health Plan coverage. *Id*. ¶¶ 62-63. Plaintiff and the SOS Health Plan team also pursued potential legal redress, which culminated in a putative class action under ERISA against the SAG-AFTRA Health Plan Trustees. *Id*. ¶¶ 12-13, 62-64 (citing *Edward Asner et al v. The SAG-AFTRA Health Fund et al*, No. 2:20-cv-10914 (C.D. Cal. Dec. 1, 2020)).

8. In response to the SOS Health Plan team's efforts and the resulting *Asner* action, the Union, through Union Officers and Executive Staff, stridently defended the Benefit Cuts and the actions of the Health Plan Trustees, many of whom are highly compensated Union staff who are subject to potential personal liability in the *Asner* action. *Id*. ¶¶ 13-16, 65-76.

9. In announcing the Benefit Cuts in August 2020, the Trustees of the SAG-AFTRA Health Plan, many of whom served dually as Union Officers or Executive Staff, informed the members that they had known for two-years that the SAG-AFTRA Health Plan's benefit structure was unsustainable and that they had worked nearly every day on how to save it. *Id*. ¶¶ 8, 48. The primary funding source of the SAG-AFTRA Health Plan is derived from contributions to the Health Plan

4
APPLICATION FOR LEAVE TO FILE PROPOSED COMPLAINT PURSUANT TO 29 U.S.C. § 501

pursuant to the Union's collective bargaining agreements ("CBAs"). *Id*. ¶¶ 5, 8, 37. In those two years, three major Union CBAs were negotiated and approved under the process established by the SAG-AFTRA Constitution. *Id* ¶ 8, 39, 50-53. Defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski and Powell undertook to represent the Union and its members in the Union's collective bargaining process and accepted and approved the Union's proposal packages without disclosing to other Union representatives or the membership the dire funding peril facing the SAG-AFTRA Health Plan or that the proposal packages and negotiated terms were insufficient to sustain the SAG-AFTRA Health Plan's benefits. *Id*. ¶¶ 10, 48, 51-56. Defendants Powell and Brown voted as members of the National Board without disclosing the same to their fellow National Board members or the membership. *Id*.

10. On December 18, 2020, Plaintiff sent the Demand under the LMRDA to the Union and the National Board to sue to recover damages for breaches of fiduciary duty and the duty of fair representation against: (1) the members of Union leadership who are SAG-AFTRA Health Plan Trustees; (2) the members of Union leadership who participated in the CBA negotiations and approvals with knowledge of the ongoing activity by the SAG-AFTRA Health Plan Trustees to change the benefit structure; and (3) the members of Union leadership who approved the Benefit Cuts changes or who have used their Union positions and the Union to support the Benefit Cuts and oppose the claims by Union members challenging the Benefit Cuts. *Id*. ¶ 71. The Demand is attached as Exhibit A to the Proposed Complaint.

11. The Demand was placed on the agenda for the SAG-AFTRA National Board's regularly scheduled meeting on February 6, 2021. *Id*. ¶ 72. The Union staff retained the same counsel defending the SAG-AFTRA Health Plan Trustees in the *Asner* action, and representing the SAG-AFTRA Health Plan in opposing Union members' EEOC claims, to address the Demand. *Id*. ¶ 73. Counsel not surprisingly

recommended the National Board to vote against proceeding with claims. *Id*. ¶ 74. The National Board was not provided with any materials concerning the Demand or work or recommendation of Counsel, prior to the meeting. *Id*. The National Board voted not to proceed on the Demand. *Id*.

12. After the SAG-AFTRA National Board's vote, Jeffrey Bennett, SAG-AFTRA Deputy Counsel, requested Plaintiff advise the Court of SAG-AFTRA's request to have notice of any filing and an opportunity to appear and file responsive papers. Plaintiff provided a copy of this application and exhibits by email to SAG-AFTRA c/o Mr. Bennett.

