1   DANIELLE LEONARD (SBN 218201)
2   dleonard@altber.com
    JEFFREY B. DEMAIN (SBN 126715)
3   jdemain@altber.com
    CORINNE F. JOHNSON (SBN 287385)
4   cjohnson@altber.com
5   Altshuler Berzon LLP
    177 Post St., Suite 300
6   San Francisco, CA 94108
    Telephone: (415) 421-7151
7   Facsimile: (415) 362-8064
8
9   *Attorneys for Defendants David P. White, Ray*
    *Rodriguez, John T. McGuire, John Carter*
10  *Brown, and Linda Powell and Proposed*
    *Defendants Gabrielle Carteris and Duncan*
11  *Crabtree-Ireland*
12
13
                    UNITED STATES DISTRICT COURT
14                  CENTRAL DISTRICT OF CALIFORNIA
15
    Francis Fisher,                    CASE NO.: 2:21-cv-5215-CAS-JEM
16
          Plaintiff,                   **PROPOSED 29 U.S.C. §501 CLAIM**
17                                     **DEFENDANTS' COMBINED**
                                       **MEMORANDUM OF POINTS AND**
18        v.                           **AUTHORITIES IN SUPPORT OF**
                                       **MOTION TO DISMISS AND IN**
19                                     **OPPOSITION TO PLAINTIFF'S**
    SAG-AFTRA, *et al.*,               **VERIFIED APPLICATION FOR**
20                                     **LEAVE TO ADD CLAIM PURSUANT**
          Defendants.                  **TO 29 U.S.C. §501(a)**
21
22
23                                     Date: January 24, 2022
24                                     Time: 10:00 a.m.
                                       Judge:  The Hon. Christina A. Snyder
25
26
27
28

MPA iso Mot. to Dismiss and Opp. to Plf.'s App. to Add 501 Claim, No. 2:21-cv-5215-CAS-JEM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

I.   INTRODUCTION ................................................................................ 1

II.  BACKGROUND .................................................................................. 3

   A.   SAG-AFTRA ................................................................................ 3

   B.   The SAG-AFTRA Health Plan ..................................................... 5

   C.   2020 Health Plan Changes ........................................................... 5

III. ARGUMENT ...................................................................................... 7

   A.   The Court Should Dismiss the DFR Claim.................................. 7

      1.   Rule 12(b)(6) legal standard ............................................. 7

      2.   The DFR claim is barred by the statute of limitations ...... 8

      3.   DFR claims cannot be brought against individual union officials ... 10

      4.   Even if Plaintiff's DFR claim had been timely and properly
           raised against the Union, not its officials, Plaintiff's allegations
           fail to state a DFR claim as a matter of law..................... 11

         i.   Bargaining outcomes.................................................. 12

         ii.  Nondisclosure in bargaining and ratification. .......... 13

   B.   The Court Should Deny Leave to File the Section 501 Claim or, in
        the Alternative, Should Dismiss the Section 501 Claim............ 15

      1.   Plaintiff does not have good cause to file a Section 501 claim ....... 16

      2.   Plaintiff's allegations cannot state a Section 501 claim as a
           matter of law ................................................................. 18

          i.     Plaintiff *cannot* bring a Section 501 claim predicated on harm to individual union members from the challenged bargaining outcomes or nondisclosures ................................................................ 19

          ii.    The challenged Union communications fall outside Section 501 ................................................................ 22

IV.   CONCLUSION ................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ackley v. W. Conf. of Teamsters*,
   958 F.2d 1463 (9th Cir. 1992)....................................................................13, 14

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986).....................................................................9, 14

*Addington v. US Airline Pilots Ass'n*,
   606 F.3d 1174 (9th Cir. 2010).........................................................................9

*Addington v. US Airline Pilots Ass'n*,
   791 F.3d 967 (9th Cir. 2015).................................................................... 12-13

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
   499 U.S. 65 (1991) ..................................................................................11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................8

*Atkinson v. Sinclair Refining Co.*,
   370 U.S. 238 (1962) .......................................................................................10

*Bishop v. Air Line Pilots Ass'n, Int'l*,
   159 L.R.R.M 2005, 1998 WL 474076 (N.D. Cal. Aug. 4, 1998), *aff'd
   mem.*, 211 F.3d. 1272 (9th Cir. 2000) ...........................................................14

*Carpenters Local Union 721 v. Limon*,
   No. CV 18-8470 DSF, 2020 WL 3124222 (C.D. Cal. Apr. 23, 2020)..............23

*Carter v. Smith Food King*,
   765 F.2d 916 (9th Cir. 1985).........................................................................11

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011)...................................................................10, 11

*Commer v. Am. Fed'n of State, Cty. & Mun. Emps.*,
   272 F.Supp.2d 332 (S.D.N.Y. 2003), *aff'd*, 390 F.3d 203 (2d Cir.
   2004)...............................................................................................................17

*Conley v. Int'l Bhd. Of Elec. Workers, Local 639*,
 810 F.2d 913 (9th Cir. 1987)................................................................8

*Cowger v. Rohrbach*,
 868 F.2d 1064 (9th Cir. 1989)....................................................15, 16

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010)...............................................................3

*DelCostello v. Int'l Bhd. of Teamsters*,
 462 U.S. 151 (1983)..............................................................................8

*Demetris v. Transp. Workers Union*,
 862 F.3d 799 (9th Cir. 2017)......................................................12, 13

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014)................................................................8

*Erkins v. Bryan*,
 785 F.2d 1538 (11th Cir. 1986)..........................................................24

*Evangelista v. Inlandboatmen's Union of Pac.*,
 777 F.2d 1390 (9th Cir. 1985)...........................................................11

*Ford Motor Co. v. Huffman*,
 345 U.S. 330 (1953)............................................................................12

*Galindo v. Stoody Co.*,
 793 F.2d 1502 (9th Cir. 1986)..............................................................8

*Garcia v. Serv. Emps. Int'l Union*,
 No. 2:17-CV-01340-APGNJK, 2018 WL 10721071 (D. Nev. July
 24, 2018), *aff'd*, No. 19-16863, 2021 WL 1255615 (9th Cir. Apr. 5,
 2021)............................................................................................17, 18

*Guzman v. Bevona*,
 90 F.3d 641 (2d Cir.1996)..................................................................18

*Hanahan v. Lucassen*,
 764 F.Supp. 194 (D.D.C. 1991)........................................................17

*Hearn v. McKay*,
    Case No. 07-CV-60209 (JEM), 2008 WL 2694005 (S.D. Fla. July 1,
    2008), *aff'd*, 603 F.3d 897 (11th Cir. 2010) ........................................................22

*Hearn v. McKay*,
    603 F.3d 897 (11th Cir. 2010) ...........................................................................20

*Hoffman v. Kramer*,
    362 F.3d 308 (5th Cir. 2004) .............................................................................21

*Horner v. Ferron*,
    362 F.2d 224 (9th Cir. 1966) .......................................................................16, 17

*John Doe No. 1 v. Am. Fed'n of Gov't Emps.*,
    No. 20-1558 (JDB), 2021 WL 3550996 (D.D.C. August 11, 2021) ...........17, 25

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008) .....................................................................14, 22

*Kahn v. Hotel & Rest. Emps. & Bartenders Int'l Union*,
    469 F.Supp. 14 (N.D. Cal. 1977), *aff'd sub nom. Kahn v. Hotel &
    Rest. Emps. & Bartenders Int'l*, 597 F.2d 1317 (9th Cir. 1979) ................. 15-16

*Kerr v. Shanks*,
    466 F.2d 1271 (9th Cir. 1972) .................................................................... 16-17

*Landry v. Air Line Pilots Ass'n Int'l*,
    901 F.2d 404 (5th Cir. 1990), *opinion modified on denial of reh'g*
    (Apr. 27, 1990) ....................................................................................................9

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1993), *as amended* (Mar. 8, 1994) ................................23

*Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters*,
    920 F.2d 1047 (1st Cir. 1990) ...........................................................................24

*Marquez v. Screen Actors Guild, Inc.*,
    525 U.S. 33 (1998) ......................................................................................11, 12

*Merritt v. Int'l Ass'n of Machinists*,
    No. 2:06–CV–14342, 2008 WL 5784439 (E.D. Mich. Sept. 22,
    2008)...................................................................................................................14

