JULIE GUTMAN DICKINSON (SBN 148267)
jgutmandickinson@bushgottlieb.com
LISA C. DEMIDOVICH (SBN 245836)
ldemidovich@bushgottlieb.com
DEXTER RAPPLEYE (SBN 302182)
drappleye@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone:  (818) 973-3200
Facsimile:  (818) 973-3201

Attorneys for SAG-AFTRA, Michael
Pniewski, and David Hartley-Margolin

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FRANCES FISHER,<br><br>Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, DAVID P. WHITE, RAY RODRIGUEZ, JOHN T. MCGUIRE, MICHAEL PNIEWSKI, DAVID HARTLEY-MARGOLIN, JOHN CARTER BROWN, and LINDA POWELL,<br><br>Defendants. | **CASE NO. 2:21-cv-05215-CAS-JEMx**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT ON BEHALF OF DEFENDANTS SAG-AFTRA, MICHAEL PNIEWSKI, AND DAVID HARTLEY-MARGOLIN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(b)(1) & 12(b)(6)]**<br><br>**Judge:   Hon. Christina A. Snyder**<br>**Date:    January 24, 2022**<br>**Time:    10:00 a.m.**<br>**Crtrm.:  8D** |

**TO FRANCES FISHER AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Monday, January 24, 2022, at 10:00

a.m., or as soon thereafter as counsel may be heard in the courtroom of the

Honorable Christina A. Snyder, located in Courtroom 8D of the U.S. District Court

774587v1  11840-31004

BUSH GOTTLIEB<br>801 North Brand Boulevard, Suite 950<br>Glendale, California 91203-1260

1   for the Central District of California, 350 West First Street, 8th Floor, Defendants

2   Screen Actors Guild-American Federation of Television and Radio Artists, Michael

3   Pniewski, and David Hartley-Margolin will and hereby do move to dismiss the

4   Complaint filed in this action by Plaintiff Frances Fisher on August 3, 2021.

5       This Motion is made on the following grounds:

6       (a)    Plaintiff's cause of action for breach of the duty of fair representation is

7   subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure

8   because it is barred by the applicable statute of limitations;

9       (b)    Plaintiff's cause of action for breach of the duty of fair representation is

10  subject to dismissal against Mr. Pniewski and Mr. Hartley-Margolin under Rule

11  12(b)(6) because individual union officers cannot be held personally liable for a

12  breach of the Union's duty of fair representation;

13      (c)    Plaintiff's cause of action for breach of the duty of fair representation is

14  subject to dismissal under Rule 12(b)(6) because Plaintiff has failed to state a claim

15  upon which relief can be granted;

16      (d)    Plaintiff's class action allegations are subject to dismissal under Rules

17  12(b)(1) and 12(b)(6);

18      (e)    Plaintiff's claims are subject to dismissal without leave to amend as any

19  amendment would be futile because they are time-barred; and

20      (f)    This Court lacks subject matter jurisdiction over the Complaint under

21  Rule 12(b)(1) because Plaintiff has failed to allege facts showing that the case

22  presents a "case or controversy" under Article III of the U.S. Constitution.

23      This Motion is based on this Notice of Motion, Memorandum of Points and

24  Authorities, all other matters of which the Court may take judicial notice, and any

25  argument or evidence that may be considered by the Court prior to its ruling.  This

26  Motion is made following a conference of counsel pursuant to Local Rule 7-3 on

27  September 27, 2021, where counsel for Defendants provided timely notice to

28  Plaintiff's counsel of this motion to dismiss and detailed the grounds for the motion.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1
2

# **TABLE OF CONTENTS**

**Page**

3  I.    INTRODUCTION ................................................................................. 1

4  II.   ALLEGATIONS ................................................................................. 3

5      A.   Lone Cause of Action ............................................................. 3

6      B.   Allegations of Injury to Plaintiff and Putative Class Members ............. 3

7      C.   Defendants' Alleged Conduct ................................................. 4

8      D.   Chronology of Relevant Events ............................................. 5

9  III.  ARGUMENT ..................................................................................... 6

10      A.   Legal Standards Under Rules 12(b)(1) and 12(b)(6) ............................ 6

11      B.   Plaintiff's Claim is Time-Barred. .......................................... 7

12      C.   Individual Union Officers Cannot Be Held Personally Liable for Breach of the Union's Duty of Fair Representation. ........................... 10

13
14      D.   Plaintiff Has Failed to State a Claim Against SAG-AFTRA for Breach of the Duty of Fair Representation. ............................................. 11

15          1.   The Union's Alleged Conduct Does Not Constitute a Breach of Its Duty of Fair Representation. ................................ 11

16
17             (a)   Plaintiff Has Not Stated a Claim Based on Arbitrary Conduct. ..................................... 12

18             (b)   Plaintiff Has Not Stated a Claim Based on Discriminatory Conduct. ............................ 14

19
20             (c)   Plaintiff Has Not Stated a Claim Based on Bad Faith. ................................................... 14

21          2.   Plaintiff Has Not Alleged That Any Injuries to Union Members Were Caused By the Union's Conduct. ..................... 16

22
23      E.   Plaintiff Has Not Shown that She Has Standing to Assert a Claim for Breach of the Duty of Fair Representation. .................................... 20

24      F.   Class Allegations Cannot Survive If Plaintiff's Claim Is Dismissed. ........................................................................ 21

25      G.   Plaintiff's Claim Should Be Dismissed With Prejudice. ....................... 21

26  IV.  CONCLUSION .................................................................................. 22

27
28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ackley v. W. Conference of Teamsters*,
  958 F.2d 1463 (9th Cir. 1992) ..................................................................*passim*

*Acri v. Int'l Assoc. of Machinists*,
  781 F.2d 1393 (9th Cir. 1986) ........................................................ 15, 17, 18, 19

*Addington v. US Airline Pilots Ass'n*,
  606 F.3d 1174 (9th Cir. 2010) ..................................................................... 7, 8, 9

*Air Line Pilots v. O'Neill*,
  499 U.S. 65 (1991) ....................................................................................... 11

*Allen v. United Food & Commercial Workers Int'l Union*,
  43 F.3d 424 (9th Cir. 1994) ........................................................................ 7, 8

*Allen v. Wright*,
  468 U.S. 737 (1984) .................................................................................. 6, 8, 9

*Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*,
  No. 8:19-cv-78-AB, 2021 U.S. Dist. LEXIS 134417 (C.D. Cal. May
  19, 2021) ....................................................................................................... 13

