JULIE GUTMAN DICKINSON (SBN 148267)
jgutmandickinson@bushgottlieb.com
LISA C. DEMIDOVICH (SBN 245836)
ldemidovich@bushgottlieb.com
DEXTER RAPPLEYE (SBN 302182)
drappleye@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for SAG-AFTRA, David Hartley-Margolin, and Michael Pniewski

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

FRANCES FISHER,

Plaintiff,

vs.

SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, et al.,

Defendants.

**CASE NO. 2:21-cv-05215-CAS-JEMx**

**DEFENDANTS SAG-AFTRA, MICHAEL PNIEWSKI, AND DAVID HARTLEY-MARGOLIN'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

**Hon. Christina A Snyder**
**Date: January 24, 2022**
**Time: 10:00 a.m.**

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. PLAINTIFF'S CLAIM IS TIME-BARRED. .......... 2

A. Plaintiff's Claim Based on the Negotiation of Health Plan Contributions Accrued When She Had Notice of the CBA Terms .......... 2

B. Even if Plaintiff's Claim Accrued When the Benefit Changes Were Announced, It Is Still Time-Barred. .......... 3

III. PLAINTIFF LACKS STANDING TO ASSERT HER DFR CLAIM. .......... 7

IV. PLAINTIFF HAS NOT ALLEGED A COGNIZABLE DFR CLAIM. .......... 10

A. Plaintiff's Failure to Plead Causation is Fatal to Her Claim. .......... 10

B. Plaintiff's Allegations Do Not Support a Plausible Inference that the Union Acted Arbitrarily, Discriminatorily, or in Bad Faith. .......... 11

V. PLAINTIFFS CANNOT SUE INDIVIDUAL UNION OFFICIALS FOR BREACH OF THE DUTY OF FAIR REPRESENTATION. .......... 13

VI. CONCLUSION .......... 13

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463 (9th Cir. 1992) ..... 10

*Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393 (9th Cir. 1986) ..... 5, 6, 10

*Addington v. US Airline Pilots Ass'n*, 606 F.3d 1174 (9th Cir. 2010) ..... 2, 3

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) ..... 9

*Antablin v. Motion Picture Costumers*, No. 2:18-cv-09474-MCS, 2021 U.S. Dist. Lexis 220394 (C.D. Cal. Nov. 15, 2021) ..... 6

*Casumpang v. Hawaiian Commer. & Sugar Co.*, No. 12-694 ACK-BMK, 2013 U.S. Dist. LEXIS 167667 (D. Haw. Nov. 25, 2013) ..... 6

*Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913 (9th Cir. 1987) ..... 4

*Demetris v. Transp. Workers Union*, 862 F.3d 799 (9th Cir. 2017) ..... 11

*Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390 (9th Cir. 1985) ..... 6

*Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir. 1986) ..... 4, 5

*Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400 (9th Cir. 1990) ..... 4

*Hartline v. Sheet Metal Workers Nat'l Pension Fund*, 134 F. Supp. 2d 1 (D.D.C. 2000) ..... 9

*Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849 (8th Cir. 2003) ........ 9

*Kalyanaram v. Am. Ass'n of Univ. Professors*, 742 F.3d 42 (2d Cir. 2014) ........ 5

*Keener v. Nat'l Nurses Org. Comm.*, 615 Fed. Appx. 246 (6th Cir. 2015) ........ 8

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993) ........ 2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ 7, 9

*Maurer v. IBEW, Local 659*, 200 F. Supp. 3d 1052 (S.D. Cal. 2016) ........ 4, 5

*In re New England Mutual Life Ins. Co. Litig.*, 841 F. Supp. 345 (W.D. Wash. 1994) ........ 9

*O'Hara v. Teamsters Union Local No. 856*, 151 F.3d 1152 (9th Cir. 1988) ........ 6

*Phillips v. Osborne*, 403 F.2d 826 (9th Cir. 1968) ........ 6

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269 (2d Cir. 2004) ........ 3

*Scerba v. Allied Pilots' Ass'n*, No. 13 Civ. 3694, 2013 U.S. Dist. LEXIS 175291 (S.D.N.Y. Dec. 10, 2013) ........ 3