## Count II Defendants

13. Count II of the Proposed Complaint seeks relief from the following individuals within the scope of Section 501(a), 29 U.S.C. 501(a).

14. At all times relevant to Count II, Defendant Gabrielle Carteris served as an officer to the Union as SAG-AFTRA President, as a member of the SAG-AFTRA National Board and as a member of the SAG-AFTRA Executive Committee. As SAG-AFTRA President, Carteris served as the chair of the negotiating committees for each of the three CBAs at issue in the Proposed Complaint. Carteris has used her position as President of SAG-AFTRA to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

15. At all times relevant to Count II, Defendant David P. White served as Union Executive Staff as SAG-AFTRA National Executive Director and Chief Negotiator, and as a Union-appointed SAG-AFTRA Health Plan Trustee. White has used his position as SAG-AFTRA's National Executive Director to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

16. At all times relevant to Count II, Defendant Ray Rodriguez served as Union Executive Staff as SAG-AFTRA Chief Contracts Officer and as a Union-

appointed SAG-AFTRA Health Plan Trustee. Rodriguez has used his position as SAG-AFTRA's Chief Contracts Officer to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

17. At all times relevant to Count II, Defendant Duncan Crabtree-Ireland served as Union Executive Staff as SAG-AFTRA Chief Operating Officer and General Counsel of SAG-AFTRA and as a Union-appointed SAG-AFTRA Health Plan Trustee. Crabtree-Ireland has used his position as SAG-AFTRA's Chief Operating Officer and General Counsel to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

18. At all times relevant to Count II, Defendant John T. McGuire served as Union Executive Staff as SAG-AFTRA Senior Counsel and as a Union-appointed SAG-AFTRA Health Plan Trustee. As SAG-AFTRA National Senior Advisor, McGuire has used his position to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

19. At all times relevant to Count II, Defendant Linda Powell served as a Union-appointed SAG-AFTRA Health Plan Trustee and as a member of the SAG-AFTRA National Board. Powell has used her position as a SAG-AFTRA National Board member to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

20. At all times relevant to Count II, Defendant John Carter Brown served as a Union-appointed SAG-AFTRA Health Plan Trustee and as a member of the SAG-AFTRA National Board. Brown has used his position as a SAG-AFTRA National Board member to support and defend the Benefit Cuts and to challenge claims by Union members directed at the Benefit Cuts, including the Demand.

**Count II of the Proposed Complaint**

21. Count I of the Proposed Complaint asserts that collective bargaining Defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Powell and Brown ("CB Defendants") acted adversely to SAG-AFTRA and subverted the SAG-AFTRA collective bargaining mechanism established by the Union Constitution, in breach of their fiduciary duties to the Union under Section 501(a) of the LMRDA.

22. Count II of the Proposed Complaint asserts that Defendants Carteris, White, Crabtree-Ireland, Rodriguez, McGuire, Brown and Powell disloyally misused the Union's assets and machinery to defend the Benefit Cuts and protect the SAG-AFTRA Health Plan Trustees' personal interests in a manner adverse to the interests of SAG-AFTRA and its members.

23. As alleged more particularly in the Proposed Complaint, between 2019 and 2020, CB Defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski and Powell undertook to represent the Union and its members in the Union's collective bargaining mechanism established by the Union Constitution for the 2019 Commercials, the 2019 Netflix and the 2020 TV/Theatrical CBAs. These CB Defendants knew the dire funding issues facing the SAG-AFTRA Health Plan through their service as SAG-AFTRA Health Plan Trustees yet did not disclose this information to any of the other Union representatives in the bargaining process. *Id*. ¶¶ 10, 48, 51-60. They undertook primary positions to represent the Union and the membership in the Union's collective bargaining processes for the CBAs. *Id*. These CB Defendants accepted and approved the proposal packages and terms knowing that they included inadequate funding provisions to sustain the SAG-AFTRA Health Plan's benefit structure. *Id*.