*Nayab v. Cap. One Bank (USA), N.A.*,
  942 F.3d 480 (9th Cir. 2019)...................................................................7

*Nellis v. Air Line Pilots Ass'n*,
  815 F.Supp. 1522 (E.D. Va. 1993), *aff'd*, 15 F.3d 50 (4th Cir. 1994) ..............20

*NLRB v Amax Coal Co.*,
  453 U.S. 322 (1981) ..........................................................................21

*Noble v. Sombrotto*,
  84 F.Supp.3d 11 (D.D.C. 2015) ......................................................20, 21

*O'Hara v. Teamsters Union Local No. 856*,
  151 F.3d 1152 (9th Cir. 1998).......................................................*passim*

*Phillips v. Osborne*,
  403 F.2d 826 (9th Cir. 1968)........................................................*passim*

*Pimentel v. Aloise*,
  No. 18-CV-00411-EMC, 2018 WL 6025613 (N.D. Cal. Nov. 16,
  2018)..............................................................................................17

*Ray v. Young*,
  753 F.2d 386 (5th Cir. 1985)................................................................24

*Rivera v. Peri & Sons Farms, Inc.*,
  735 F.3d 892 (9th Cir. 2013) .................................................................8

*Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*,
  718 F.3d 1036 (9th Cir. 2013)......................................................*passim*

*Shek v. Cal. Nurses Ass'n/Caregivers & Healthcare Emps. Union*,
  No. C-10-1483 EMC, 2010 WL 3155830 (N.D. Cal. Aug. 9, 2010)................11

*Spellacy v. Airline Pilots Ass'n – Int'l*,
  156 F.3d 120 (2d Cir. 1998)................................................................14

*Stelling v. Int'l Bhd. of Elec. Workers Local Union No. 1547*,
  587 F.2d 1379 (9th Cir. 1978)........................................................15, 23

*Stone v. Writer's Guild of Am. W., Inc.*,
  101 F.3d 1312 (9th Cir. 1996)................................................................8

*Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters,*
   82 F.3d 303 (9th Cir. 1996)..................................................................16

*Tunac v. United States,*
   897 F.3d 1197 (9th Cir. 2018)...............................................................3

*Yager v. Carey,*
   910 F.Supp. 704 (D.D.C. 1995) ...........................................................21

*Zapp v. United Transp. Union,*
   879 F.2d 1439 (7th Cir. 1989)...............................................................9

**Federal Statutes**

29 U.S.C.
   § 159(a) ..................................................................................................1
   § 185(b) ................................................................................................10
   § 186(c)(5).......................................................................................5, 20
   § 501....................................................................................*passim*
   § 501(a) ........................................................................................15, 19
   § 501(b)........................................................................15, 16, 17, 19
   § 1104(a)(1).........................................................................................21
   § 1104(a)(1)(A)(i) ...............................................................................21
   § 1108(c)(3)...........................................................................................5

**Rules**

Federal Rule of Civil Procedure
   Rule 12(b)(6) ...............................................................................1, 3, 7
   Rule 26(b).............................................................................................1

**I. INTRODUCTION**

Defendants David P. White, Ray Rodriguez, John T. McGuire, John Carter Brown, and Linda Powell, and Proposed Defendants Gabrielle Carteris and Duncan Crabtree-Ireland, (collectively "Proposed 501 Defendants") are sued in their capacities as union officials of the Screen Actors Guild - American Federation of Television and Radio Artists ("SAG-AFTRA" or "the Union"). These Proposed 501 Defendants, who are separately represented from Defendant SAG-AFTRA and the other defendant union officials who were not named in the Section 501 claim, hereby move the Court with respect to both claims brought against them. They therefore hereby respectfully request that the Court (1) dismiss Plaintiff's claim for breach of the duty of fair representation ("DFR") under 29 U.S.C. §159(a) against Defendants White, Rodriguez, McGuire, Brown, and Powell[1] for failure to state a claim under Federal Rule of Civil Procedure 26(b), and (2) either deny Plaintiff leave to file a claim for breach of fiduciary duty under 29 U.S.C. §501 against the Proposed 501 Defendants or dismiss that claim once it is filed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This case concerns changes to eligibility for health benefits announced by the Board of Trustees of the SAG-AFTRA Health Fund (which is a legally separate entity from the Union) in August 2020. The allegations in this case are largely duplicative of a previously-filed ERISA case before this Court, initiated in December 2020, that seeks to hold the Heath Fund's Board of Trustees (including some of the Proposed 501 Defendants) liable for those changes and for related conduct pursuant to their fiduciary duties in their separate role as ERISA fiduciaries. *See Asner v. SAF-AFTRA Health Fund*, No. 2-20-cv-10914-CAS-JEM (C.D. Cal.). The above-captioned case, which was only recently initiated in June 2021, seeks to hold the

---

[1]  Proposed Defendants Carteris and Crabtree-Ireland are not named in the DFR claim.

1    Proposed 501 Defendants liable pursuant to their fiduciary duties as Union officials,

2    based largely on the same alleged misconduct challenged in the *Asner* ERISA case.

3          Plaintiff's Proposed First Amended Complaint ("FAC") blurs the lines

4    between her two claims, but at bottom a DFR claim is a claim against a *union* for an

5    alleged breach of the union's duty *to its members*, whereas a Section 501 claim is a

6    claim against individual *union officials* for an alleged breach of their duties *to the*

7    *union itself.*  The courts and Congress have made clear that the scope of both claims

8    is limited by the well-established federal policy of avoiding unnecessary intrusion

9    into the internal affairs of labor unions.  The Proposed 501 Defendants move to

10   dismiss the DFR claim and oppose leave to file the Section 501 claim because

11   Plaintiff's allegations on their face fall far outside the proper scope of either claim.

12         Critically, the six-month statute of limitations for DFR claims had long passed

13   by the time Plaintiff initiated this litigation.  Plaintiff contends that the Proposed 501

14   Defendants should have negotiated for greater employer contributions to the Health

15   Fund and should have disclosed certain information about the Health Fund to Union

16   staff and members during negotiations for three collective bargaining agreements.

17   But the Complaint's allegations show Plaintiff was aware of all of the alleged

18   misconduct no later than August 2020 – more than 10 months before her first filing.

19   In addition, Ninth Circuit law is clear that DFR claims can only be brought against

20   the union itself – not against individual union officials.  And even taking Plaintiff's

21   allegations as true, they fail as a matter of law to state a DFR claim because the

22   courts have long held that unions are free to make tradeoffs between various

23   members' interests in collective bargaining as long as they are based on legitimate

24   union objectives, and because Plaintiff cannot establish, as required by Ninth Circuit

25   precedent, that disclosing any additional information would have changed the

26   bargaining outcomes she complains of.

27         The Section 501 claim is similarly misguided, and cannot simply substitute for

28   Plaintiff's failure to timely plead a DFR claim.  The Ninth Circuit has long made

clear that Section 501 claims require harm to the union itself as an organization, and *cannot* be predicated on harm to individual union members.  But Plaintiff's allegations here focus exclusively on harm to union *members* as a result of the actions she contends were a breach of fiduciary duty.  That is, Plaintiff's concern regarding alleged nondisclosures and bargaining outcomes involving impacts on the Health Fund does not allege harm to the Union itself as an organization, but *necessarily* only to individual union members who were impacted by the eligibility changes at issue.  The law is clear: Plaintiff cannot pursue those harms in a Section 501 claim, and Plaintiff's allegations on their face fail to meet the legal standards under which her Application for Leave to File her Section 501 claim must be judged.

For these and the reasons set forth below, the Court should dismiss the DFR claim and either deny leave to file the Section 501 claim or dismiss it once filed.

## II. BACKGROUND

### A. SAG-AFTRA

Plaintiff alleges that SAG-AFTRA is a union that represents more than 160,000 entertainment industry employees, including but not limited to actors.[2]  Dkt. 20 (Compl.) ¶¶39, 77; Dkt. 23-1 (Prop. FAC) ¶¶42, 86; *see also* Leonard Decl. Ex. 1 (SAG-AFTRA Constitution) at 1.[3]  The Proposed 501 Defendants are or were elected or appointed SAG-AFTRA officers and employees (generally referred to herein as "union officials').  Compl. ¶¶25-32; Prop. FAC ¶¶26-35.