*Anderson v. United Paperworkers Int'l Union*,
  641 F.2d 574 (8th Cir. 1981) ......................................................................... 18

*Atkinson v. Sinclair Refining Co.*,
  370 U.S. 238 (1962) ....................................................................................... 10

*Batache v. Santi*,
  No. 2:18-cv-6907-ODW (KS), 2018 U.S. Dist. LEXIS 195304
  (C.D. Cal. Nov. 15, 2018) .............................................................................. 21

*Bautista v. Pan Am. World Airlines, Inc.*,
  828 F.2d 546 (9th Cir. 1987) ......................................................................... 14

*Beck v. UFCW, Local 99*,
  506 F.3d 874 (9th Cir. 2007) .......................................................................... 14

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Beckington v. Am. Airlines, Inc.*,
   926 F.3d 595 (9th Cir. 2019) ............................................................................ 7

*Brown v. Int'l Union, United Auto*,
   689 F.2d 69 (6th Cir. 1982) ............................................................................ 18

*Burkevich v. Air Line Pilots Ass'n*,
   894 F.2d 346 (9th Cir. 1990) .......................................................................... 13

*Carr v. Allied Waste Sys.*,
   No. 10-0715, 2010 U.S. Dist. (N.D. Cal. Nov. 23, 2010) ................................ 16

*Carter v. Smith Food King*,
   765 F.2d 916 (9th Cir. 1985) .......................................................................... 10

*Chandler v. St. Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .......................................................................... 6

*Chappel v. Lab. Corp.*,
   232 F.3d 719 (9th Cir. 2000) .......................................................................... 21

*D'Lil v. Best W. Encina Lodge & Suites*,
   538 F.3d 1031 (9th Cir. 2008) ........................................................................ 20

*Deboles v. Trans World Airlines, Inc.*,
   552 F.2d 1005 (3d Cir. 1977) ......................................................................... 18

*DelCostello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151 (1983) ......................................................................................... 7

*Demetris v. Transp. Workers Union of Am.*,
   862 F.3d 799 (9th Cir. 2017) ..................................................................... 13, 14

*Evangelista v. Inlandboatmen's Union of Pac.*,
   777 F.2d 1390 (9th Cir. 1985) ........................................................................ 10

*Ford Motor Co. v. Huffman*,
   345 U.S. 330 (1953) ....................................................................................... 12

*Harris v. Amgen, Inc.*,
   573 F.3d 728 (9th Cir. 2009) .......................................................................... 20

*Humphrey v. Moore*,
   375 U.S. 335 (1964) ....................................................................................... 12

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Johnson v. NFL Players' Ass'n*,
    No. 17 Civ. 5131 (RJS), 2018 U.S. Dist. (S.D.N.Y. Oct. 3, 2018) ....................20

*Keener v. Nat'l Nurses Org. Comm.*,
    No. 14-3373, 615 Fed. Appx. 246 (6th Cir. May 27, 2015) .............................20

*Marquez v. Screen Actors Guild*,
    525 U.S. 33 (1998) .................................................................................11, 12

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ...................................................................6

*Moore v. Kayport Package Exp.*,
    885 F.2d 531 (9th Cir. 1989) ...................................................................21

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ...................................................................7

*Peterson v. Kennedy*,
    771 F.2d 1244 (9th Cir. 1985) ..................................................................10

*Peterson v. Transp. Workers Union*,
    75 F. Supp. 3d 131 (D.D.C. 2014)...........................................................20

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*,
    378 F.3d 269 (2d Cir. 2004) .....................................................................8

*Retana v. Apartment, Motel, Hotel & Elevator Operators Union*.
    453 F.2d 1018 (9th Cir. 1972) ..................................................................12

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...................................................................6

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) ..................................................................21

*Spellacy v. Airline Pilots Ass'n*,
    156 F.3d 120 (2d Cir. 1998) ....................................................................18

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)............................................................................20

*Stevens v. Moore Bus. Forms, Inc.*,
    18 F.3d 1443 (9th Cir. 1994) ...................................................................14

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin's Motion to Dismiss Complaint

*Stock W., Inc. v. Confederated Tribes of the Colwell Reservation*,
   873 F.2d 1221 (9th Cir. 1989) ............................................................... 6

*Teamsters Local Union No. 42 v. NLRB*,
   825 F.2d 608 (1st Cir. 1987) ................................................................ 8

*Tilley v. Shelton*,
   No. 20-cv-10638 (JSR), 2021 U.S. Dist. (S.D.N.Y. Sep. 9, 2021)
   (Rakoff, J.) ............................................................................................ 9

*Vaca v. Sipes*,
   386 U.S. 171 (1967) .......................................................................... 11


**Federal Statutes**

29 U.S.C. § 159(a) ...................................................................... 1, 3

29 U.S.C. § 185 ............................................................................ 10


**Other Authorities**

Federal Rule of Civil Procedure Rule 12(b)(1) ........................... 1, 2, 6, 7

Federal Rule of Civil Procedure Rule 12(b)(6) ................................. *passim*

U.S. Constitution Article III .................................................... 2, 6, 20, 21

Union Constitution ............................................................................. 3

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.      INTRODUCTION

In 2020, the SAG-AFTRA Health Plan ("Plan") announced a number of changes to health benefits, including some reductions, designed to preserve and strengthen the Plan's long-term financial viability.  In August 2021, Plaintiff Frances Fisher, a member and officer of Defendant Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA" or "Union"), filed this suit alleging that SAG-AFTRA and various SAG-AFTRA officials breached their duty of fair representation in violation of Section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a).  Plaintiff alleges that in the course of negotiations over three collective bargaining agreements ratified in 2019 and 2020, the individual Defendants, who all serve as trustees to the Plan, failed to disclose material information concerning the Plan's finances and the likelihood that members' health benefits might be reduced.  Defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin now move to dismiss Plaintiff's Complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is warranted for five reasons.

First, Plaintiff's claim is time-barred.  Claims for breach of the duty of fair representation are subject to an intentionally strict six-month statute of limitations. Plaintiff's claim accrued when the collective bargaining agreements at issue were negotiated in 2019 and 2020. That the health benefit eligibility changes were publicly announced in August 2020 does not toll the statute of limitations.  But even if they could toll it, Plaintiff did not file her Complaint until August 3, 2021— almost a year after the changes were announced, and long *after* the limitations period expired when the negotiations were completed on the three collective bargaining agreements identified in the Complaint.