*Smith v. United Airlines, Inc.*, No. C-14-1763(EDL), 2014 U.S. Dist. LEXIS 117505 (N.D. Cal. Aug. 22, 2014) ........ 5

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ........ 7

*Tate v. Nat'l Postal Mail Handlers Union Local 305*, No. 16-2021 (DLF), 2018 U.S. Dist. LEXIS 68384 (Apr. 12, 2018) ........ 8

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Teamsters Local Union No. 42 v. NLRB*,
825 F.2d 608 (1st Cir. 1987) .......... 3

*Tilley v. Shelton*,
2021 U.S. Dist. Lexis 171319 (S.D.N.Y. Sep. 9, 2021).......... 3

*Walker v. Boeing Corp.*,
218 F. Supp. 2d 1177 (C.D. Cal. 2002).......... 4

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
2021 U.S. Dist. Lexis 210744 (N.D. Cal. Nov. 1, 2021) .......... 9

**Statutes**

LMRDA § 501 .......... *passim*

**Other Authorities**

FRCP § 12(b)(1) .......... 1

FRCP § 12(b)(6) .......... 1, 7

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## I. INTRODUCTION

Plaintiff's Complaint in this action, filed August 3, 2021, asserts a claim for breach of the duty of fair representation ("DFR") against various defendants including Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA" or "Union") and SAG-AFTRA members Michael Pniewski and David Hartley-Margolin (collectively, "Defendants").

On October 6, 2021, Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) Plaintiff's DFR claim is barred by the applicable six-month statute of limitations; (2) Plaintiff has not alleged facts showing that she has standing to assert her DFR claim; (3) Plaintiff has not alleged sufficient facts to support a plausible claim that SAG-AFTRA breached its DFR; and (4) Plaintiff has no legal basis to assert a DFR claim against individual union officers Pniewski and Hartley-Margolin. Dkt. No. 28.

In her November 22, 2021 Opposition Brief, Plaintiff attempts to rescue her DFR claim from each of these shortcomings, but her arguments lack merit. First, Plaintiff's new tolling argument does not save her claim from being time-barred, as precedent does not support tolling the statute of limitations for a DFR claim while a plaintiff waits for a union to decide whether to bring suit under Section 501 of the Labor-Management Reporting and Disclosure Act. Second, Plaintiff's declaration testimony indicating that she is a participant in the SAG-AFTRA Health Plan does not establish that she has standing to bring a DFR claim predicated on the allegation that SAG-AFTRA wrongfully caused certain members' health benefits to be cut; she must allege that her own benefits were impacted, and she has not done so. Third, notwithstanding Plaintiff's arguments in her Opposition brief, she has not articulated facts establishing that SAG-AFTRA's alleged nondisclosures caused injury to any union members, or that the information SAG-AFTRA allegedly concealed was material to the contract negotiations at the heart of her claim. Finally, even if

Plaintiff could establish a DFR claim against SAG-AFTRA, her claims against Defendants Pniewski and Hartley-Margolin must be dismissed because individual union officials cannot be held liable for a DFR breach.

Accordingly, Plaintiff's DFR claims against Defendants SAG-AFTRA, Pniewski, and Hartley-Margolin must be dismissed.

## II. PLAINTIFF'S CLAIM IS TIME-BARRED.

### A. Plaintiff's Claim Based on the Negotiation of Health Plan Contributions Accrued When She Had Notice of the CBA Terms.

Plaintiff alleges that Defendants breached their DFR in the course of negotiating three collective bargaining agreements by failing to secure sufficient increases in employer contributions to the Health Plan that would have prevented changes to health benefits. Under binding Ninth Circuit precedent, this kind of claim accrues when the final contract language is announced, unless Plaintiff had notice *prior to* ratification that the parties had reached agreement on that specific issue, in which case the claim would accrue earlier, when Plaintiff received such notice. *See Addington v. US Airline Pilots Ass'n*, 606 F.3d 1174, 1181-83 (9th Cir. 2010) (holding a DFR claim predicated on allegations that a union should have negotiated different contract terms becomes ripe *at the latest* when the plaintiff learns that "negotiations are complete and a final product is reached" with respect to the terms at issue). Under *Addington*, for DFR claims predicated on the negotiation of a collective bargaining agreement, contract ratification is the last possible date, not the first, on which the statute of limitations will commence running.