24. CB Defendants Brown and Powell knew the material health plan funding information and inadequacy of the contract terms to sustain the health benefit structure, participated as National Board members in the National Board's consideration and approval of the CBA terms, approved the CBAs and submitted to the membership for ratification the 2020 TV/Theatrical and 2019 Commercials

CBAs. *Id*. In doing so, CB Defendants Brown and Powell, as National Board members, failed to disclose the known funding information and that the contracts were inadequate to sustain the health benefit structure.

25. After the Benefit Cuts were announced on August 12, 2020, Plaintiff and other Union members formed the SOS Health Plan team. The team launched SOSHealthPlan.com as a means of providing clarity to Union members affected by the Benefit Cuts by, among other things: offering comprehensive information on the Benefit Cuts, educating participants on secondary health insurance options apart from Via Benefits (SAG-AFTRA Health Plan's promoted provider), providing Union members with periodic email updates, and fostering member communication by way of a platform for rank-and-file and high-profile Union members alike to speak out about the Benefit Cuts via videos and testimonials. The SOS Health Plan website and social media pages on Twitter, Instagram and Facebook allowed Union members to have their questions answered, interact socially and express their views on the Benefit Cuts. SOS Health Plan also partnered with social media powerhouse Eleven Films to make a social media video featuring over 20 high-profile rank-and-file Union members speaking out about the draconian changes to the SAG-AFTRA Health Plan. *Id*. ¶¶ 13 n.2, 62.

26. SOS Health Plan also held two nationwide virtual "town hall" meetings advertised via word-of-mouth that were open to all Union members and the public. The virtual town halls were co-led by Plaintiff (First Vice President of the SAG-AFTRA Los Angeles Local), Patricia Richardson (President of the Los Angeles Local), and David Jolliffe (Second Vice President of the Los Angeles Local) and run by Shaan Sharma (Los Angeles Local Board Member), their purpose being to hear from the Union members and listen to their concerns. The Los Angeles Local is the Union's largest local, representing approximately 80,000 members, or 50% of the Union. The first town hall took place on August 14, 2020 - just two days after the Benefit Cuts were announced - garnered approximately 600 members and lasted

eight hours. The second, held August 21, 2020, garnered approximately 500 members and lasted seven hours. Each of the meetings continued until every single question was asked and answered. *Id*. ¶ 63.

27. After compiling the suggestions from members and hearing their heartbreaking stories and feelings of betrayal by their Union, the Los Angeles leadership undertook to explore potential legal redress. Consequently, Union members filed an action in this Court on December 1, 2020 under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*, for breaches of fiduciary duty by the Health Plan Trustees in connection with the 2017 Health Plan Merger and thereafter, ultimately leading to the Benefit Cuts. *See Edward Asner et al v. The SAG-AFTRA Health Fund et al*, No. 2:20-cv-10914 (C.D. Cal. Dec. 1, 2020). The CB Defendants are represented in the *Asner* action by long-time counsel to AFTRA, the AFTRA Health Fund and the SAG-AFTRA Health Plan, Cohen, Weiss & Simon LLP ("CWS"). CWS has provided legal services to SAG-AFTRA since approximately 2016. *Id*. ¶ 12.

28. On December 4, 2020, the Union disseminated an email to participants which stated that members were being "misled" by "a deliberate public and social media campaign spreading misinformation and fear." *Id*. ¶ 65. The Union's loyalty was immediately aligned with the SAG-AFTRA Health Plan and its Trustees, supporting and defending the Benefit Cuts in a manner adverse to the Union members' allegations against the CB Defendants as alleged herein. Defendants White, Crabtree-Ireland, Rodriguez and McGuire are compensated by the Union for their role as National Executive Staff members and owe a duty of loyalty to the Union and its members, not to the SAG-AFTRA Health Plan Trustees or to themselves. Union members had a substantial interest in knowing the SAG-AFTRA Health Plan's needs, including its funding issues and any structural changes it faced, in order to formulate rational proposal packages and bargain in the best interests of the members.