---

[2] The Proposed 501 Defendants disagree with and dispute many factual allegations in the Complaint.  However, pursuant to the Rule 12(b)(6) standard, they treat as true only the Complaint's non-conclusory allegations solely for the purpose of this motion to dismiss.

[3] The Proposed FAC contains the same factual allegations as the Complaint, plus the addition of Defendants Carteris and Crabtree-Ireland and a proposed Section 501 claim and class. For the Court's convenience, we provide parallel citations to the Complaint and FAC. The Court can consider the SAG-AFTRA Constitution and the Health Fund Trust Agreement because those documents are incorporated by reference into the complaint. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018); Compl. ¶¶6, 39-45 (Constitution); ¶¶24, 47 (Health Fund Trust Agreement).

1    Among its other representative functions, SAG-AFTRA negotiates with its

2    members' employers for collective bargaining agreements ("CBAs") that govern the

3    terms and conditions of their employment, including, among other subjects,

4    compensation for work performed.  Compl. ¶48; Prop. FAC ¶51.  Compensation

5    comprises wages as well as employer contributions to health and retirement benefit

6    plans. *Id.*

7    Plaintiff alleges that SAG-AFTRA's collective bargaining process is

8    established by the SAG-AFTRA Constitution.  Compl. ¶¶6, 40, 43-45; Prop. FAC

9    ¶¶6, 43, 46-48.  During bargaining, committees appointed by the SAG-AFTRA

10   National Board[4] develop a proposal package to exchange with the employers and

11   then conduct negotiations, considering any employer counteroffers and formulating

12   counterproposals, until agreement on the terms is reached.  Compl. ¶¶12, 40, 44;

13   Prop. FAC ¶¶12, 43, 47; SAG-AFTRA Const. Art. XI.A-B.  For agreements that are

14   national in scope, the bargained terms must be approved by the National Board and

15   ratified by the members.[5]  SAG-AFTRA Const. Art. XI.B.1.

16   This case, according to Plaintiff's allegations, concerns three CBAs.  Compl.

17   ¶¶52-54; Prop. FAC ¶¶55-57.  The 2019 Commercials CBA was ratified by union

18   members on May 8, 2019.  *Id.*  The 2019 Netflix CBA was approved by the National

19   Board on July 20, 2019.  And the 2020 TV/Theatrical CBA was ratified by union

20   members on July 22, 2020.  *Id.*  Plaintiff alleges that six Proposed 501 Defendants

21   (all except Proposed Defendant Crabtree-Ireland) played varying roles in the

22   negotiations for those CBAs.  Prop. FAC ¶¶26-34.  Plaintiff's 501 Application

23

24   _____

25   [4]  The National Board consists of 80 members and is vested with "[t]he
     general management, direction and control of the affairs, funds and properties of the
26   Union."  SAG-AFTRA Const. Art. V.A-B.

27   [5]  CBAs, such as the 2019 Netflix CBA, that are not used in widespread or
     industry-wide application affecting a substantial portion of the membership are not
28   submitted to the members for ratification, but rather are approved by the National
     Board and Executive Committee.  SAG-AFTRA Const. Art. XI.B.2.

concedes that these three CBAs "were negotiated and approved under the process established by the SAG-AFTRA Constitution."  Dkt. 23 at 5, ¶9.

### B. The SAG-AFTRA Health Plan

Plaintiff alleges that the SAG-AFTRA Health Fund makes available health benefits to bargaining unit members who choose (and are eligible) to participate. Compl. ¶4; Prop. FAC ¶4; Leonard Decl. Ex. 2 (SAG-AFTRA Health Fund Agreement) at 1, 4.  The Health Fund is a legally separate entity from the union. SAG-AFTRA Health Fund Agreement Art. III.  The Health Fund is a jointly-administered labor-management trust established under 29 U.S.C. §186(c)(5).  *Id.* Art. II.3.c.  As required by that statute, the Health Fund is run by a Board of Trustees, 20 of whom are appointed by the participating employers, and 20 of whom are appointed by the Union.  *Id.* Art. III.1.  Five of the Proposed 501 Defendants are Health Fund Trustees; Proposed 501 Defendants Carteris and Crabtree-Ireland are not.  Compl. ¶25-32; Prop. FAC ¶¶26-35.  ERISA explicitly allows for union officials to act as trustees of benefit plans.  *See* 29 U.S.C. §1108(c)(3).

All benefits decisions regarding the Health Plan provided by the Health Fund, including setting eligibility criteria and determining the benefits provided by the Plan, are made by the Health Fund's Board of Trustees.  SAG-AFTRA Health Fund Agreement Art. IV.6.b.i, Art. IX.1.  The Health Fund is funded by contributions made by signatory employers on behalf of their employees, the amount of which are established by the CBAs that SAG-AFTRA negotiates with those employers.  *Id.* Art. V.1.  Contributions received by the Health Fund are the property of the Health Fund, and are held by the Health Fund "in trust ... for the use and purposes of the Health Fund and the Plan."  *Id.* Art. IV.5; *see also id.* Art. XIV.13.

### C. 2020 Health Plan Changes

Plaintiff alleges that on August 12, 2020, the Health Fund notified SAG-AFTRA members of changes to the eligibility criteria for the Health Plan.  Compl. ¶7; Prop. FAC ¶7.  Before the changes were announced, only 20% of the

1  membership of the bargaining units represented by the Union (approximately 33,000

2  bargaining unit members out of 160,000 total members) participated in the Health

3  Plan.  Compl. ¶59; Prop. FAC ¶62.  Plaintiff does not allege how many Health Plan

4  participants were actually adversely affected by the changes.  On December 1, 2020,

5  participants dissatisfied with the changes brought an ERISA lawsuit against the

6  Health Fund, the Board of Trustees, and individual Trustees (including the Proposed

7  501 Defendants) challenging the benefits changes.  Compl. ¶65; Prop. FAC ¶68; *see*

8  *Asner v. SAF-AFTRA Health Fund*, No. 2-20-cv-10914-CAS-JEM (C.D. Cal.).

9         Plaintiff alleges that, in response to misinformation that was circulating

10  regarding the Health Plan changes, the Union on December 4 sent an email to Health

11  Plan participants explaining the changes.  Compl. ¶66 (quoting the email: "Here are

12  five facts you need to know about changes to the SAG-AFTRA Health Plan: ....");

13  Prop. FAC ¶69.  The Union sent the email "from the Union's official SAG-AFTRA

14  COMMUNICATIONS' account."  Compl. ¶¶66, 68; Prop. FAC ¶¶69, 71 (emphasis

15  omitted).  On December 14, 2020, the SAG-AFTRA National Board passed a

16  resolution confirming the Union's commitment to ensuring that members "are

17  provided with accurate information about [the Health Plan] changes" and that

18  "members are not deceived by misrepresentations" regarding the changes.  Compl.

19  ¶69; Prop. FAC ¶72.  Pursuant to that resolution, on December 14, 2020, the SAG-

20  AFTRA Communications Department released a video "discussing Five Facts about

21  the Health Plan change."  Compl. ¶71; Prop. FAC ¶74.  The Union also issued a

22  press release explaining the resolution.  Compl. ¶70 (quoting the press release: "The

23  SAG-AFTRA National Board ... passed a resolution aimed at correcting

24  misrepresentation about SAG-AFTRA Health Plan changes ...."); Prop. FAC ¶73.

25         On December 18, 2020, Plaintiff sent the Union a letter demanding that the

26  Union sue broad categories of Union officials under Section 501, but did not

27  specifically name a single Union official she contended committed such a breach.

28  Compl. ¶19; Prop. FAC ¶19 & Ex. A.  The letter referenced the complaint from the

*Asner* ERISA action, which challenges the actions of the Health Fund Trustees (including the Proposed 501 Defendants) *qua* Health Fund Trustees rather than as Union officials.  Compl. Ex. A at 1.  The Union notified Plaintiff on February 6, 2021 that it declined to bring a lawsuit.  Compl. ¶20; Prop. FAC ¶20.