Second, Plaintiff has not stated a claim against Mr. Pniewski or Mr. Hartley-Margolin because individual union officers or members cannot be liable for breach of the duty of fair representation; such a claim can only be brought against a union.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Third, Plaintiff's Complaint does not state a claim for breach of the duty of fair representation. She has not pleaded facts establishing that SAG-AFTRA's conduct was arbitrary, discriminatory or in bad faith. Even if a mere omission can constitute bad faith conduct (and under current precedent, it cannot), Plaintiff has not shown that Defendants failed to disclose information of a nature to be reasonably relied on by members.

Fourth, Plaintiff has not pleaded that Defendants' challenged conduct caused harm to any Union members. Claims that a union breached its duty of fair representation in the context of collective bargaining—even claims based on material misrepresentations—are highly disfavored because unions are entitled to wide discretion in negotiations, and it is almost impossible for a plaintiff to show that a superior alternative deal could have actually been reached that would have been acceptable to both the employer and the broader union membership. Accordingly, to establish the necessary element of causation, plaintiffs are required to plead facts plausibly showing that absent an alleged misrepresentation, such alternative contract terms would likely have been agreed to. The Complaint here does not include those necessary allegations.

Fifth, Plaintiff has failed to allege that she has suffered any concrete injury as a result of Defendants' challenged conduct. She has not alleged that she was even a participant in or Plan beneficiary, or that her own health benefits were affected in any way by the Plan changes. Without such allegations of harm, Plaintiff cannot establish that she has standing under Article III of the U.S. Constitution to assert her claim for breach of the duty of fair representation, and this Court lacks subject matter jurisdiction over the claim.

Therefore, Plaintiff's Complaint, including the class allegations, must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, and dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because any amendment would be futile.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## II.   ALLEGATIONS

### A.   Lone Cause of Action

Plaintiff's Complaint asserts a single cause of action against defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin[1] for breach of the duty of fair representation under Section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a).  Complaint ¶¶ 2, 87-93.  She alleges that the breach was perpetrated "By [] Defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Brown and Powell."  *Id.* at p. 39.  Elsewhere, she alleges that "[t]he Union [i.e., Defendant SAG-AFTRA] breached its duty of fair representation to Plaintiff and the Class . . . in the Union's collective bargaining processes provided by the Union Constitution."  *Id.* ¶ 91.

### B.   Allegations of Injury to Plaintiff and Putative Class Members

Plaintiff's claim arises from changes to the benefits offered by the Plan, which is a collectively-bargained, jointly-trusteed labor-management trust that provides benefits to participating SAG-AFTRA members.  *Id.* ¶¶ 4, 7.  The changes included increases to preexisting earnings-based thresholds for members to qualify for benefits, disqualification of certain forms of earnings in the assessment of whether members meet those eligibility thresholds, modification of the period in which earnings are calculated to determine eligibility, and elimination of certain alternative means of qualifying for benefits.  *Id.* ¶¶ 7-8.

A minority of Union members are participants in the Plan.  The Complaint alleges that there were around 33,000 bargaining unit Plan beneficiaries and around 160,000 total union members in 2020.  *Id.* ¶ 59 (identifying 33,000 members participating in the health plan, according to a news article published in August

---

[1] This Motion is brought on behalf of SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin only.  Accordingly, allegations made against the other individual Defendants are not relevant, and will not be discussed, except to the extent Plaintiff seeks to hold SAG-AFTRA itself liable for the actions of those other Defendants.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   2020); ¶ 64 (alleging that there are 80,000 members in the Los Angeles local, and

2   that this figure represents approximately 50% of the total membership).

3       The Complaint does not allege whether or not Plaintiff herself was a Plan

4   participant or beneficiary, nor that she experienced any changes or reductions in

5   benefits as a result of the changes announced in August 2020.  The only allegations

6   concerning Plaintiff's individual circumstances are that she is a Union member, a

7   Los Angeles local officer, and a member of the National Board.  *Id.* ¶ 23.

8       **C.**    **Defendants' Alleged Conduct**

9       The Plan is funded primarily by contributions paid by employers pursuant to

10  the terms of their collective bargaining agreements with SAG-AFTRA.  Complaint

11  ¶¶ 5, 9.  Plaintiff's claim for breach of the duty of fair representation focuses on

12  Defendants' conduct in the course of negotiations with employers for three

13  collective bargaining agreements identified as the "2019 Commercials CBA," the

14  "2019 Netflix CBA," and the "2020 TV/Theatrical CBA."  *Id.* ¶ 11.

15      The Union's negotiating process for the 2019 Commercials and the 2020

16  TV/Theatrical CBAs was consistent with its historical practice for past CBAs.  *Id.*

17  ¶¶ 12, 50.  The Union's National Board appointed "Wages and Working

18  Conditions" committees to "gather proposals from the national membership and

19  formulate the Union's proposal package to exchange with employers," and to

20  "value" the proposals.  *Id.*  The National Board also appointed separate "Negotiating

21  Committees" to conduct the actual bargaining.  *Id.*  The Complaint does not specify

22  what employers or employer representatives the Union was engaged in bargaining

23  with.  Once bargaining was complete, the agreed-on terms were approved by the

24  National Board, and then ratified by the Union membership.  *Id.*

25      The Complaint alleges that individual Defendants including Mr. Pniewski

26  "undertook to represent the Union and its membership in the 2019 Netflix and 2020

27  TV/Theatrical collective bargaining processes."  *Id.* ¶ 13.  Individual Defendants

28  including Mr. Hartley-Margolin similarly undertook to represent the Union and its

Bᴜꜱʜ Gᴏᴛᴛʟɪᴇʙ
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    membership in the negotiations for the Commercials contract.  *Id.*  Other individual

2    Defendants served on the Union's National Board and voted to approve the three

3    agreements at issue.  *Id.*  Mr. Pniewski served on the Negotiating Committee for the

4    2020 TV/Theatrical CBA, and Mr. Hartley-Margolin served on the Negotiating

5    Committee for the 2019 Commercials CBA.  *Id.* ¶¶ 28-29.

6         Plaintiff alleges that each of the individual Defendants, including Mr.

7    Pniewski and Mr. Hartley-Margolin, was a trustee of the Plan and had detailed

8    knowledge regarding the Plan's financial status, "the level of funding required to

9    sustain its health benefit structure," and the fact that benefit cuts were going to be

10   implemented.  *Id.*  She further alleges that the individual Defendants knew the

11   Union's contract proposals—which are not described in the Complaint—"were

12   inadequate to sustain the [] Plan's benefit structure," and "failed to disclose this vital

13   information to the other participants in the Union's collective bargaining process."