Plaintiff attempts to distinguish *Addington* on the grounds that the court in that case applied the doctrine of ripeness rather than the statute of limitations. But Plaintiff ignores authority holding that "[d]etermining when the cause of action accrues is the corollary to the ripeness inquiry," which the court in *Addington* specifically acknowledged. *Id*. at 1182 n.6 (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993)). Moreover, *Addington* was not decided

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

in a vacuum, as the court relied on prior decisions that applied the statute of limitations and dismissed DFR claims on the grounds that they accrued *earlier* than contract ratification. *See id.* at 1182-83 (discussing *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269 (2d Cir. 2004), and *Teamsters Local Union No. 42 v. NLRB*, 825 F.2d 608 (1st Cir. 1987)). Finally, other courts have repeatedly cited *Addington* for the proposition that a duty of fair representation claim predicated on bargaining-related conduct accrues when the plaintiff is notified of the challenged contract terms during negotiations. *See, e.g.*, *Scerba v. Allied Pilots' Ass'n*, No. 13 Civ. 3694, 2013 U.S. Dist. LEXIS 175291, at *30 (S.D.N.Y. Dec. 10, 2013) (relying on *Addington* to hold union member's DFR claim based on bargaining conduct was time-barred because it accrued *before* contract ratification).

Plaintiff also asserts that Judge Rakoff's recent decision in *Tilley v. Shelton*, 2021 U.S. Dist. Lexis 171319 (S.D.N.Y. Sep. 9, 2021), somehow supports her position because it acknowledged the importance of "when plaintiffs had adequate notice of the claims." Opp. Br. at 13. This argument glosses over the nature of the alleged union conduct at the heart of her claim, which is *the negotiation of employer contributions* to the Health Plan, a third party, that ultimately proved insufficient to prevent the Health Plan from taking action that harmed members. She had notice of all facts relevant to the health plan contribution levels negotiated when she learned that agreement had been reached on those specific contract terms.

### B. <u>Even if Plaintiff's Claim Accrued When the Benefit Changes Were Announced, It Is Still Time-Barred.</u>

Even if *arguendo* Plaintiff's claim accrued when she first learned of the benefit changes in August 2020, the claim still must be dismissed because she did not bring suit until over 10 months later, long after the well-established—and intentionally short—six-month limitations period for DFR claims had expired.

Plaintiff contends the statute should be tolled until February 5, 2021, when she received notice that SAG-AFTRA's National Board had declined her request for

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

the Union to file a lawsuit against individual union officers under Section 501 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501(a) ("Section 501"). Plaintiff argues that during this time, she was engaged in the "pursuit of intra-union remedies" that should be considered grounds for tolling the statute of limitations under *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509-10 (9th Cir. 1986). This argument has at least two fatal flaws.

First, Plaintiff's request for SAG-AFTRA to bring a lawsuit against individual officers under Section 501 did not toll the DFR statute of limitations because the pursuit of remedies under Section 501 is not a prerequisite for her to file her DFR lawsuit, and in fact, no party has identified any precondition to Plaintiff filing a DFR lawsuit against SAG-AFTRA. The pursuit of alternative remedies only tolls the statute of limitations for a claim against the union where the plaintiff was *required* to pursue those remedies first as a prerequisite for filing suit. *See, e.g.*, *Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400, 404 (9th Cir. 1990) (noting that "equitable tolling is most appropriate when the plaintiff is *required* to avail himself of an alternative course of action as a precondition to filing suit"; holding that the filing of a workers' compensation claim did not toll the 6-month statute of limitations for plaintiff's DFR claim because the workers' compensation claim was not "a precondition to filing suit") (emphasis in original); *Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 915-16 (9th Cir. 1987) (filing charge with NLRB does not toll statute of limitations for DFR claim because it is "merely optional," not a precondition for filing suit); *Maurer v. IBEW, Local 659*, 200 F. Supp. 3d 1052, 1061 (S.D. Cal. 2016) (filing of internal union appeal did not toll 6-month statute for DFR claim where internal appeal "did not prevent Plaintiff from bringing suit"); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1196 (C.D. Cal. 2002) ("The statute of limitations has been tolled in hybrid [DFR] cases only in situations where the plaintiff is required to pursue another course of action before filing suit. To allow tolling when the plaintiff's out-of-court actions were merely optional would frustrate