29. On December 6, 2020, SOS Health Plan released a response to the December 4, 2020 Union message that outlined incontrovertible facts in order to expand and clarify the alleged concerns of spreading "misinformation." *Id*. ¶ 67.

30. On December 14, 2020, at the direction of Defendants Carteris and White, Union staff called a special meeting of the National Board to launch a thinly veiled attack on the SOS Health Plan initiative and its supporters by passing a "RESOLUTION RE[GARDING] [THE] ACCURACY OF INFORMATION ABOUT HEALTH PLAN CHANGES." *Id*. ¶ 68. In the press release announcing the resolution, SAG-AFTRA President Defendant Carteris was quoted as follows: "We have grown increasingly concerned about the flood of misleading information being spread by certain websites and social media accounts about our Health Plan. . . . Like many scams that target the elderly, the misinformation being spread is endangering our most vulnerable members." *Id*. ¶ 69. The release further provided that "numerous board members from across the country expressed their disappointment with those individuals who are leading the misinformation campaign and outrage with their actions, and urged the board to direct the union to protect its membership by ensuring accuracy around the changes." *Id*. Also on December 14, 2020, the SAG-AFTRA Health Plan released a video of a SAG-AFTRA member "discussing Five Facts about the Health Plan change" with links to the aforementioned December 4, 2020 Union message and the Union December 14, 2020 press release. *Id*. ¶ 70.

**Plaintiff Has Fulfilled All Pre-Suit Requirements**

31. On December 18, 2020, Plaintiff sent the Demand under the LMRDA to the Union and the National Board to sue to recover damages for breaches of fiduciary duty and the duty of fair representation against: (1) the members of Union leadership who are SAG-AFTRA Health Plan Trustees; (2) the members of Union leadership who participated in the CBA negotiations and approvals with knowledge of the ongoing activity by the SAG-AFTRA Health Plan Trustees to change the

APPLICATION FOR LEAVE TO FILE PROPOSED COMPLAINT PURSUANT TO 29 U.S.C. § 501

benefit structure; and (3) the members of Union leadership who approved the Benefit Cuts or who have used their Union positions and the Union to support the Benefit Cuts and oppose the claims by Union members challenging the Benefit Cuts. *Id*. ¶ 71.

32. In response, on December 28, Jeffrey Bennett, SAG-AFTRA Chief Deputy General Counsel, wrote to Plaintiff that the Union had received Plaintiff's "demand that the Union initiate litigation under Section 501 of the LMRDA" and that the request would be addressed by the National Board at its next meeting on February 6, 2021. *Id*. ¶ 72.

33. On February 5, 2021, Susan Davis of CWS contacted Plaintiff to discuss the February 6, 2021 meeting. CWS is representing the CB Defendants and others in the *Asner* action, and is opposing members' EEOC claims relating to the Benefit Cuts. Davis informed Plaintiff that Plaintiff would be requested at the National Board meeting to present the Demand and would then be directed to recuse herself from the meeting during Davis's "presentation" to the National Board, of which Plaintiff is a member. Plaintiff requested Davis to provide the basis and authority supporting recusal. Davis did not respond. *Id*. ¶ 73.

34. At the meeting, Plaintiff stated that although she believed the Demand did not impair her capacity or duty as a member of the National Board to impartially evaluate and consider the Demand and related information, she would comply with the recusal directive on only an involuntary basis, reserving all rights. *Id*. ¶ 74.

**Plaintiff Possesses Good Cause to File Proposed Complaint**

35. Section 501(a) of the LMRDA, 29 U.S.C. § 501(a), holds officers of labor unions "to the highest standards of responsibility and ethical conduct in administering the affairs of the union." *SEIU v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1044 (9th Cir. 2013). "The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such

organization and its members as a group." 29 U.S.C. § 501(a). The statute further provides:

> It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. § 501(a).