Plaintiff waited until June 25, 2021, and then filed in this Court an "Application for Leave to File Proposed Complaint Pursuant to 29 U.S.C. § 501." Dkt. 1.  The application sought leave to file a proposed complaint that stated *both* DFR and Section 501 claims.  Dkt. 1-1.  In response to Defendants' and Proposed Defendants' procedural objections, on July 28, 2021, the Court denied the application without prejudice and instructed Plaintiff to file a complaint setting forth her DFR claim, and a separate application for leave to add a Section 501 claim.  Dkt. 18.  Plaintiff filed a DFR complaint on August 3, 2021, and an application to file a Section 501 claim on August 4, 2021.  *See* Compl.; Dkt. 23.  Pursuant to the parties' stipulated briefing schedule, Dkt. 22, the Proposed 501 Defendants now submit this combined motion to dismiss and opposition to the 501 Application.

## III. ARGUMENT

### A. The Court Should Dismiss the DFR Claim

There are several reasons the DFR claim against the Proposed 501 Defendants should be dismissed:  First and foremost, it is clear from the face of the Complaint that the statute of limitations has run.  Additionally, individual union officials such as the Proposed 501 Defendants are immune from DFR suits, and Plaintiff does not and cannot allege a cognizable DFR claim because the challenged actions do not constitute a breach of the DFR as a matter of law.

### 1.  Rule 12(b)(6) legal standard

Dismissal of a complaint is appropriate "*either* if a cognizable legal theory is absent *or* if the facts alleged fail to suffice under a cognizable claim."  *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019) (quotation omitted; italics in original).  Determining whether a complaint fails to state a claim is a "two-step

1    process." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995

2    (9th Cir. 2014).  First, the Court must "identify pleadings that, because they are no

3    more than conclusions, are not entitled to the assumption of truth." *Id*. at 996

4    (quotation and brackets omitted).  Once the Court has stripped the complaint of

5    conclusory allegations, the second step is to "assume the[] veracity" of well pleaded

6    factual allegations and determine whether they allege "factual content that allows the

7    court to draw the reasonable inference that the defendant is liable for the misconduct

8    alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When an affirmative defense,

9    such as a statute of limitations, is obvious on the face of a complaint, a defendant can

10   raise that defense in a motion to dismiss.  *Rivera v. Peri & Sons Farms, Inc*., 735

11   F.3d 892, 902 (9th Cir. 2013).

12        **2.   The DFR claim is barred by the statute of limitations**

13        The statute of limitations for a DFR claim is six months.  *See DelCostello v.*

14   *Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983); *Stone v. Writer's Guild of Am. W.,*

15   *Inc*., 101 F.3d 1312, 1314 (9th Cir. 1996); *Conley v. Int'l Bhd. Of Elec. Workers,*

16   *Local 639*, 810 F.2d 913, 915 (9th Cir. 1987).  The limitations period begins to run

17   when the employee "discovers, or in the exercise of reasonable diligence should have

18   discovered, the acts constituting the alleged violation." *Galindo v. Stoody Co*., 793

19   F.2d 1502, 1509 (9th Cir. 1986) (quotation and brackets omitted); *see also Stone*,

20   101 F.3d at 1314 ("The statute of limitations begins to run when a plaintiff "knew, or

21   should have known, of the defendant's wrongdoing.").

22        Here, Plaintiff's own allegations make clear that Plaintiff actually knew of the

23   acts constituting the Proposed 501 Defendants' alleged DFR violations far more than

24   six months before initiating this lawsuit.  Plaintiff appears to allege two bases for her

25   DFR claim: (1) she challenges the bargaining outcome of three CBA negotiations,

26   wholly apart from any alleged nondisclosure during the bargaining and negotiating

27   process, arguing that the Proposed 501 Defendants, in their varying roles in the

28   negotiations, should have negotiated better and different CBAs with increased

funding to the Health Fund, and (2) she challenges alleged nondisclosures by the Proposed 501 Defendants, arguing that they failed to provide certain information about the Health Fund's financial status to (a) other Union officials involved in the collective bargaining negotiations and (b) the Union membership when members voted on whether to ratify the 2019 Commercials and 2020 TV/Theatrical CBAs. *See, e.g.*, Compl. ¶¶13, 60.

As to the first basis, the terms of the CBAs, DFR claims challenging bargaining outcomes accrue, at the latest, when the CBA at issue becomes final.  *See Addington v. US Airline Pilots Ass'n,* 606 F.3d 1174, 1181-83 (9th Cir. 2010); *Zapp v. United Transp. Union*, 879 F.2d 1439, 1441 (7th Cir. 1989); *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 411 (5th Cir. 1990), *opinion modified on denial of reh'g* (Apr. 27, 1990).  Here, as Plaintiff's own Complaint alleges, the challenged CBAs were finalized more than six months before Plaintiff's filing.  Specifically, the 2019 Commercials CBA was ratified by members on May 8, 2019; the 2019 Netflix CBA was approved by the National Board on July 20, 2019, and went into effect on August 1, 2019; and the 2020 TV/Theatrical CBA was ratified by members on July 22, 2020 – all much longer than six months before Plaintiff initiated this lawsuit. Compl. ¶¶52-54.  Plaintiff's DFR challenge to the collective bargaining outcomes is therefore time-barred.

As to the second basis, DFR claims challenging the nondisclosure of information in the collective bargaining and ratification process accrue when the plaintiff learns of the nondisclosure and of the alleged effects to be incurred thereby. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1396 (9th Cir. 1986).  Here, the Complaint's allegations show that Plaintiff not only should have been but was in fact aware in August 2020 of the Proposed 501 Defendants' alleged nondisclosures and the changes to the Health Plan necessitated by the levels of contributions negotiated in the CBAs.  The Complaint alleges that the Health Fund announced the benefits changes to SAG-AFTRA members on August 12,

Compl. ¶49; "told Union members that employer contributions set by SAG-AFTRA's CBAs had not kept up with the cost of health coverage" on August 18, *id*. ¶59; and publicly informed Union members that benefits changes due to insufficient funding "had been in the works for two years" on August 19, *id.* ¶¶10, 49.  Plaintiff's nondisclosure claim therefore accrued no later than August 19, 2020, and the statute of limitations on that claim expired no later than six-months thereafter, on February 19, 2021.  Her DFR Complaint was therefore untimely by many months.

Indeed, Plaintiff cannot seriously dispute that her claim accrued more than six months before she filed this action, because her December 18, 2020 demand letter to the Union referenced the complaint filed in the parallel *Asner* ERISA lawsuit (Case No. 2:20-cv-10914-CAS), which alleges the same collective bargaining conduct, outcomes, and nondisclosures by the Proposed 501 Defendant, and the same resulting effects on the Fund's eligibility rules, as are alleged in her DFR claim here.

Accordingly, this Court must dismiss this time-barred claim.  And because no amendment by Plaintiff could possibly cure the fact that the statute of limitations has run, the claim should be dismissed without leave to amend.  *See Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011) (dismissal without leave to amend is proper when leave to amend would be futile).

### 3.  DFR claims cannot be brought against individual union officials

It is blackletter labor law that under Section §301(b) of the Labor Management Relations Act, individual union officials are immune from lawsuits for breaches of the DFR.[6]  "When Congress passed §301, it declared its view that only the union was to be made to respond for union wrongs, and that the union members were not to be subject to levy." *Atkinson v. Sinclair Refining Co*., 370 U.S. 238, 247-48 (1962). Accordingly, the Ninth Circuit has held: "The language of section 301(b) and the

---

[6]  Section 301(b) provides: "Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."  29 U.S.C. §185(b).

Supreme Court's decision in *Atkinson* ... provide a shield for individual union members in suits for breach of the duty of fair representation." *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1400 (9th Cir. 1985); *see Shek v. Cal. Nurses Ass'n/Caregivers & Healthcare Emps. Union*, No. C-10-1483 EMC, 2010 WL 3155830, at *7 (N.D. Cal. Aug. 9, 2010) (dismissing DFR claim because "individual union officials are immune from such claims"). Only the union as an entity is a proper DFR defendant. *Carter v. Smith Food King*, 765 F.2d 916, 920-21 (9th Cir. 1985). As individual SAG-AFTRA officials, *see* Compl. ¶32, the Proposed 501 Defendants cannot be subject to Plaintiff's DFR claim and they should be dismissed as defendants to this claim on this independent and dispositive ground. Because no amendment could cure that fact, the DFR claim against them should be dismissed without leave to amend. *Cervantes*, 656 F.3d at 1041.