14   *Id.*  She does not allege that there were other potential proposals the Union could

15   have made that could have prevented the need for benefit cuts.

16        The Complaint cites with certainty statements from Plan trustees

17   acknowledging that before implementing the eligibility changes at issue, the trustees

18   "had worked nearly every day for [] two years to figure out how they could preserve

19   the [] Plan's benefits."  *Id.* ¶¶ 9-10, 49.

20        **D.    Chronology of Relevant Events**

21        Plaintiff alleges that the individual Defendants "knew by at least mid-2018

22   that [the Plan's] benefit structure was not sustainable under the operative CBAs, that

23   a potentially fatal structural funding gap was widening, and that massive benefit cuts

24   . . . loomed without increased funding."  *Id.* ¶ 49.

25        Negotiations for the 2019 Commercials CBA were completed on April 2,

26   2019, the agreement was approved by the National Board on April 13, 2019, was

27   ratified by members on May 8, 2019, and became effective as of April 1, 2019.  *Id.*

28   ¶ 52.  The 2019 Netflix CBA was submitted to and approved by the National Board

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

on July 20, 2019, *id*. ¶ 51, and became effective as of August 1, 2019, *id.* ¶ 53. SAG-AFTRA completed negotiations on the 2020 TV/Theatrical CBA on June 11, 2020, the agreement was approved by the National Board on June 29, 2020, and it was ratified by the membership on July 22, 2020.  *Id.* ¶ 54.

The Plan publicly announced the health benefit eligibility changes at the heart of Plaintiff's Complaint on August 12, 2020.  *Id*. ¶¶ 7, 9.  The Complaint concedes that "Union members" learned of the changes on that date.  *Id.* ¶ 54.

Plaintiff filed her Complaint in this action on August 3, 2021, nearly a full year after the changes were publicly announced, and over 13 months after negotiations were completed on the TV/Theatrical CBA, the last of the three agreements at issue to be negotiated.  Dkt. No. 20.

## III.   ARGUMENT

### A.    Legal Standards Under Rules 12(b)(1) and 12(b)(6)

Article III of the United States Constitution limits the federal court's subject matter jurisdiction to cases or controversies.  U.S. CONST. Art. III § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (holding complaint that fails to meet the Article III standing requirements is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction); *Chandler v. St. Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). Federal Rule of Civil Procedure Rule 12(b)(1) allows a defendant to move to dismiss a complaint for lack of subject matter jurisdiction.  The motion can either be "facial," where the inquiry is confined to the allegations in the complaint, or "factual," where the court considers declaration evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Although the defendant is the moving party, the plaintiff bears the burden of both pleading and proving that a case is properly in federal court, and a court will "presume" that subject matter jurisdiction is lacking "unless the contrary affirmatively appears."  *Stock W., Inc. v.*

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  *Confederated Tribes of the Colwell Reservation*, 873 F.2d 1221, 1225 (9th Cir.

2  1989).

3          Under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal is warranted

4  where a plaintiff's complaint "lacks a 'cognizable legal theory' or sufficient factual

5  allegations to 'support a cognizable legal theory.'" *Beckington v. Am. Airlines, Inc.*,

6  926 F.3d 595, 604 (9th Cir. 2019) (quoting *Depot, Inc. v. Caring for Montanans,*

7  *Inc.*, 915 F.3d 643, 652 (9th Cir. 2019)).  To meet this standard, the complaint "must

8  contain sufficient 'well-pleaded, nonconclusory factual allegations,' accepted as

9  true, to state 'a plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S.

10 662, 679-80 (2009)).  The allegations "must be enough to raise a right to relief

11 above the speculative level." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051

12 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

13 "There must be 'more than a sheer possibility that a defendant has acted

14 unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

15     **B.     Plaintiff's Claim is Time-Barred.**

16          The Complaint allegations establish that Plaintiff's claim for breach of the

17 duty of fair representation must be dismissed on statute of limitations grounds.

18 Claims for breach of the duty of fair representation are subject to an intentionally

19 strict six-month statute of limitations.  *DelCostello v. Int'l Bhd. of Teamsters*, 462

20 U.S. 151, 169 (1983); *Allen v. United Food & Commercial Workers Int'l Union*, 43

21 F.3d 424, 426 (9th Cir. 1994).  The cause of action accrues "when the plaintiff

22 knew, or should have known, of the defendant's wrongdoing and can successfully

23 maintain a suit in the district court." *Allen*, 43 F.3d at 427.

24          Generally, where a plaintiff challenges union conduct in the context of

25 contract negotiations, the claim accrues *at the latest* when "negotiations are

26 complete and a 'final product' has been reached." *Addington v. US Airline Pilots*

27 *Ass'n*, 606 F.3d 1174, 1182 (9th Cir. 2010).  The court in *Addington* addressed the

28 question of when a duty of fair representation claim based on bargaining-related

Bᴜsʜ Gᴏᴛᴛʟɪᴇʙ
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   conduct becomes ripe for adjudication.  Relying on prior circuit court precedents

2   addressing the related question of when a claim accrues for statute of limitations

3   purposes, the court acknowledged that in many cases the claim may accrue *before*

4   negotiations are complete, at the time "when the union actually advocated [a]

5   position to the employer during negotiations." *Id.* at 1182-83 (discussing *Ramey v.*

6   *Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269 (2d Cir.

7   2004) (holding DFR claim accrued when union advocated seniority position to

8   employer *during* contract negotiations), and *Teamsters Local Union No. 42 v.*

9   *NLRB*, 825 F.2d 608 (1st Cir. 1987) (holding claim accrued when union announced

10  to employees two months *before* negotiations commenced that they would be

11  assigned to less desirable shift)).  The Court distinguished those cases, holding that a

12  duty of fair representation claim arising from bargaining-related conduct typically

13  becomes ripe when "negotiations are complete and a 'final product' has been

14  reached." *Id.* at 1182 (quoting *Air Line Pilots v. O'Neill*, 499 U.S. 65, 78 (1991)).