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

the national policy of prompt resolution of labor disputes.") (internal quotations omitted); *see also Smith v. United Airlines, Inc.*, No. C-14-1763(EDL), 2014 U.S. Dist. LEXIS 117505, at *6-8 (N.D. Cal. Aug. 22, 2014) (rejecting DFR plaintiff's argument that tolling was warranted under *Galindo*, reasoning that such tolling is appropriate "only in situations where the plaintiff is required to pursue another course of action before filing suit").

The Complaint contains no allegations indicating that Plaintiff's demand for SAG-AFTRA to initiate a Section 501 action was a prerequisite for her DFR claim. Nor could it be. The two statutes—the LMRDA and the Labor Management Relations Act ("LMRA")—serve entirely different purposes, and apply to different entities and conduct, as Section 501 claims can only be brought against individual union officers, while a DFR claim can only be brought against the union itself.

Second, Plaintiff's demand for a Section 501 suit did not toll the statute of limitations because she could not have obtained the same relief in a Section 501 action that she seeks from SAG-AFTRA for a DFR breach. In *Galindo*, the case Plaintiff cites as authority for her tolling argument, the court specifically noted that it would not have reached the same result if the internal union grievance procedures at issue could not have "result[ed] in the relief sought by the employee." 793 F.2d at 1510, 1510 n.5 (citing *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1396 n.1 (9th Cir. 1986)); *see also Maurer*, 200 F. Supp. 3d at 1061 ("Although it is true that good faith attempts to resolve claims through grievance procedures may toll the statute of limitations period, this is only the case when grievance procedures could result in the relief sought by the employee."); *Kalyanaram v. Am. Ass'n of Univ. Professors*, 742 F.3d 42, 48-49 (2d Cir. 2014) (explaining state court suit to vacate arbitration award does not toll statute for DFR claim because the two avenues of relief serve different purposes and offer different kinds of relief). The fact that a member may have *requested* similar remedies in the context of an internal appeal cannot support tolling where that remedy was not actually available in the context of

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

those internal processes. *See Antablin v. Motion Picture Costumers*, No. 2:18-cv-09474-MCS, 2021 U.S. Dist. Lexis 220394, at *6-7 (C.D. Cal. Nov. 15, 2021) (holding internal union disciplinary procedures did not toll the statute of limitations on plaintiff's DFR claim because her DFR lawsuit sought monetary damages from the union, which were not available in the context of the disciplinary processes against individual officers, and explaining the fact that she requested monetary relief in her internal disciplinary procedure was irrelevant, as that relief was not available under union constitution); *Acri*, 781 F.2d at 1396 n.1 (explaining claim accrual date should not be postponed pending outcome of arbitration procedures where arbitrator lacks power to grant relief requested).

Here, Plaintiff's request for SAG-AFTRA to institute a Section 501 action could not have resulted in the relief she seeks in her DFR action. Section 501 only imposes liability on individual union officers for harm suffered *by the union*, and cannot require the union itself to compensate individual members for harm suffered as a result of the union's DFR breach. *Compare Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1400 (9th Cir. 1985) ("When Congress passed [the LMRA], it declared its view that only the union was to be made to respond for union wrongs[.]") *with O'Hara v. Teamsters Union Local No. 856*, 151 F.3d 1152, 1161 (9th Cir. 1988) (holding suits under Section 501 are brought on behalf of the union, which is the "real party in interest"); *Phillips v. Osborne*, 403 F.2d 826, 830 (9th Cir. 1968) (Section 501 is analogous to a shareholder derivative suit, and consequently, "relief granted under Section 501 is for the benefit of the real party in interest, the union whose officers are charged with dereliction."). Plaintiff obviously cannot obtain relief for the Union in a DFR suit brought *against* the Union.