36. The good cause requirement "is intended as a safeguard to the affected union against harassing and vexatious litigation brought without merit or good faith." *Horner v. Ferron*, 362 F.2d 224, 228 (9th Cir. 1966). For that reason, the court considers, "to a certain extent, the merits of a case in determining whether there is good cause to support a § 501(a) claim." *Pimentel v. Aloise*, 2018 U.S. Dist. LEXIS 196122, *43-44 (N.D. Cal. Nov. 16, 2018).

37. "Under the current Ninth Circuit approach, review is limited and designed simply to ensure that a suit is not frivolous or undertaken for the purpose of harassment." *Id*. at 45 (rejecting approach to good cause that construed the term to mean that plaintiff "must show a reasonable likelihood of success and, with regard to any material facts he alleges, . . . a reasonable ground for belief in their existence."). *See Saunders v. Hankerson*, 312 F. Supp. 2d 46, 65 (D.D.C. 2004) (determining that plaintiff alleged "at least a colorable claim" under § 501 upon "taking all facts and circumstances into consideration, including plaintiff's efforts to invoke internal remedies, his demands on the union, refusal of the union to act in accordance with those demands, plaintiff's reasonable likelihood of success, and his

reasonable ground for belief in his claims") (internal citations omitted); *Horner v. Ferron,* 362 F.2d 224, 228-29 (9th Cir. 1966) ("limited scope" of inquiry at "good cause" determination juncture confined to defenses that do not require resolution of complex questions of law going to substance of case).

38. As detailed herein, Plaintiff alleges that Defendants disloyally misused their fiduciary positions and the assets and machinery of SAG-AFTRA to defend the Benefit Cuts and themselves, adversely to the interests and claims of the Union and its membership arising from the breaches of fiduciary duty and breach of the Union's duty of fair representation relating to the Union's 2019 Commercials, 2019 Netflix and 2020 TV/Theatricals collective bargaining process and approvals under the Union Constitution.

39. Accordingly, Plaintiff has brought this action on behalf of SAG-AFTRA.

40. Based on the foregoing, the exhibits attached hereto, and the Proposed Complaint filed herewith, Plaintiff respectfully requests the Court grant leave to file a claim under LMRDA Section 501, denominated as Count II to obtain damages and such other relief as the Court may deem appropriate.

DATED: June 25, 2021 **JOHNSON & JOHNSON LLP**

By: /s/ Neville L. Johnson
Neville L. Johnson
Douglas L. Johnson
Daniel B. Lifschitz
Johnson & Johnson LLP
439 N. Canon Drive, Suite 200
Beverly Hills, CA 90210
Tel.: 310-9751080
Fax.:310-975-1095
njohnson@jjllplaw.com
djohnson@jjllplaw.com
dlifschitz@jjllplaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven A. Schwartz
**Chimicles Schwartz Kriner**
**& Donaldson-Smith LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
steveschwartz@chimicles.com

Robert J. Kriner, Jr.
Emily L. Skaug
**Chimicles Schwartz Kriner**
**& Donaldson-Smith LLP**
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel.: 302-656-2500
Fax: 302-656-9053
rjk@chimicles.com
els@chimicles.com

*and*

Edward Siedle
**Law Offices of Edward Siedle**
17789 Fieldbrook Circle West
Boca Raton, FL 33496
Tel.: 561-703-5958
esiedle@aol.com

*Attorneys for Plaintiff and the Classes*

---

15
APPLICATION FOR LEAVE TO FILE PROPOSED COMPLAINT PURSUANT TO 29 U.S.C. § 501

# VERIFICATION

I, Frances Fisher, declare that I am the Plaintiff in the above-captioned action. I am familiar with the contents of the foregoing: (1) Plaintiff's Verified Application for Leave to File Proposed Complaint and (2) the [Proposed] Complaint. Furthermore, information contained in the foregoing documents is true, based on my personal knowledge, except as to those matters which are based on information and belief or which were provided by my attorney, as to those matters, I am informed and believe that they are true.

I am making this Verification under the penalty of perjury under the laws of the State of California. Executed 21 June, 2021, in Los Angeles California.

_____
Frances Fisher