### 4. Even if Plaintiff's DFR claim had been timely and properly raised against the Union, not its officials, Plaintiff's allegations fail to state a DFR claim as a matter of law

The background and purpose of the DFR standard are relevant here not only to Plaintiff's improper attempt to sue union officials for breach of the DFR, but also to inform the Court's consideration of her attempt to side-step these clear standards by transforming her allegations from a clearly time-barred and improper DFR claim into a breach of fiduciary duty claim on behalf of the union against its own officials, as addressed below in Section III(B). The allegations here are not within the scope of the well-established DFR standard, which affords unions (and their officials through whom they act) great discretion, particularly in collective bargaining.

Because a union is the exclusive representative of the employees in a bargaining unit, it has a duty to represent all members fairly. *Marquez v. Screen Actors Guild, Inc*., 525 U.S. 33, 44 (1998). In assessing compliance with that duty, courts take a "highly deferential" approach, "recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). A DFR claim must be

1  dismissed if it fails to allege union conduct falling outside that highly deferential

2  standard.  *See Demetris v. Transp. Workers Union*, 862 F.3d 799, 804, 809 (9th Cir.

3  2017).  And, "[a] union breaches its duty of fair representation" *only* "'when its

4  conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in

5  bad faith.'"  *Id.* at 805 (quoting *Marquez*, 525 U.S. at 44).

6          i. *Bargaining outcomes*

7          In the collective bargaining context, union conduct can be classified as

8  "arbitrary" only if it is "wholly 'irrational.'"  *Id.* (quoting *O'Neill*, 499 U.S. at 78).

9  This is because the negotiation process is necessarily "one of compromise."  *Ford*

10 *Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953).  "Inevitably differences [will] arise

11 in the manner and degree to which the terms of any negotiated agreement affect

12 individual employees and classes of employees.  The mere existence of such

13 differences does not make them invalid."  *Id.*

14         Plaintiff's allegations cannot meet the very high bar of this standard.  Plaintiff

15 contends that the CBAs should have provided more funding to the Health Fund.

16 Compl. ¶¶13, 60.  But collective bargaining over economic terms inherently requires

17 allocating a fixed amount of "new money" among wages and fringe benefits, and

18 thus, among members' different interests and priorities.  *See id*. ¶48.  Any particular

19 allocation among wages and various benefits cannot be deemed "wholly irrational,"

20 *Demetris*, 826 F.2d at 805, merely because some members would have preferred a

21 different balance.  *See Ford Motor*, 345 U.S. at 338 ("The complete satisfaction of

22 all who are represented is hardly to be expected.").  That is exactly what Plaintiff has

23 pled here.  Such tradeoffs – "robbing Peter to pay Paul" – as between the subset of

24 Health Plan participants actually impacted by the changes versus the vast majority

25 (80%) of members who do not participate in the Plan, as well as the Plan participants

26 who were unaffected by the changes– are inevitable and necessary during collective

27 bargaining, and cannot be considered "wholly irrational."  *Demetris*, 826 F.2d at

28 805; *see Addington v. US Airline Pilots Ass'n ("Addington II")*, 791 F.3d 967, 983

1   (9th Cir. 2015) ("a winners-and-losers compromise does not mean that the union has

2   violated its duty of fair representation").  "Otherwise, ... the bargaining process

3   would be under constant siege in the courts." *Ackley v. W. Conf. of Teamsters*, 958

4   F.2d 1463, 1472 (9th Cir. 1992).

5       Next, to state a DFR claim for discrimination, a plaintiff must plead facts

6   showing "discrimination that is intentional, severe, and unrelated to legitimate union

7   objectives." *Demetris*, 862 F.3d at 806.  Plaintiff has not done so.  And although

8   "[u]nions have a duty not to discriminate impermissibly among their members, ...

9   there is certainly no requirement that unions treat their members identically[.]" *Id*.

10  (quotation omitted).  Here, Plaintiff's dispute contains no suggestion of intentional or

11  severe discrimination, and the negotiation of CBAs that allocate a portion of the

12  available money to the Health Fund, and other portions to wages and other benefits,

13  is obviously related to the legitimate union objective of representing the interests of

14  all bargaining unit members, including the non-participants in the Health Fund.[7]

15      Finally, although Plaintiff takes issue with the outcome of bargaining, she

16  does not plead facts capable of showing the "substantial evidence of fraud, deceitful

17  action or dishonest conduct" necessary to establish bad faith *in the outcome*.

18  *Demetris*, 826 F.3d at 808.  Plaintiff alleges that the union could have and should

19  have bargained better, but as *Demetris* held, "mere negligence and erroneous

20  judgment calls cannot, by themselves, support an inference of bad faith." *Id*.

21      ii. *Nondisclosure in bargaining and ratification*

22      To bring a DFR claim for nondisclosure, it is not enough for a plaintiff to

23  merely allege a nondisclosure.  *See Ackley*, 958 F.2d at 1472.  Rather, "in a

24  nondisclosure case[,] plaintiffs must demonstrate a causal relationship between the

25

26      [7] The only differential treatment Plaintiff arguably alleges is that the health
27  benefit changes affected older workers.  Compl. ¶¶7-8.  But those changes were
    adopted not by the Union (or by the Proposed 501 Defendants acting in their Union
28  capacities), but by the Health Fund Board of Trustees, which makes all benefits and
    eligibility decisions for the Plan.  *See supra*, Section II.B.

1   alleged misrepresentations and their injury." *Id.* (quotation omitted).  The Ninth

2   Circuit has instructed that in the contract ratification context, for instance, that means

3   showing both that "(1) absent the [nondisclosure], the outcome of the ratification

4   vote would have been different; and that (2) had it been different, the company

5   would have acceded to the union's demands." *Id.*[8]

6       This causation element "is difficult to satisfy, and rightly so." *Ackley*, 958

7   F.2d at 1472.  That is because "generally, the union's internal election and

8   rulemaking processes are the proper vehicle ... for addressing members' complaints

9   regarding the adequacy of union representation during the bargaining process." *Id.*

10  (citing *Acri*, 781 F.2d at 1399 (Reinhardt, J., concurring)).  Indeed, in his concurring

11  opinion in *Acri*, Judge Reinhardt – who subsequently wrote the Ninth Circuit's

12  decision in *Ackley*, explained that this nearly "impossible causation barrier" is

13  necessary to the sustain the balance achieved by federal labor law because otherwise

14  mere "[d]issatisfaction over the contents of a labor agreement is too easily

15  transformed into a suit over the union official's performance." *Acri*, 781 F.2d at

16  1399-1400 (Reinhardt, J., concurring).

17      Here, Plaintiff's challenge to alleged nondisclosures by the Proposed 501

18  Defendants does not state a DFR claim because her allegations fail to include, and

19  cannot include, the causation element of this claim.  *See Johnson v. Riverside*

20  *Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) ("At the motion to dismiss

21  stage, ... [the] complaint must allege sufficient facts to state the elements of [the]

22  claim.").  Plaintiff's claim focuses on the harm to members caused by the Health

23

24      [8]  The same legal standard applies to Plaintiff's allegation that the 501
    Defendants breached the DFR by failing to disclose information to the rest of the
25  Union's negotiating committee in the pre-ratification negotiations.  *See, e.g.,*
    *Spellacy v. Airline Pilots Ass'n – Int'l*, 156 F.3d 120, 124-25, 130 (2d Cir. 1998);
26  *Merritt v. Int'l Ass'n of Machinists*, No. 2:06–CV–14342, 2008 WL 5784439, at *14
    (E.D. Mich. Sept. 22, 2008); *Bishop v. Air Line Pilots Ass'n, Int'l*, 159 L.R.R.M
27  2005, 1998 WL 474076, at *16-17 (N.D. Cal. Aug. 4, 1998) (rejecting argument that
    *Ackley* causation test is limited to the context of misrepresentations prior to contract
28  ratification votes), *aff'd mem.*, 211 F.3d. 1272 (9th Cir. 2000).