15       Here, Plaintiff alleges that the Union breached its duty of fair representation

16  by failing to disclose material information in negotiations over three collective

17  bargaining agreements.  Negotiations over the last of the three agreements were

18  completed—and a "final product" reached under *Addington*—on June 11, 2020.

19  Complaint ¶ 54.  Therefore, the latest date that the six-month limitations period for

20  Plaintiff's claim expired was December 11, 2020.

21       Plaintiff cannot salvage her claim by arguing that it did not accrue when a

22  final product was reached on the last of the agreements at issue because she did not

23  yet know that members' health benefits would be cut until August 2020.  This

24  argument would fail because as *Addington* and *Allen* make clear, Plaintiff learned of

25  the alleged misconduct during the six-month limitations period ending in December

26  2020, and therefore she could have timely challenged the union's conduct within six

27  months of the last CBA being completed in June 2020.  *See Allen*, 43 F.3d at 425-28

28  (rejecting plaintiff's argument that union's breach of the duty of fair representation

1  claim for conspiring with employer during contract negotiations to eliminate

2  severance benefit could be challenged more than six months later as union could

3  have tried to restore the benefit in the next negotiations because the breach occurred

4  in the original contract negotiations and subsequent bargaining relates only to the

5  extent of damages and does not toll the statute of limitations period).

6        In a recent analogous case, the court held that a plaintiff's fair representation

7  claim—there based on a union's failure to pursue a grievance over the plaintiff's

8  allegedly discriminatory termination—accrued when the plaintiff had notice that the

9  union was not going to pursue the grievance. *Tilley v. Shelton*, No. 20-cv-10638

10  (JSR), 2021 U.S. Dist. LEXIS 17139, at *5-6 (S.D.N.Y. Sep. 9, 2021) (Rakoff, J.).

11  The court rejected plaintiff's argument that it accrued later when she allegedly

12  learned the union had ignored evidence of discrimination, reasoning that the fact

13  "[t]hat the plaintiffs have since uncovered additional . . . evidence of alleged

14  wrongdoing does not itself serve to toll the limitations period where . . . they had

15  sufficient basis to bring the claim within the limitations period." *Id.*  Here, the

16  evidence of alleged wrongdoing culminated in August 2020 when the eligibility

17  changes were announced, and was therefore known to Plaintiff during—in fact,

18  toward the beginning of—the limitations period.

19        Even if *Addington* and *Allen* were ignored to start the statute of limitations

20  period when the eligibility changes were announced to the membership, the claim

21  would still be time-barred.  Plaintiff acknowledges that Union members learned of

22  the changes when the Union publicly announced them on August 12, 2020.

23  Complaint ¶¶ 54 & 59.  Thus, even based on the date of this uncovered, additional

24  evidence, the latest date on which Plaintiff could have timely filed suit was February

25  12, 2021.  Plaintiff did not file her Complaint until August 3, 2021, more than seven

26  months after the December 11 deadline, and over five months after the alternative

27  February 12 deadline to file suit.  Thus, Plaintiff's claim is time-barred and must be

28  dismissed.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

### C.     Individual Union Officers Cannot Be Held Personally Liable for Breach of the Union's Duty of Fair Representation.

Plaintiff has named a number of individual union officers and members as defendants in this action.  Moreover, Plaintiff has expressly pled "Count 1," her cause of action for breach of the duty of fair representation, exclusively against individual defendants by alleging that the breach was perpetrated "[b]y CB Defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Brown and Powell."  Complaint at p. 39.  But individuals cannot be held liable for breach of the duty of fair representation. 29 U.S.C. § 185 ("Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 249 (1962) (reasoning that a "union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it" and that "[t]his policy cannot be evaded or truncated by the simple devise of suing union agents or members . . . for damages for violation of a collective bargaining contract for which damages the union itself is liable") (internal quotation marks and citation omitted); *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1400 (9th Cir. 1985) (recognizing a "shield for individual union members in suits for breach of the duty of fair representation"); *Carter v. Smith Food King*, 765 F.2d 916, 920-21 (9th Cir. 1985) (affirming summary judgment in favor of union member, finding that "[i]t is well settled that [LMRA] section 301 provides the basis for an action for breach of the duty of fair representation only against a union as an entity, and not against individuals who happen to hold positions in that union"); *Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir. 1985) ("Union officers, employees and agents are not subject to individual liability for acts performed on behalf of the union in the collective bargaining process.").  Thus, Plaintiff's breach claim against individual Defendants must be dismissed.

**D.    Plaintiff Has Failed to State a Claim Against SAG-AFTRA for Breach of the Duty of Fair Representation.**

Relying on a convoluted argument that attempts to place responsibility on the Union for what is quintessentially a Plan decision, Plaintiff alleges that in the negotiations over three collective bargaining agreements in 2019 and 2020, Defendants breached their duty of fair representation by failing to disclose information concerning the Plan's financial condition to others involved in the bargaining process. The Complaint, however, does not state a claim for breach of the duty of fair representation because (1) the allegations do not establish that the Union engaged in conduct that was arbitrary, discriminatory, or in bad faith; and (2) there are no allegations that any injury to Union members was caused by the Union's alleged misrepresentations or omissions.

**1.    The Union's Alleged Conduct Does Not Constitute a Breach of Its Duty of Fair Representation.**

Plaintiff's Complaint assumes that Defendants had a duty to disclose all material information to members in the bargaining process. But that is not the law, and Defendants did not have an affirmative duty to provide all of its members with comprehensive information about the Plan's finances or the likelihood that benefit cuts might be implemented in the future. Rather, a union's only obligation pursuant to its duty of fair representation is to refrain from conduct that rises to the level of being "arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (holding where plaintiff does not allege discriminatory conduct by defendant union, the only inquiry is whether union's conduct was arbitrary or in bad faith); *O'Neill*, 499 U.S. at 67 (reaffirming three-part standard for duty of fair representation claims in context of contract negotiation); *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

The Supreme Court has emphasized time and again that unions are to be given wide latitude in negotiations, and courts are not to second-guess the product of

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

collective bargaining simply because a particular group of employees is dissatisfied with the result. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953) ("Any authority to negotiate will derive its strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in light of all relevant considerations, they believe will best serve the interests of the parties represented. . . . Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees . . . . The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents . . . ."); *see also Humphrey v. Moore*, 375 U.S. 335, 358 (1964) (Goldberg, J., concurring) ("[I]n this Court's fashioning of a federal law of collective bargaining, it is of the utmost importance that the law reflect the realities of industrial life and the collective bargaining process. . . . [M]any individual rights, such as the seniority rights involved in this case, in fact arise from the concerted exercise of the right to bargain collectively. Consequently, the understandable desire to protect the individual should not emasculate the right to bargain by placing undue restraints on the contracting parties."); *Retana v. Apartment, Motel, Hotel & Elevator Operators Union*. 453 F.2d 1018, 1024 (9th Cir. 1972) (remarking that "it will be the unusual case in which hostile discrimination, bad faith, dishonesty, or arbitrary conduct can be alleged"). Plaintiff's Complaint does not state a claim under any of the three prongs.