Plaintiff also cites *Casumpang v. Hawaiian Commer. & Sugar Co.*, No. 12-694 ACK-BMK, 2013 U.S. Dist. LEXIS 167667 (D. Haw. Nov. 25, 2013), to no avail. *Casumpang* involved a union's decision not to arbitrate a grievance. The

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

employee appealed the union's decision to the union's international vice president, the union held a hearing on the appeal, and ultimately denied it. Unlike Plaintiff's demand for suit under Section 501, this kind of appeal process is generally provided for in the union constitution or bylaws, exhaustion of the appeal is typically required as a prerequisite for filing suit, and if the plaintiff succeeds, the appeal could secure the exact relief sought for the violation alleged, i.e., an order requiring the union to arbitrate the grievance or ruling on the merits.

Thus, even if the six-month period started running when Plaintiff learned of the Health Plan's benefit changes in August of 2020—which caselaw involving DFR claims based on a union's negotiations conduct does *not* hold—her claim must still be dismissed under that theory because there is no basis to toll the limitations period, which therefore expired in February 2021, many months before she filed the Complaint against the Union (and not in the shoes of the Union) alleging her DFR claim. Accordingly, Plaintiff's DFR claim should be dismissed with prejudice under Rule 12(b)(6) because it was untimely filed and any amendment would be futile.

## III. PLAINTIFF LACKS STANDING TO ASSERT HER DFR CLAIM.

In her Opposition, Plaintiff contends that she has standing to assert a DFR claim against the Union because "the subversion and material impairment of the Union CBA processes injured the rights of members to leverage collective action to maximize their compensation, and vote to ratify the terms." Opp. Br. at 18. This argument fails because it does not identify the kind of concrete and particularized injury necessary to support standing.

Standing requires that a plaintiff allege an injury that is "concrete and particularized," rather than "abstract." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). The "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Courts have

applied this principle in the context of DFR cases, emphasizing that a union's alleged bad faith conduct in the context of bargaining does not in itself establish standing without allegations that "the union's actions resulted in a concrete injury, such as layoffs or decreased benefits." *Keener v. Nat'l Nurses Org. Comm.*, 615 Fed. Appx. 246 (6th Cir. 2015); *see also Tate v. Nat'l Postal Mail Handlers Union Local 305*, No. 16-2021 (DLF), 2018 U.S. Dist. LEXIS 68384, at *5-6 (Apr. 12, 2018) ("The mere fact that [a] Union allegedly breached the statutory duty of fair representation is not enough.").

If Plaintiff's argument were correct, then *any* member would always have standing to challenge *any* alleged DFR breach in the context of bargaining because any such breach would harm members' abstract right to "leverage collective action to maximize their compensation, and vote to ratify the terms." Such a rule would eviscerate the constitutional requirement of a concrete and particularized injury, and would be inconsistent with the plaintiff's obligation, discussed in the next section, to allege facts supporting that the union's DFR breach caused the plaintiff concrete, particularized harm.

Plaintiff also argues she has standing because "at the time of the 2019 and 2020 CBA processes, Plaintiff was age 65 or older and taking a Union pension." Opp. Br. at 18. But her Complaint does not allege members' pension benefits were affected by the Union's alleged actions, or any other facts about the SAG-Producers Pension Plan—a legally separate entity from the SAG-AFTRA Health Plan.

Moreover, Plaintiff asserts in her Opposition Brief that she was a Health Plan participant, but does not assert that she was part of the subset of participants who lost coverage because of the benefit changes referenced in the Complaint. Opp. Br. at 18. Absent allegations that *she* lost coverage due to the changes, she does not have standing to sue on behalf of those who lost coverage due to those changes as she was not similarly impacted.