1    Plan's eligibility requirements.  Compl. ¶¶7-9.  The leap from this harm to the

2    Union's actions fails the causation element required by *Ackley* and *Acri,* even under

3    the motion to dismiss standard.  Those decisions require allegations of *more* than just

4    nondisclosure, but that is all Plaintiff has alleged here.

5    **B. The Court Should Deny Leave to File the Section 501 Claim or, in the**
       **Alternative, Should Dismiss the Section 501 Claim**

6

7             In contrast to the DFR, which concerns a union's duty towards its members,

8    Section 501 concerns union officials' duties to the union itself.  *See* 29 U.S.C.

9    §501(a); *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d

10   1036, 1046 (9th Cir. 2013).  Section 501 establishes the fiduciary duties of union

11   officials, and allows individual union members to sue, on behalf of the union, a

12   union official who has violated his or her duty to the union.  29 U.S.C. §501(a)-(b);

13   *Cowger v. Rohrbach*, 868 F.2d 1064, 1066 (9th Cir. 1989).  Such a suit, although

14   brought by an individual member, is brought on behalf of the union, which is the

15   "real party in interest" in the suit.  *O'Hara v. Teamsters Union Local No. 856*, 151

16   F.3d 1152, 1161 (9th Cir. 1998).  In that sense, these suits are "similar to shareholder

17   derivative actions," in which an individual shareholder brings an action for relief that

18   will "benefit the corporation as a whole." *Id*

19             Because Section 501(b) extends the jurisdiction of the federal courts, it must

20   be construed narrowly.  *Stelling v. Int'l Bhd. of Elec. Workers Local Union No. 1547*,

21   587 F.2d 1379, 1386 n.7 (9th Cir. 1978) (citing *Flaherty v. Warehousemen, etc., Loc.*

22   *Union No. 334*, 574 F.2d 484, 487 (9th Cir. 1978)).  The Ninth Circuit has cautioned

23   that "[Section] 501 does *not* mean that courts have power to intervene in intra-union

24   affairs at slight provocation or on any invitation.  Rather ... judicial interference

25   should be undertaken only with great reluctance."  *Id.* at 1387 (emphasis added).

26   "The internal operations of unions are to be left to the officials chosen by the

27   members to manage those operations except in the very limited instances expressly

28   provided by the Act." *Kahn v. Hotel & Rest. Emps. & Bartenders Int'l Union*, 469

1   F.Supp. 14, 19 (N.D. Cal. 1977) (quotation omitted), *aff'd sub nom. Kahn v. Hotel &*

2   *Rest. Emps. & Bartenders Int'l*, 597 F.2d 1317 (9th Cir. 1979).  The scope of Section

3   501 thus reflects the "well-established federal policy of avoiding unnecessary

4   interference in the internal affairs of unions."  *Teamsters Joint Council No. 42 v. Int'l*

5   *Bhd. of Teamsters,* 82 F.3d 303, 306 (9th Cir. 1996).

6   Congress furthered that policy by taking the unusual step of creating certain

7   important restrictions on the filing of Section 501 claims.  *Phillips v. Osborne*, 403

8   F.2d 826, 830 (9th Cir. 1968).  The statute requires that a plaintiff can file a Section

9   501 claim only after first providing notice of the claim to the union and requesting

10   that the union bring suit.  *Id.*; 29 U.S.C. §501(b).  If the union declines to bring suit,

11   the plaintiff must then file a verified application with the court seeking leave to file

12   the claim and cannot bring the 501 claim unless the court finds there is "good cause"

13   to do so.  29 U.S.C. 501(b); *Philips*, 403 F.2d at 830.

14   Here, Plaintiff's application fails to show good cause to file a Section 501

15   claim because the allegations on which her claim rests are entirely outside the scope

16   of Section 501, and, accordingly, even if leave to file were granted, the Proposed

17   FAC fails to state a claim, for the reasons discussed below.

### 1.  Plaintiff does not have good cause to file a Section 501 claim

18

19   The good cause "showing protects union officials from harassing and

20   vexatious litigation which has no merit and from unwarranted judicial intrusion in

21   the processes of union democracy."  *Cowger*, 868 F.2d at 1068 (citations omitted);

22   *see also Horner v. Ferron*, 362 F.2d 224, 228 (9th Cir. 1966) (the good cause

23   requirement "is intended as a safeguard to the affected union against harassing and

24   vexatious litigation brought without merit or good faith.").[9]  Therefore, there is no

25

26   _____

27   [9]  The good cause requirement is particularly important because, unlike most claims brought against union officials, the union cannot provide, through union

28   counsel or funding of separate counsel, a defense to the 501 claim once the Court has granted leave to pursue it and once it has been upheld against a pleading challenge, leaving individual officials responsible for their own defense.  *See Kerr v. Shanks*,

good cause where the application or proposed complaint reveal a fundamental legal or procedural "defect" in the claim.  *Horner*, 362 F.2d at 229.  And the court must "ensure that a suit is not frivolous or undertaken for the purpose of harassment." *Pimentel v. Aloise*, No. 18-CV-00411-EMC, 2018 WL 6025613, at *15 (N.D. Cal. Nov. 16, 2018).  Denial of leave to file a Section 501 claim is therefore proper where the plaintiff fails to identify a breach of any fiduciary duty.  *See Garcia v. Serv. Emps. Int'l Union*, No. 2:17-CV-01340-APGNJK, 2018 WL 10721071, at *3 (D. Nev. July 24, 2018), *aff'd*, No. 19-16863, 2021 WL 1255615 (9th Cir. Apr. 5, 2021).

The Court should deny leave to file the Section 501 claim here for two reasons.  First, Plaintiff failed to comply with the statutory notice and demand requirement.  *See* 29 U.S.C. §501(b); *Phillips*, 403 F.2d at 830 (notice to the union is a "condition precedent" to filing suit).  A Section 501 demand letter must identify the specific union officials against whom the claim is brought.  *See Hanahan v. Lucassen*, 764 F.Supp. 194, 196 (D.D.C. 1991); *see also Commer v. Am. Fed'n of State, Cty. & Mun. Emps.*, 272 F.Supp.2d 332, 337 (S.D.N.Y. 2003), *aff'd*, 390 F.3d 203 (2d Cir. 2004) (demand must be made "against particular legal officers").  But Plaintiff's demand letter to the Union did not identify the Union officials that she has now named in her 501 Application and Proposed FAC.  *See* Dkt. 23; Dkt. 23-2.  Instead, the letter listed very broad categories of unidentified staff and officials, encompassing dozens of SAG-AFTRA personnel.  *See* Ex. 23-2 at 4.  When demanding a union sue a sitting official for fiduciary breach, which is a very serious charge and undertaking, at the very least a member must name to the union the individual or individuals she contends breached such a duty.  Because she has not complied with the statutory prerequisites to suit, Plaintiff's 501 Application should be denied.

---

466 F.2d 1271, 1277 (9th Cir. 1972); *John Doe No. 1 v. Am. Fed'n of Gov't Emps.*, No. 20-1558 (JDB), 2021 WL 3550996, at *3-5 (D.D.C. August 11, 2021).

Second, the actions Plaintiff challenges fall far outside the boundaries of a Section 501 claim.  Because the Plaintiff's Section 501 Application rests on allegations that on their face have no merit whatsoever under Section 501, leave to file the claim should not be granted.  *See Garcia*, 2018 WL 10721071, at *3. Because the lack of merit for purposes of the good cause standard overlaps with the argument that the Court should dismiss the claim even if admitted, we address the arguments at the same time, below.

### 2.  Plaintiff's allegations cannot state a Section 501 claim as a matter of law

The paradigmatic case of a breach of fiduciary duty under Section 501 involves a misappropriation of union funds or property by a union official, causing direct harm to the union.  *Guzman v. Bevona*, 90 F.3d 641, 647 (2d Cir.1996) ("Expenditures by union officers that violate the union's constitution[] represent the classic case of breach of fiduciary duty under section 501.").  Plaintiff makes no such allegation here.  Instead, she grounds her Section 501 claim on the same two contentions that underlie her DFR claim: the Proposed 501 Defendants should have disclosed information regarding the Health Fund's financial status to other Union officials involved in the negotiations and to the Union members prior to their vote to ratify the CBAs, and that they should have negotiated CBAs that provided sufficient additional funding to the Health Fund to avoid the eligibility changes that were announced by the Health Fund Trustees in August 2020.  *See* Prop. FAC ¶121. Plaintiff also raises a third basis for her Section 501 claim, challenging certain communications the Union directed to Union members and the public following the benefits changes as a breach of the 501 Defendants' fiduciary duty.  *See id.*  ¶18.  We address in turn below why Section 501, however, is simply not the proper vehicle to address each of these disputes, even accepting the allegations on their face with all inferences drawn in favor of Plaintiff.