(a)    Plaintiff Has Not Stated a Claim Based on Arbitrary Conduct.

The standard for arbitrary conduct is intentionally deferential to unions, and an exercise of judgment can be found to be arbitrary "only when it is irrational, when it is without a rational basis or explanation," even if the union's judgment is ultimately wrong. *Marquez*, 525 U.S. at 46. The Ninth Circuit has held that a duty of fair representation claim predicated on "arbitrary" union conduct can only lie

12

where the challenged conduct "was merely ministerial or procedural in nature." *Demetris v. Transp. Workers Union of Am.*, 862 F.3d 799, 805 (9th Cir. 2017).  By contrast, if the union "exercises its judgment," its conduct "generally is not arbitrary."  *Id.* at 809; *see also Burkevich v. Air Line Pilots Ass'n*, 894 F.2d 346, 349 (9th Cir. 1990) (explaining if a union's challenged conduct "involved the union's judgment, then the plaintiff can prevail only if the union's conduct was discriminatory or in bad faith") (internal quotations omitted).  A union exercises its judgment when it engages in a "deliberative decision-making process." *Id.* at 806.

Here, the Complaint acknowledges that the Union engaged in a deliberative decision-making process in negotiating the collective bargaining agreements at issue.  Complaint ¶¶ 50-51 (discussing the process for negotiation and ratification of the collective bargaining agreements, involving the appointment of committees to "formulate and value proposals," approval by the Union's National Board, and submission to the general membership for ratification); *see also* David Robb, *SAG-AFTRA Health Plan Trustees Say Employer Contributions Haven't Kept Up With Soaring Health Care Costs*, DEADLINE (Aug. 18, 2020) ("Robb Article"), (cited in Complaint at ¶ 59) (discussing alternative strategies considered by union officials, and their efforts to secure increased employer contributions to the health plans in contract negotiations).[2]  These allegations establish that the Union exercised its judgment when negotiating the three collective bargaining agreements identified in the Complaint so this deliberative conduct cannot, as a matter of law, qualify as arbitrary.

---

[2] The Court can consider this article in ruling on the instant motion because it was cited and relied on in the Complaint.  *See, e.g.*, *Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*, No. 8:19-cv-78-AB (JDEx), 2021 U.S. Dist. LEXIS 134417, at *5 (C.D. Cal. May 19, 2021) (holding court may consider documents "incorporated by reference in the complaint" in ruling on a motion to dismiss) (quoting *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

774587v1  11840-31004

13

Case No. 2:21-cv-05215-CAS-JEMx
Defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin's Motion to Dismiss Complaint

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

(b)    Plaintiff Has Not Stated a Claim Based on Discriminatory Conduct.

A claim for breach of the duty of fair representation based on "discriminatory" conduct requires more than allegations that the union treated different groups of employees in a disparate manner; a plaintiff must "adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Beck v. UFCW, Local 99*, 506 F.3d 874 (9th Cir. 2007) (internal quotations omitted). Here, Plaintiff alleges that the Union failed to prevent cuts to health benefits that were more severe for some employees (*e.g.* older members) than for others, but she has not alleged that the Union acted intentionally with a discriminatory purpose unrelated to legitimate objectives. Thus, Plaintiff has not stated a claim based on discriminatory conduct.

(c)    Plaintiff Has Not Stated a Claim Based on Bad Faith.

Plaintiff has not stated a claim based on "bad faith" conduct. To establish a breach based on bad faith, a plaintiff must allege facts establishing that the union engaged in "fraud, deceitful action, or dishonest conduct." *Demetris*, 857 F.3d at 812. Bad judgment is not enough to support an inference of bad faith. *Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1448 (9th Cir. 1994). In the bargaining context, courts have held that "intentionally misleading statements" designed to induce members to accept controversial contract provisions can constitute bad faith, but only if they are "of a nature to be reasonably relied on by the membership." *Bautista v. Pan Am. World Airlines, Inc.,*, 828 F.2d 546, 551 (9th Cir. 1987) (quoting *Swatts v. United Steelworkers of Am.*, 808 F.2d 1221, 1225 (7th Cir. 1986)). The Ninth Circuit has not held that the mere *omission* of information can rise to the level of bad faith, emphasizing that malfeasance is more appropriately actionable than nonfeasance. *Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1472 n.6 (9th Cir. 1992) (noting "[n]o court has yet considered whether mere nondisclosure also constitutes a breach of the union's duty of fair representation" ).

1    Even if a fair representation claim could be predicated on a mere omission,

2    Plaintiff has not stated a claim based on bad faith because she has not alleged facts

3    establishing that the Union's alleged withholding of information concerning the

4    Plan's financial situation was intentional and "of a nature to be reasonably relied

5    upon" by the membership in voting on contract ratification.

6    Plaintiff has not plausibly alleged that there were any possible alternative

7    contract proposals the Union could have made that would have saved any members'

8    health benefits.  Indeed, while the Complaint's lack of detail concerning the actual

9    contract negotiations at the heart of Plaintiff's claim is striking—it does not even

10   identify the employers or their representatives with whom the Union was

11   negotiating, nor does it include any description of the parties' proposals or the terms

12   of the final agreement—it implicitly acknowledges that the Union actually

13   negotiated historically high (almost unprecedented) *increases* in employer

14   contributions.  *See* Robb Article (cited in Complaint at ¶ 59) (noting that the

15   TV/Theatrical agreement "includes $54 million in additional funding for the Health

16   Plan" including a 2% increase in employer contributions over three years, an

17   increase that "has only been achieved one time since the founding of the Plans").