Plaintiff's argument that she suffered a redressable injury based on a change

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

in the apportionment of employer contributions to the Health Plan lacks merit. Employer contributions to a self-funded, labor-management employee benefit plan like the Health Plan inure to the Plan itself, not the beneficiaries, and certainly not to any specific beneficiary. *See, e.g.*, *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 2021 U.S. Dist. Lexis 210744 (N.D. Cal. Nov. 1, 2021) (ERISA plan participants lacked standing to bring claim that defendants accepted illegal commissions that should have been returned to the plan, and by failing to negotiate lower administrative fees; they did not show "that plaintiffs—as opposed to the plan—suffered an injury in fact because plaintiffs have not alleged facts that support an inference that reimbursement to the plan would concretely affect them one way or the other."); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) (holding participants lacked standing for claim that pharmacy benefits manager overcharged plan for drugs, as the only concrete injury alleged was suffered by the plan rather than individual participants); *Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849 (8th Cir. 2003) (finding pension plan beneficiaries lacked standing to challenge allocation of employer contributions to the plan, as any loss in contributions resulting from the alleged breach was suffered by the plan); *Hartline v. Sheet Metal Workers Nat'l Pension Fund*, 134 F. Supp. 2d 1, 21 (D.D.C. 2000) (same); *In re New England Mutual Life Ins. Co. Litig.*, 841 F. Supp. 345 (W.D. Wash. 1994) ("It is a fundamental tenet of trust law that it is the trustees of a trust, and not its beneficiaries, who have a cause of action against third parties for wrongdoing concerning trust property.").

Thus, absent allegations that Plaintiff's own health benefits were impacted by the benefit changes at the heart of her claim—allegations that do not appear in the Complaint and are not supported by Plaintiff's Declaration—she has not alleged a "concrete and particularized" injury and lacks standing to pursue her DFR claim. *Lujan*, 504 U.S. at 559.

/ / /

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## IV. PLAINTIFF HAS NOT ALLEGED A COGNIZABLE DFR CLAIM.

### A. Plaintiff's Failure to Plead Causation is Fatal to Her Claim.

Plaintiff attempts to gloss over the issue of causation for her nondisclosure claim in her Opposition brief, devoting only four conclusory sentences to this central issue. The lead Ninth Circuit decisions in *Acri*, 781 F.2d at 1397, 1399-1400, and *Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463, 1472-73 (9th Cir. 1992)—which Plaintiff does not even mention in her Opposition brief—established the governing standards for DFR claims based on alleged misrepresentations in the course of collective bargaining. These decisions held that such claims are *highly disfavored*, and must be supported by allegations establishing that the plaintiff's alleged injury likely would not have occurred but for the alleged misrepresentation. Indeed, the court expressly acknowledged that this causation standard makes bargaining-related DFR claims difficult, if not impossible, to prove. *Ackley*, 958 F.2d at 1472 (stating the causation standard is "difficult to satisfy"); *Acri*, 781 F.2d at 1399 (Reinhardt, J., concurring) (referring to the "impossible causation barrier" embodied in the court's decision). This is not an arbitrary rule; it embodies judicial recognition of the myriad interests that unions must balance in the bargaining process, the limitations on unions' ability to extract concessions from employers, and the inherent uncertainty in attributing bargaining outcomes to a specific cause. As Judge Reinhardt reasoned in *Acri*, dissatisfaction with the outcome of the collective bargaining process should be redressed in almost every case by resort to "the union's own election and removal process" rather than the courts. 781 F.2d at 1399.

Plaintiff contends that "the Union's CBA processes were materially impaired by the conduct of the Union representatives from effecting rational action on members' rights." Opp. Br. at 16-17. This argument does not address the standard set in the *Acri* and *Ackley* decisions, which require plaintiffs to show that their specific injuries were caused by the union's alleged misrepresentations. Nor does

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Plaintiff acknowledge that her alleged nondisclosure claim is materially distinct from misrepresentation, and while misrepresentation could violate the DFR, the Ninth Circuit has not found nondisclosure sufficient to establish a DFR breach. While Defendants in no way concede that nondisclosure is sufficient as a matter of law for a DFR claim, the Court does not need to weigh in on this open question because even if it were, Plaintiff has not alleged that if material information had been disclosed to union members, the outcome of the bargaining process would likely have been different and Plaintiff's injury would not have occurred.