1

2

        i. *Plaintiff cannot bring a Section 501 claim predicated on harm to individual union members from the challenged bargaining outcomes or nondisclosures*

3       The heart of Plaintiff's dispute here is the alleged harm to individual union

4 *members*.  But a breach of fiduciary duty claim under Section 501 may be brought

5 only to recover for harm *to the union*, not harm to individual union members.  *See* 29

6 U.S.C. §501(b) (only authorizing suits "to recover ... relief for the benefit of the

7 labor organization"); *Phillips*, 403 F.2d at 831.  This is because "[t]he plain language

8 of the statute demonstrates that union officers owe this duty to the organization as a

9 whole, not merely to the rank and file."  *Serv. Emps. Int'l Union*, 718 F.3d at 1045

10 (emphasis added); *see also id.* at 1046 ("§ 501 imposes a duty to the local union as

11 an organization."); 29 U.S.C. §501(a) ("The officers ... of a labor organization

12 occupy positions of trust in relation to such organization and its members as a

13 group.").  The statute thus "makes it clear that relief granted under Section 501 is for

14 the benefit of the real party in interest, the union[.]"  *Phillips*, 403 F.2d at 831; *see*

15 *also O'Hara*, 151 F.3d at 1161 ("The real beneficiaries of a successful section 501

16 action are the union and its entire membership.") (quotation omitted).  Accordingly,

17 claims that concern harm to specific union members, as opposed to the union itself as

18 an organization, are barred from proceeding under Section 501.  *See Phillips*, 403

19 F.2d at 832 ("In requesting direct relief for certain union members only and not 'for

20 the benefit of the labor organization,' [the plaintiff] disqualified himself from

21 proceeding under Section 501.") (quoting 29 U.S.C. §501(b)); *O'Hara*, 151 F.3d at

22 1161 ("[Plaintiff's] claims obviously were not for the benefit of the union.  ....  As

23 such, § 501 does not apply in any way.")

24       Because Plaintiff's challenge to the collective bargaining results and alleged

25 nondisclosure does not concern harm to SAG-AFTRA as an organization, it falls

26 entirely outside of the issues Congress intended Section 501 to remedy.  As

27 discussed above, Plaintiff contends the CBAs did not provide sufficient economic

28 resources to the Health Fund.  Prop. FAC ¶¶13, 60.  But the Health Fund is not the

1  union's property: by statute and the terms of the Health Fund's governing document,

2  the Health Fund holds employer contributions in trust for the benefit of the Health

3  Plan's participants and beneficiaries.  *See* SAG-AFTRA Health Fund Agreement

4  Art. IV.5; Art. XIV.13; 29 U.S.C. §186(c)(5).  A Section 501 claim does not apply to

5  harm to a benefits fund that is a legally separate from a union.  For instance, in

6  *Hearn v. McKay*, the Eleventh Circuit held there was no Section 501 claim against

7  union officials for alleged harm to two ERISA benefit plans' assets because "neither

8  the union nor its members as a group own the ... funds. ...  The plans are distinct

9  legal entities separate from the union, ... controlled exclusively by the trustees for the

10  benefit of the plan participants and beneficiaries, ...."  603 F.3d 897, 902 (11th Cir.

11  2010) (citations omitted); *see Noble v. Sombrotto*, 84 F.Supp.3d 11, 24 (D.D.C.

12  2015) (holding the same).  The same conclusion applies here.

13      Plaintiff also contends, *pleading this claim as a class action*, that participants

14  in the Health Fund who were affected by the changed eligibility requirements

15  suffered harm.  Prop. FAC ¶¶7-9, 96-110.  But injury to a subset of members,

16  especially one that comprises only 20% of the membership, does not constitute

17  injury to the union as an organization, and it cannot form the basis for a Section 501

18  claim.  *See Phillips*, 403 F.2d at 832; *Nellis v. Air Line Pilots Ass'n*, 815 F.Supp.

19  1522, 1542 (E.D. Va. 1993) ("[P]laintiffs cannot sue members of the [union]

20  leadership [under Section 501] merely because they advocated positions ... that were

21  contrary to the interests of the subgroup to which plaintiffs belonged" because "the

22  union itself suffers no harm, even if subgroups within the union are disadvantaged."),

23  *aff'd*, 15 F.3d 50 (4th Cir. 1994).[10]  Indeed, even alleged harm to the entire union

24  membership (which Plaintiff does not raise) does not state a Section 501 claim, if

25

26  _____

27      [10]  "A contrary holding would lead to untenable results ....  Without a requirement that the union as a whole be harmed, the loser of any internal union dispute could always sue the representatives of the winners, alleging breach of fiduciary duty under section 501 for taking a position contrary to the loser's interests."  *Nellis*, 815 F.Supp. at 1542.

28

there is no harm alleged to the union as an institution.  *See Serv. Emps. Int'l Union*, 718 F.3d at 1045; *O'Hara*, 151 F.3d at 1161 ("The real beneficiaries of a successful section 501 action are the union *and* its entire membership.") (emphasis added).

The Fifth Circuit's decision in *Hoffman v. Kramer*, 362 F.3d 308, 314 (5th Cir. 2004), which also concerned alleged nondisclosure in bargaining, is especially instructive.  There, the plaintiff alleged that union officials had not disclosed certain material facts during a contract ratification vote in order to secure membership approval of the negotiated agreement, improperly benefiting older employees to the detriment of more recently hired employees.  The court that the plaintiff lacked good cause to assert a Section 501 claim, concluding that such allegations did not "constitute an actionable violation of the duties embodied in § 501(a)," *id.* at 323, because the plaintiff had failed to identify any damages to the union as a whole, *id.* at 322-23.

Moreover, Plaintiff's attempt to use Section 501 to redress alleged harm to certain participants and beneficiaries of the Health Fund arising from alleged misconduct in the CBA negotiations is especially inappropriate because there is a parallel ERISA lawsuit pending that addressed the same alleged harm.  *See* Compl. ¶15; *see also Asner*, No. 2-20-cv-10914-CAS-JEM (C.D. Cal.).  The scope of ERISA fiduciary duties is different from those under Section 501: a union official's Section 501 fiduciary duties apply to the union as an organization, an ERISA fiduciary has the duty to act "solely in the interest of the [plan's] *participants and beneficiaries*" and "for the exclusive purpose of providing benefits to *participants and their beneficiaries*." 29 U.S.C. §1104(a)(1), §1104(a)(1)(A)(i) (emphasis added).[11]

---

[11]  Of course, in light of the legal separation between the Health Fund and the Union, and the legally separate duties that Health Fund trustees owe to the Health Fund under ERISA and Union officials owe to the Union under Section 501 – even if some of the same people wear both hats as Health Fund trustees and Union officials, *see NLRB v Amax Coal Co.,* 453 U.S. 322, 334 (1981) – the Section 501 Defendants cannot be held liable under Section 501 for the Health Fund trustees' decisions to change the Health Plan's eligibility rules.  *See Noble*, 84 F.Supp.3d at 24-25; *Yager v. Carey,* 910 F.Supp. 704, 728 (D.D.C. 1995) (citing *McNamara v. Johnston*, 522

Because Plaintiff's 501 Application and Proposed FAC necessarily rest entirely on a theory of harm to a mere subset of individual Union members rather than harm to the union, leave to file that claim should be denied (or the claim should be dismissed without leave to amend).  *See Phillips*, 403 F.2d at 832; *O'Hara*, 151 F.3d at 1161; *Johnson*, 534 F.3d at 1122.[12]

 ii. *The challenged Union communications fall outside Section 501*

  Plaintiff also contends that the Proposed 501 Defendants breached a fiduciary duty to the Union because Plaintiff disagrees with three official Union communications issued in December 2020 explaining members' health benefits.  *See* FAC ¶¶66-80.  This conduct, by the Union itself, is not the type of conduct to which Section 501 applies.