18   The Complaint similarly acknowledges that available alternatives to adjusting the

19   eligibility requirements that the Plan ultimately implemented were considered, but it

20   was determined the Plan would not be "able to provide any meaningful benefits" to

21   participants under any of those alternatives.  *Id.*

22   Moreover, in order to show that the Union's alleged omissions were material,

23   Plaintiff would have needed to allege not only that there were alternative proposals

24   union members might have preferred that would have preserved their health

25   benefits, but also that the employers would likely have *agreed* to those proposals, or

26   at least that they would have been willing to consider them.  *See Acri v. Int'l Assoc.*

27   *of Machinists*, 781 F.2d 1393, 1397 (9th Cir. 1986) (holding where a union is

28   alleged to have breached its duty of fair representation in contract negotiations, the

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    plaintiff must prove that the employer would have agreed to superior alternative

2    contract terms) (discussed *infra*).  Without these allegations of materiality and

3    reasonable reliance, Plaintiff has not stated a claim that the Union engaged in bad

4    faith to survive a motion to dismiss.

5

          **2.**      **Plaintiff Has Not Alleged That Any Injuries to Union Members Were Caused By the Union's Conduct.**

6

7       Even if Plaintiff had alleged facts establishing that the Union's conduct rose

8    to the level to support a breach of the duty of fair representation claim, the claim

9    still must be dismissed because Plaintiff has not alleged facts establishing that any

10    harm suffered by Union members was caused by the Union's challenged conduct.

11    *See Carr v. Allied Waste Sys.,* No. 10-0715, 2010 U.S. Dist. LEXIS 124192, at *55

12    (N.D. Cal. Nov. 23, 2010) (citing *Ackley*, 958 F.2d at 1472) (granting motion to

13    dismiss a breach of the duty of fair representation claim because plaintiff "must also

14    allege a causal connection between the Union's wrongful conduct and his injuries"

15    and failed to do so).

16       More specifically, Plaintiff has not alleged that (1) if Defendants had

17    disclosed the information Plaintiff alleges they should have disclosed, the

18    membership would have refused to ratify the three collective bargaining agreements

19    at issue and would have instead demanded Defendants advocate some alternative

20    proposal to redirect wage increases for potentially all 160,000 members to assist an

21    unidentified number of the 33,000 Plan participants who would be unable to meet

22    the higher eligibility requirements; (2) the alternative proposal the Union could have

23    made would have been sufficient to prevent the eligibility changes from being

24    needed to secure the financial stability of the Plan; and (3) the multiemployer

25    association or employers with whom the Union was negotiating the three collective

26    bargaining agreements would have acceded to the alternative proposals if the Union

27    had submitted it.  Precedent makes clear that Plaintiff bears the undeniably-

28    substantial burden of pleading now, and later proving, each of the above facts in

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin's Motion to Dismiss Complaint

1  order to establish that the Union breached its duty in negotiating the contracts at

2  issue.

3       Claims that a union breached its duty of fair representation in the context of

4  contract negotiations are highly disfavored, in part because it is often impossible for

5  a court to evaluate whether a union could have possibly achieved different or better

6  results in the negotiating process, and courts therefore prefer to leave issues of

7  accountability for bargaining-related conduct to be resolved through the union's

8  own internal democratic processes.  *See Ackley*, 958 F.2d at 1472 ("The [] test for

9  causality . . . is difficult to satisfy, and rightly so.  Generally, the union's internal

10  election and rulemaking processes provide the proper vehicle, at least initially, for

11  addressing members' complaints regarding the adequacy of union representation

12  during the bargaining process.") (citing *Acri v. Int'l Ass'n of Machinists*, 781 F.2d

13  1393, 1399-1400 (9th Cir. 1986) (Reinhardt, J., concurring)).[3]

14       Under the causation standard laid out in *Acri* and *Ackley*, a plaintiff alleging

15  that a union breached its duty of fair representation by failing to disclose material

16  information in the context of bargaining must clear a high bar by—at this stage—at

17

18  _____

19  [3] In *Acri*, Judge Reinhardt—who later authored the unanimous majority opinion in
   *Ackley*, in which he expressly reaffirmed the reasoning from his prior concurring
20  opinion—reasoned as follows regarding the high bar to show causation in a fair
   representation case arising from bargaining-related conduct:
21
        [T]he rule we follow has the practical effect, in almost every instance,
22        of precluding union members from recovering against their unions in
          cases of this kind. . . . I hasten to add that I think that a rule that makes
23        breach of the duty of fair representation suits impractical in cases of the
          type before us achieves a desirable result.  Were I free to decide what
24        the law *should* be, I would simply not permit suits against union
          officials by union members dissatisfied with their officers' conduct in
25        negotiating collective bargaining agreements.  Judge Hall's [majority]
          opinion, properly applying precedent, achieves that same result
26        indirectly, by placing an impossible causation barrier in the way of
          such actions.  In my view, the union's own election and removal
27        process provides the proper vehicle for addressing complaints like the
          plaintiffs'.
28  781 F.2d at 1399.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

least pleading that "(1) absent the misrepresentations, the outcome of the ratification vote would have been different; *and* that (2) had it been different, the company would have acceded to the union's demands." *Ackley*, 958 F.2d at 1472 (*citing Acri*, 781 F.2d at 1397) (emphasis in original).

In *Ackley*, employees complained that their union failed to disclose material changes in a tentative agreement prior to a ratification vote. The court affirmed the dismissal of the plaintiff's claim for breach of the duty of fair representation because the plaintiffs did not establish that their employer would have agreed to more generous terms had the members rejected the proposal. *Id.* Similarly, in *Acri*, where plaintiffs argued that their union misrepresented contract terms regarding severance pay, the Court held that plaintiffs could not establish a fair representation claim because they could not prove "that, absent the alleged misrepresentation, the Company would have acceded to union demands for removal of the severance pay cap." 595 F.2d at 330.

As a matter of law, Plaintiff must prove absent the misrepresentation, the outcome of the negotiations would have been different. *See Spellacy v. Airline Pilots Ass'n*, 156 F.3d 120, 130 (2d Cir. 1998) (explaining where plaintiffs claimed union failed to negotiate a seniority-based training system, they could not prove a fair representation claim because they could not show the employer would have agreed to the proposal if the union had pushed for it); *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574, 581 (8th Cir. 1981) (finding no breach because, among other things, the employer was unlikely to agree to establish the desired severance fund in light of its finances and its demonstrated opposition to the proposal); *Brown v. Int'l Union, United Auto*, 689 F.2d 69, 72 (6th Cir. 1982) (reasoning where union failed to keep its members apprised of employer's failure to make pension contributions, there was no causality because the employer was "essentially insolvent" and couldn't have made the payments in any event); *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1017-20 (3d Cir. 1977) (finding no

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin's Motion to Dismiss Complaint

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  breach because the record showed members would have ratified the union's

2  proposal even absent the union's misrepresentation, therefore no causal link).