Plaintiff improperly focuses her arguments on an alleged abstract injury to "the CBA processes," claiming that specific allegations showing materiality and causation are unnecessary because she alleges the processes "were materially subverted and impaired." This is not a cognizable injury that can support a DFR claim. Plaintiff must show that members' concrete injuries, *i.e.* the cuts in benefits that some members allegedly suffered were caused by the union's alleged misrepresentations. Plaintiff plainly has not met this burden.

### B. Plaintiff's Allegations Do Not Support a Plausible Inference that the Union Acted Arbitrarily, Discriminatorily, or in Bad Faith.

Leaving aside Plaintiff's failure to establish the causation element, Plaintiff's DFR claim also fails because she has not alleged facts to support a plausible inference that SAG-AFTRA's conduct was arbitrary, discriminatory, or in bad faith.

Plaintiff makes no allegation that the challenged conduct was "discriminatory." As to the "arbitrary" prong of the DFR, Plaintiff argues that "the actions by Defendants to accept and approve terms they knew were insufficient to sustain the benefit structure" were irrational. Opp. Br. at 15. But the caselaw is clear in the Ninth Circuit that the conduct of collective bargaining negotiations can rarely, if ever, be found to be "arbitrary" because it does not involve ministerial duties but rather the discretionary exercise of judgment, which cannot be deemed "wholly irrational." *See Demetris v. Transp. Workers Union*, 862 F.3d 799, 804,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

805 (9th Cir. 2017). Allocating resources between wages and benefits is a quintessentially discretionary task, especially where, as here, one of those benefits—the Health Fund—involves a minority of employees the union represents, and for that reason the balance struck cannot be deemed "wholly irrational" and thus "arbitrary."

Moreover, as to both the "arbitrary" and the "bad faith" prongs, Plaintiff has not alleged facts to support even a weak inference, much less a plausible one, that there were alternative terms the union could have "accepted and approved" that could have had such a significant impact on the Health Plan's finances that the need for benefit changes could have been avoided.

Both Plaintiff's arguments that the Union's conduct was irrational, and that it acted in bad faith, require a showing that the information union officials allegedly concealed was material. She argues that information concerning the Health Plan's finances was material because "members rights at stake included . . . the employer contributions to the health plan." But the amount of employer contributions to the Health Plan are only relevant to Plaintiff's claim if a different allocation of available resources to employer contributions could have somehow avoided changes to employee benefits. Plaintiff conspicuously omits any allegations indicating that a one-time increase in employer contributions—which would only have been in effect for a period of weeks or months between the ratification of the new CBAs and the announcement of the benefit changes—could have had such a precipitous effect on the Plan's finances that it would have defrayed the need for benefit cuts.

Without allegations establishing a connection between the negotiated contribution levels and the benefit changes that ultimately occurred, Plaintiff cannot show that the information she contends should have been disclosed was material to the negotiations. Absent those allegations, it would be highly implausible to infer that the disclosure of that information could have prevented the benefit changes—which inference is necessary for Plaintiff's DFR claim to survive dismissal.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## V. PLAINTIFFS CANNOT SUE INDIVIDUAL UNION OFFICIALS FOR BREACH OF THE DUTY OF FAIR REPRESENTATION.

Plaintiff asserts that "[t]he DFR Claim does not seek recovery from the Individual Defendants," rather, they "are named on the DFR count as the agents of the Union who controlled and caused the Union actions in breach of the DFR." Opp. Br. at 15. This assertion does not justify Plaintiff's improper naming of individual union officials in a DFR claim. To be named as a defendant in a lawsuit, a party must be legally capable of being held liable for the alleged cause of action. Because Plaintiff apparently concedes—as she must—that the individual Defendants named in her Complaint cannot be held liable for the union's alleged breach, and because Plaintiff does not distinguish the controlling authority requiring dismissal of individuals as defendants in a DFR claim, her claim against Defendants Michael Pniewski and David Hartley-Margolin must be dismissed with prejudice.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's claims against Defendants SAG-AFTRA, Michael Pniewski, and David Hartley-Margolin for breach of the duty of fair representation should be dismissed.

DATED: January 6, 2022

BUSH GOTTLIEB, A Law Corporation

By: ______________________

DEXTER RAPPLEYE
Attorneys for SAG-AFTRA, David Hartley-Margolin, and Michael Pniewski

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260