  To begin, the communications at issue were not speech by any individual officials, but rather speech by the Union itself.  Plaintiffs' own allegations establish that the three challenged communications were made on behalf of the Union, were made through official Union channels, set forth the Union's official positions, and were authorized by the Union.[13]  *See* Prop. FAC ¶¶69 & 71 (Dec. 4 email from "the Union's official SAG-AFTRA COMMUNICATIONS' account" to Health Plan participants), ¶73 (Dec. 14 official SAG-AFTRA press release), ¶74 (video released

---

F.2d 1157, 1163 (7th Cir. 1975); *Hearn v. McKay*, Case No. 07-CV-60209 (JEM), 2008 WL 2694005, at *4-5 (S.D. Fla. July 1, 2008), *aff'd*, 603 F.3d 897 (11th Cir. 2010).

[12]  To the extent Plaintiff also seeks to raise the alleged failure of Defendant White to inform SAG-AFTRA members in April 2020 of upcoming changes to Union healthcare eligibility as a basis for her Section 501 claim, *see* Prop. FAC ¶65, that basis fails for the same reason as her other allegations regarding alleged nondisclosures.

[13]  Plaintiff cannot and does not link most of the individual Proposed 501 Defendants to these Union-authorized communications, let alone contend that the individuals were acting "rogue" for their own benefit: the December 4 email and December 14 video are not connected in any way to any specific Proposed 501 Defendant, *see* Prop. FAC ¶¶66-80; and Proposed 501 Defendants Crabtree-Ireland, Rodriguez, McGuire, Brown, or Powell are not linked to  any of the challenged communications.

1    by "the SAG-AFTRA Communications Department"); *see also id.* ¶72 (Dec. 14

2    National Board resolution to communicate to members about the benefits changes).

3    When union officials "have authority to represent the Union, and ... claim that they

4    are speaking for it," that is speech by the union.  *Leonard v. Clark*, 12 F.3d 885, 889

5    (9th Cir. 1993), *as amended* (Mar. 8, 1994).  Section 501 is not the proper vehicle to

6    challenge actions by the Union itself.  *Stelling*, 587 F.2d at 1386 n.6.

7             Moreover, none of these communications meet the high standard for showing

8    a breach of Section 501 fiduciary duties.  Section 501 "is not a catch-all provision

9    under which union officials can be sued on any ground of misconduct with which the

10   plaintiffs choose to charge them."  *O'Hara*, 151 F.3d at 1161.  Rather, an official

11   breaches his or her fiduciary duty to the union only if the official (1) violates the

12   union constitution, (2) expends union funds for his or her direct personal benefit, or

13   (3) otherwise acts in bad faith (which again, is not a catch-all).  *See Serv. Emps. Int'l

14   Union*, 718 F.3d at 1049; *Carpenters Local Union 721 v. Limon*, No. CV 18-8470

15   DSF (MRWx), 2020 WL 3124222, at *7 (C.D. Cal. Apr. 23, 2020).

16           First, Plaintiff's 501 Application and Proposed FAC do not and cannot

17   contend that these Union-authorized communications violated any provision of the

18   SAG-AFTRA Constitution.  *See generally* Dkt. 23-2; Proposed FAC.  To the

19   contrary, the Proposed FAC alleges that a resolution passed by the 80-member

20   National Board expressly authorized communications to provide members

21   information about the health benefits, including the two December 14, 2020

22   communications.  Prop. FAC ¶72.  Pursuant to the SAG-AFTRA Constitution, the

23   National Board has the duty and authority to "[e]stablish the Union's public relations

24   and public information policies."  SAG-AFTRA Constitution, Art. V.C.2.h. [14]

25

26

27           [14]  Then-SAG-AFTRA President Carteris's quotation in the December 14
     press release was similarly authorized by and on behalf of the Union.  SAG
28   Constitution, Art. VI.B.3 ("The President shall be the chief spokesperson for the
     Union ....").

1    Second, the allegations of the Proposed FAC do not and cannot support the

2    conclusion that the Proposed 501 Defendants obtained or sought any direct *personal*

3    benefit at the expense of the Union from the identified Union-authorized

4    communications.  *See Erkins v. Bryan*, 785 F.2d 1538, 1544 (11th Cir. 1986) ("A

5    union official fulfills his fiduciary duty, even though he may indirectly benefit from

6    use of union funds, whenever he can show that the funds were authorized by the

7    union and were expended for the benefit of the union."); *Ray v. Young*, 753 F.2d 386,

8    391 (5th Cir. 1985) ("If a union officer receives an indirect benefit from a transaction

9    in which the union also benefits, valid authorization will normally be a complete

10   defense.").  The facts alleged in the Proposed FAC show that the three

11   communications provided SAG-AFTRA members information about their union

12   health benefits, Prop. FAC ¶¶69, 74, plainly a proper and routine topic for union

13   communications.[15]  This is a far cry from the situation where a union official hijacks

14   union resources to communicate a purely self-interested message, such as urging

15   members to vote for the official in an upcoming union election, that would directly

16   benefit the official.

17   Third, the Proposed FAC does not contain any allegations capable of

18   supporting the conclusion that the Proposed 501 Defendants acted in bad faith in the

19   context of Section 501.  The bar for alleging bad faith action that harms the union is

20   high: union officials must engage in "palpably unconscionable or outrageous

21   actions."  *Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters*, 920

22   F.2d 1047, 1054, 1058 (1st Cir. 1990) (cited in *Serv. Emps. Int'l Union,* 718 F.3d at

23   1049, and *Carpenters Loc. Union 721*, 2020 WL 3124222, at *7).  The union-

24   authorized email, press release, and video about union health benefits on their face

25   fall far short of that standard.

26   _____

27        [15]  Moreover, the Proposed FAC's allegations and the plain language of the
     challenged communications make clear that the communications were issued in
28   response to what the Union perceived to be misinformation spreading among
     members about the health benefits.  Prop. FAC ¶¶69, 72.

1        Plaintiff is plainly unhappy with the changes the Health Plan Trustees made to

2   the eligibility requirements, and with the Union for allegedly "support[ing]" those

3   changes by explaining them to members.  Prop. FAC ¶¶67, 70.  But that

4   dissatisfaction does not transform the Union's communications into a breach of

5   fiduciary duty.  *See O'Hara*, 151 F.3d at 1161 (Section 501 "is not a catch-all

6   provision under which union officials can be sued on any ground of misconduct with

7   which the plaintiffs choose to charge them"); *John Doe No. 1*, 2021 WL 3550996, at

8   *8 ("[I]t cannot be – as plaintiffs' theory suggests – that *any* tort committed by a

9   union officer against a union affiliate supports a federal cause of action against that

10   officer under the LMRDA.  No court has adopted such a limitless interpretation of

11   section 501 ....") (emphasis in original).

12        Indeed, if the mere fact that a union used union resources to communicate with

13   members about union benefits stated a Section 501 claim, any union member could

14   sue in federal court every time they disagreed with the message.  Unions would be

15   effectively disabled from *ever* explaining their positions (on benefits, collective

16   bargaining, and other union business) to their members, out of fear of a Section 501

17   lawsuit by any member who disliked what the communications said.  That cannot be

18   the law.  This Court should not encourage such floodgates to open by granting leave

19   to file the application on these alleged facts.  For this reason also, even if permitted,

20   the Section 501 claim should be simultaneously dismissed with prejudice.

## IV. CONCLUSION

22        For the foregoing reasons, the Proposed 501 Defendants request that the Court

23   dismiss the DFR claim against them and deny Plaintiff leave to file the Section 501

24   claim, or, in the alternative, dismiss the Section 501 claim.

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: October 6, 2021   /s/ *Corinne F. Johnson*
           Corinne F. Johnson


DANIELLE LEONARD
JEFFREY DEMAIN
CORINNE F. JOHNSON
Altshuler Berzon LLP

*Attorneys for Attorneys for Defendants*
*David P. White, Ray Rodriguez, John T.*
*McGuire, John Carter Brown, and Linda*
*Powell and Proposed Defendants Gabrielle*
*Carteris and Duncan Crabtree-Ireland*