3       Plaintiff, however, has plainly failed to plead allegations that would meet the

4  causation standard articulated in *Ackley* and *Acri*.  First, to survive dismissal,

5  Plaintiff would have to allege facts establishing that if the full Negotiating

6  Committee had known the Plan was preparing to implement changes to eligibility, it

7  would have proposed that employers increase contributions so significantly that the

8  increased revenues to the Plan would have defrayed the Plan's financial difficulties

9  and eliminated the need for benefit cuts.  The Complaint's allegations do not support

10 an inference that any particular increase in employer contributions would have been

11 sufficient to defray the Plan's financial shortfall and eliminate the need for benefit

12 cuts.  Second, like the plaintiffs in *Ackley*, Plaintiff has failed to include allegations

13 establishing that the employers' representatives *would have agreed to the*

14 *contribution increases* that could have preserved their existing benefits.  And,

15 finally, Plaintiff's allegations do not establish that but for SAG-AFTRA's

16 omission(s), the membership *would not* have ratified the contract that they

17 ultimately voted to approve, *i.e.*, that they would have rejected it in favor of a

18 hypothetical alternative contract with massive contribution increases.  This inference

19 is doubtful, as the majority of members are not themselves participants in the Plan,

20 and not all of that subset are alleged to have been at risk of losing health care

21 benefits because of the eligibility adjustments, *see supra* n. 2, and the majority of

22 members may have reasonably preferred wage increases for all even if some other

23 members experienced Plan benefit reductions.

24       Thus, even if the Complaint contained sufficient allegations to establish that

25 the Union's failure to disclose information was arbitrary, discriminatory or in bad

26 faith, Plaintiff's breach of the duty of fair representation claim should still be

27 dismissed because Plaintiff cannot establish that any members' injuries were caused

28 by the alleged breach.

**E.    Plaintiff Has Not Shown that She Has Standing to Assert a Claim for Breach of the Duty of Fair Representation.**

In order for a plaintiff to establish that a federal court has subject matter jurisdiction over her complaint, she must allege facts sufficient to show that the standing requirements of Article III of the Constitution are satisfied.  Plaintiff must show she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  To meet the "injury in fact" requirement, the plaintiff must allege an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).  Federal courts have uniformly applied the injury in fact requirement in cases alleging breach of the duty of fair representation. *See, e.g.*, *Keener v. Nat'l Nurses Org. Comm.*, No. 14-3373, 615 Fed. Appx. 246, 249-51 (6th Cir. May 27, 2015) (dismissing union members' fair representation claim because they "fail[ed] to allege either a present or an imminent injury" resulting from the union's allegedly unlawful conduct); *Johnson v. NFL Players' Ass'n*, No. 17 Civ. 5131 (RJS), 2018 U.S. Dist. LEXIS 225346, at *19 (S.D.N.Y. Oct. 3, 2018) (holding plaintiff alleging duty of fair representation claim must "allege facts demonstrating that he was injured by the conduct of the [defendant union]"); *Peterson v. Transp. Workers Union*, 75 F. Supp. 3d 131, 135-39 (D.D.C. 2014) (dismissing fair representation claim for lack of standing where plaintiff failed to allege injury in fact).

In order to demonstrate Article III standing, Plaintiff would not only have to allege that she is one of the *minority*[4] of the broader union membership that actually participate in the Plan, *see Harris v. Amgen, Inc.*, 573 F.3d 728, 732 (9th Cir. 2009)

---

[4] *Compare* Complaint ¶ 64 (referencing approximately 160,000 total union members) *with* ¶ 59 (noting 33,000 members participating in the health plan).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1 (holding only "participants" of an employee benefit plan have standing to sue for

2 breach of fiduciary duty under the Employee Retirement Security Act of 1974), but

3 also that she was one of the even smaller group of members whose benefits were

4 reduced, eliminated, or otherwise affected by the eligibility changes at the heart of

5 Plaintiff's claim.  The only allegations in the Complaint concerning Plaintiff's

6 individual circumstances are the allegations that she is a union member, an officer in

7 the Los Angeles local, and a National Board member. Complaint ¶ 23.  These

8 allegations do not establish that Plaintiff fell into the subset of Plan beneficiaries

9 who suffered a cognizable injury as a result of the eligibility changes.

10 **F.    Class Allegations Cannot Survive If Plaintiff's Claim Is Dismissed.**

11        If a named plaintiff in a putative class action has her individual claim

12 dismissed, her class claims cannot survive.  *See, e.g., Slayman v. FedEx Ground*

13 *Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014).  As argued above,

14 Plaintiff's individual claim for breach of the duty of fair representation is subject to

15 dismissal on numerous grounds, including Article III standing.  Consequently, her

16 class claims must be dismissed as well.

17 **G.    Plaintiff's Claim Should Be Dismissed With Prejudice.**

18        The Court may dismiss without leave to amend if amendment would be futile.

19 *Chappel v. Lab. Corp.*, 232 F.3d 719, 725–26 (9th Cir. 2000) ("A district court acts

20 within its discretion to deny leave to amend when amendment would be futile[.]");

21 *Moore v. Kayport Package Exp.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to

22 amend need not be given if a complaint, as amended, is subject to dismissal.").

23 Plaintiff's allegations show that her claims are time-barred.  Therefore, any

24 amendment would be futile.  *See Batache v. Santi*, No. 2:18-cv-6907-ODW (KS),

25 2018 U.S. Dist. LEXIS 195304, at *5 (C.D. Cal. Nov. 15, 2018) ("Plaintiff's claim is

26 time barred; thus, no amendment could cure the deficiency and renders leave to

27 amend futile.").

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's claim for breach of the duty of fair representation against SAG-AFTRA, Mr. Pniewski and Mr. Hartley-Margolin should be dismissed with prejudice.


DATED:  October 6, 2021

JULIE GUTMAN DICKINSON
LISA C. DEMIDOVICH
DEXTER RAPPLEYE
BUSH GOTTLIEB, A Law Corporation


By: _____
    DEXTER RAPPLEYE
Attorneys for SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260