JEFFREY B. DEMAIN (SBN 126715)
jdemain@altber.com
DANIELLE LEONARD (SBN 218201)
dleonard@altber.com
CORINNE F. JOHNSON (SBN 287385)
cjohnson@altber.com
Altshuler Berzon LLP
177 Post St., Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Defendants David P. White, Ray Rodriguez, John T. McGuire, John Carter Brown, and Linda Powell and Proposed Defendants Gabrielle Carteris and Duncan Crabtree-Ireland*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francis Fisher, <br><br> Plaintiff, <br><br> v. <br><br> SAG-AFTRA, *et al.*, <br><br> Defendants. | CASE NO.: 2:21-cv-5215-CAS-JEM <br><br> **PROPOSED 29 U.S.C. §501 CLAIM DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S VERIFIED APPLICATION FOR LEAVE TO ADD CLAIM PURSUANT TO 29 U.S.C. §501(a)** <br><br> Date: January 24, 2022 <br> Time: 10:00 a.m. <br> Judge:  The Hon. Christina A. Snyder |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

INTRODUCTION .............................................................................................. 1

ARGUMENT ...................................................................................................... 2

    I.    The Court Should Dismiss the Untimely and Improper DFR
        Claim ................................................................................................ 2

        A.    The DFR claim is barred by the statute of limitations ............... 2

        B.    DFR claims cannot be brought against individual
              union officials .............................................................................. 7

        C.    Plaintiff's allegations fail to state a DFR claim as a
              matter of law ............................................................................... 9

              1.    Bargaining outcomes ......................................................... 9

              2.    Nondisclosure in bargaining and ratification .................. 9

    II.    Plaintiff Lacks Good Cause to File, and Fails to State, a
        Section 501 Claim Because She Alleges and Seeks to
        Redress Harm to Union Members, Not to the Union ....................... 11

        A.    Plaintiff's allegations fail to state a Section 501 claim
              as a matter of law ..................................................................... 12

              1.    Plaintiff's allegations of nondisclosure fail to
                    allege harm to the Union ................................................. 12

              2.    The challenged Union communications fall
                    outside Section 501 .......................................................... 19

        B.    Plaintiff does not have good cause to file a Section 501
              claim .......................................................................................... 22

        C.    Section 501 permits dual representation of the Union and
              its officers through judicial determination on the merits
              of the pleadings ......................................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.   The Court Should Dismiss the Complaint Without Leave to Amend..................................................................................24

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

5

*Ackley v. W. Conf. of Teamsters*,
   958 F.2d 1463 (9th Cir. 1992) ....................................................................... 10, 14

6

7

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986) ............................................................................... 2

8

9

*Addington v. US Airline Pilots Ass'n*,
   606 F.3d 1174 (9th Cir. 2010) ............................................................................... 2

10

11

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
   499 U.S. 65 (1991) .............................................................................................. 11

12

13

*Allee v. Medrano*,
   416 U.S. 802 (1974) ........................................................................................... 22

14

*Am. Fed'n of Gov't Emps. Loc. 1 v. Stone*,
   502 F.3d 1027 (9th Cir. 2007) ........................................................................... 22

15

16

*Anderson v. United Paperworkers Int'l Union*,
   641 F.2d 574 (8th Cir. 1981) ........................................................................... 8, 9

17

18

*Atkinson v. Sinclair Refining Co.*,
   370 U.S. 238 (1962) ............................................................................................. 8

19

20

*Bishop v. Air Line Pilots Ass'n, Int'l*,
   1998 WL 474076 (N.D. Cal. Aug. 4, 1998), *aff'd mem.*, 211 F.3d.
   1272 (9th Cir. 2000) .......................................................................................... 10

21

22

23

*Burroughs on Behalf of Operating Engineers Loc. Union No. 3 v. Marr*,
   559 F. Supp. 141 (N.D. Cal. 1982), *appeal dismissed and order
   vacated as moot*, 742 F.2d 509 (9th Cir. 1984) ................................................ 24

24

25

*Carpenters Local Union 721 v. Limon*,
   No. CV 18-8470 DSF, 2020 WL 3124222 (C.D. Cal. Apr. 23, 2020) ........ 19, 20

26

27

*Casumpang v. Hawaiian Com. & Sugar Co.*,
   No. CIV. 12-00694 ACK, 2013 WL 6191087 (D. Haw. Nov. 25,
   2013), *aff'd mem.*, 712 Fed. App'x 709 (9th Cir. 2018) ..................................... 3

28

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ............................................................ 25

*Christiansen v. APV Crepaco, Inc.*,
    178 F.3d 910 (7th Cir. 1999) ........................................................... 3, 5

*Commer v. Am. Fed'n of State, Cty. & Mun. Emps.*,
    272 F. Supp. 2d 332 (S.D.N.Y. 2003), *aff'd*, 390 F.3d 203 (2d Cir.
    2004) ................................................................................................. 23

*Conley v. Int'l Bhd. of Elec. Workers, Loc. 639*,
    810 F.2d 913 (9th Cir. 1987) .............................................................. 6

*Cowger v. Rohrbach*,
    868 F.2d 1064 (9th Cir. 1989) ........................................................... 18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ......................................................... 4, 20

*DelCostello v. Int'l Bhd. of Teamsters*,
    462 U.S. 151 (1983) ............................................................................ 2

*Doe #1 v. Am. Fed'n of Gov't Emps.*,
    No. CV 20-1558 (JDB), 2021 WL 3550996 (D.D.C. Aug. 11, 2021) ......... 17, 24

*Erkins v. Bryan*,
    785 F.2d 1538 (11th Cir. 1986) .................................................... 20, 21

*Evangelista v. Inlandboatmen's Union of Pac.*,
    777 F.2d 1390 (9th Cir. 1985) ............................................................. 8

*Galindo v. Stoody Co.*,
    793 F.2d 1502 (9th Cir. 1986) ........................................................ 3, 5

*Garcia v. Serv. Emps. Int'l Union*,
    No. 2:17-CV-01340-APGNJK, 2018 WL 10721071 (D. Nev. July
    24, 2018), *aff'd*, 856 F. App'x 105 (9th Cir. 2021) ...................... 19, 22

*Hanahan v. Lucassen*,
    764 F. Supp. 194 (D.D.C. 1991) ........................................................ 23

*Harris v. Alumax Mill Prod., Inc.*,
    897 F.2d 400 (9th Cir. 1990) ........................................................... 6, 7

*Harris v. Amalgamated Transit Union Loc. 1637*,
    No. 2:19-cv-01537-GMN-EJY, 2020 WL 5775768 (D. Nev. Sept.
    28, 2020) ............................................................................................................. 5

*Hearn v. McKay*,
    603 F.3d 897 (11th Cir. 2010) ................................................................... 13, 18

*Hoffman v. Kramer*,
    362 F.3d 308 (5th Cir. 2004) ............................................................................ 18

*Horner v. Ferron*,
    362 F.2d 224 (9th Cir. 1966) ............................................................................ 22

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1993), *as amended* (Mar. 8, 1994) ................................ 19

*Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters*,
    920 F.2d 1047 (1st Cir. 1990) .......................................................................... 20

*Magallanez v. Engineers & Scientists of Calif.*,
    2012 WL 2872816 (E.D. Cal. July 11, 2012) ..................................................... 6

*Maurer v. IBEW, Local 569*,
    200 F. Supp. 3d 1052 (S.D. Cal. 2016) .............................................................. 5

*Merritt v. Int'l Ass'n of Machinists*,
    No. 2:06–CV–14342, 2008 WL 5784439 (E.D. Mich. Sept. 22,
    2008), *aff'd*, 613 F.3d 609 (6th Cir. 2010) ....................................................... 10

*Milone v. English*,
    306 F.2d 814 (D.D.C. 1962) ............................................................................ 24

*Nellis v. Airline Pilots Ass'n*,
    815 F. Supp. 1522 (E.D. Va. 1993), *aff'd*, 15 F.3d 50 (4th Cir. 1994) .........18-19

*O'Hara v. Teamsters Union Local No. 856*,
    151 F.3d 1152 (9th Cir. 1998) .............................................................. 12, 13, 17

*Pantoja v. Holland Motor Exp., Inc.*,
    965 F.2d 323 (7th Cir. 1992) .............................................................................. 4

*Peterson v. Kennedy*,
    771 F.2d 1244 (9th Cir. 1985) ............................................................................ 8

*Phillips v. Osborne*,
    403 F.2d 826 (9th Cir. 1968) ........................................................ 12, 17

*Pimentel v. Aloise*,
    No. 18-CV-00411-EMC, 2018 WL 6025613 (N.D. Cal. Nov. 16,
    2018) ......................................................................................................... 22

*Ray v. Young*,
    753 F.2d 386 (5th Cir. 1985) ...................................................................... 20

*Rivera v. Peri & Sons Farms, Inc.*,
    735 F.3d 892 (9th Cir. 2013) ...................................................................... 21

*Seitz v. Int'l Bhd. of Teamsters*,
    No. 20-CV-05442-DMR, 2020 WL 7626412 (N.D. Cal. Dec. 22,
    2020) ........................................................................................................... 5

*Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*,
    718 F.3d 1036 (9th Cir. 2013) ............................................... 12, 19, 21

*Sheen v. Screen Actors Guild*,
    No. CV 12-01468 SJO AJWX, 2012 WL 2360923 (C.D. Cal. Mar.
    28, 2012) ..................................................................................................... 16

*Shek v. Cal. Nurses Ass'n/Caregivers & Healthcare Emps. Union*,
    No. C-10-1483 EMC, 2010 WL 3155830 (N.D. Cal. Aug. 9, 2010) .................. 8

*Smith v. United Airlines, Inc.*,
    No. C-14-01763(EDL), 2014 WL 4181978 (N.D. Cal. Aug. 22,
    2014), *aff'd*, 673 F. App'x 720 (9th Cir. 2016) .................................... 5

*Sosbe v. Delco Elecs. Div. of Gen. Motors Corp.*,
    830 F.2d 83 (7th Cir. 1987) ........................................................................ 5

*Spaulding v. United Transp. Union*,
    279 F.3d 901 (10th Cir. 2002) ............................................................. 3, 5

*Spellacy v. Airline Pilots Ass'n – Int'l*,
    156 F.3d 120 (2d Cir. 1998) ...................................................................... 10

*Stelling v. Int'l Bhd. of Electrical Workers Loc. Union No. 1547*,
    587 F.2d 1379 (9th Cir. 1978) ........................................................... *passim*

*Stepak v. Southern Co.*,
    20 F.3d 398 (11th Cir. 1994) ............................................................24

*Stone v. Writer's Guild, Inc.*,
    101 F.3d 1312 (9th Cir. 1996) ........................................................2, 4

*Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters*,
    82 F.3d 303 (9th Cir. 1996) ..............................................................17

*Tile, Marble, Terrazzo, Finishers, Shopworkers & Granite Cutters Int'l*
    *Union v. Ceramic Tile Finishers Union, Local 25*,
    972 F.2d 738 (7th Cir. 1992) ............................................................17

*Walker v. Boeing Corp.*,
    218 F. Supp. 2d 1177 (C.D. Cal. 2002) ..............................................6

*Yablonski v. United Mine Workers*,
    448 F.2d 1175 (D.C. Cir. 1971)........................................................24

*Yablonski v. United Mine Workers*,
    454 F.2d 1036 (D.D.C. 1971)...........................................................24

**Federal Statutes**

29 U.S.C.
    § 185(b).............................................................................................8
    § 411 ...............................................................................................14
    § 501 .........................................................................................*passim*
    § 501(b)........................................................................................6, 12

# INTRODUCTION

Plaintiff has not demonstrated that her allegations fall within even the most outer reaches of the proper scope of the two labor law claims she invokes here: a breach of duty of fair representation ("DFR") claim and an LMRDA Section 501 breach of fiduciary duty claim. Application of the law governing these two claims to Plaintiff's allegations, even with all reasonable inferences drawn in her favor, requires dismissal of her DFR claim, and either denial of her application to add a Section 501 claim or dismissal of that claim.

Plaintiff's DFR claim is time-barred and cannot be brought against individual union officials, both of which are dispositive on the face of her complaint. Plaintiff does not dispute that the statute of limitations is six months, or that she was aware of the defendants' alleged wrongdoing (and thus her claim accrued) more than 10 months before her first filing in this suit. Her only response is a misplaced reliance on an equitable tolling doctrine that is simply not available for this DFR claim. The lone and narrow exception for pursuit of mandatory, *contractual* remedies that could remedy a DFR claim does not remotely apply. Moreover, Plaintiff fails to rebut the clear legal precedent establishing that individual union officials are immune from liability (not just damages) for a claim for a breach of the union's DFR.

As to the Section 501 claim, Plaintiff concedes the black-letter labor law that Section 501 claims require harm to the Union *itself* as an organization and cannot be predicated on harm to individual union members. As Plaintiff's proposed complaint makes clear, the only concrete harm she alleges is to the individual union members who she contends were impacted by the eligibility changes to the Health Plan. Plaintiff's attempt to conjure harm to the Union by recasting her allegations regarding individual member harm as "subversion" and "material impairment" of the Union's collective bargaining "processes" ignores the plain language of her complaint and is unavailing because such vague and abstract labels are not harms cognizable under Section 501.

# ARGUMENT

## I.   The Court Should Dismiss the Untimely and Improper DFR Claim

The DFR claim should be dismissed for three reasons: (1) the statute of limitations has run on the face of the complaint and there is no basis to apply equitable tolling; (2) individual union officials are immune from suits for DFR claims; and (3) the alleged actions by the Proposed 501 Defendants do not constitute a breach of the DFR as a matter of law.

### A.   The DFR claim is barred by the statute of limitations

Plaintiff concedes that the statute of limitations for a DFR claim is six months. Plf. 501 Opp. (Dkt. 31) at 20; *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983).  She also concedes that her DFR claim based on alleged nondisclosures in bargaining by the Proposed 501 Defendants accrued more than six months before she filed this lawsuit.  *See* Plf. 501 Opp. at 20-21 (admitting that she knew of the Proposed 501 Defendants' alleged nondisclosures at the August 2020 announcement of benefits changes); *Stone v. Writer's Guild, Inc.,* 101 F.3d 1312, 1314 (9th Cir. 1996) ("The statute of limitations begins to run when a plaintiff knew, or should have known, of the defendant's wrongdoing.") (quotation omitted); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1396 (9th Cir. 1986) (DFR nondisclosure claims accrue when Plaintiff learns of nondisclosures and their effects).[1]  The allegations in Plaintiff's complaint indeed make clear that the six-month statute of limitations expired long before she filed this suit.  *See, e.g.*, Compl. (Dkt. 20) ¶¶10, 49, 59 (alleging that the benefits cuts, insufficient employer

---

[1] Plaintiff now disavows a claim based solely on collective bargaining *outcomes*.  *See infra* at 9; Plf. 501 Opp. at 24-25.  Regardless, any such claim would accrue when the three collective bargaining agreements ("CBAs") at issue became final (i.e., even earlier than when Plaintiff alleges she learned of the alleged nondisclosures), and thus would be time-barred for the same reasons that bar her nondisclosure claim.  *See* Compl. ¶¶52-54; *Addington v. US Airline Pilots Ass'n,* 606 F.3d 1174, 1181-83 (9th Cir. 2010).

1    contributions to the Health Fund, and the Proposed Section 501 Defendants' prior

2    knowledge of both during the CBA negotiations were announced to Union members

3    in August 2020).  Plaintiff makes no argument that her complaint's allegations, on

4    their face, are not time-barred.

5         Plaintiff tries to salvage her DFR claim by invoking equitable tolling, arguing

6    that the *DFR* statute of limitations period should have been tolled because she sent a

7    *Section 501* demand letter to the Union.  But, as a matter of law, equitable tolling

8    does not apply to Plaintiff's DFR claim for at least three reasons.

9         First, under well-settled law, equitable tolling of DFR claims applies only

10    where a plaintiff pursues *contractual* remedies, whether under a CBA or a union's

11    constitution or bylaws, that can provide the same relief sought in the DFR claim.

12    This was established in the very case on which Plaintiff relies:  In *Galindo v. Stoody*

13    *Co.*, the Ninth Circuit approved equitable tolling pending exhaustion of contractual

14    remedies (in that case, grievance procedures under the CBA) that would have

15    resolved the plaintiff's termination claim.  793 F.2d 1502, 1510 & n.5 (9th Cir.

16    1986).  *Galindo* has no application here, where Plaintiff does not contend she was

17    pursuing any contractual remedies for her DFR claim, under either a CBA or the

18    SAG-AFTRA Constitution, and indeed, there were none for her to pursue.  For the

19    same reason, the only other authority Plaintiff cites for equitable tolling, *Casumpang*

20    *v. Hawaiian Com. & Sugar Co*., No. CIV. 12-00694 ACK, 2013 WL 6191087, at

21    \*10 (D. Haw. Nov. 25, 2013), *aff'd mem.*, 712 Fed. App'x 709 (9th Cir. 2018) (DFR

22    claim tolled by pursuit of contractual intra-union remedies), is equally inapposite.[2]

23

24         [2] A dispute resolution procedure under a CBA to pursue a grievance against an
employer would not be relevant to Plaintiff's contract negotiation DFR claim against

25    the Union.  And although union constitutions and bylaws sometimes specify formal
internal union remedies that members can use for such claims, *see Christiansen v.*

26    *APV Crepaco, Inc*., 178 F.3d 910, 916–17 (7th Cir. 1999); *Spaulding v. United*

27    *Transp. Union*, 279 F.3d 901, 911 (10th Cir. 2002), the SAG-AFTRA Constitution
does not.  *See* Leonard Decl. (Dkt. 27) Ex. 2 (SAG-AFTRA Constitution).  Nor does

28    Plaintiff allege that she pursued any such remedy.  The Court can consider the SAG-

1    Plaintiff attempts to elide this fundamental distinction between contractual and

2    non-contractual remedies by repeatedly characterizing her Section 501 demand letter

3    as a pursuit of "intra-union remedies."  *See, e.g.*, Plf. 501 Opp. at 2, 20, 22.  But the

4    demand letter procedure is not an internal union remedy; indeed, it is not a remedy at

5    all.  It is a *requirement* imposed externally by statute, as a precondition to seeking

6    leave to file a Section 501 claim, and has nothing to do with any truly intra-union

7    remedy, e.g., a remedial procedure set forth in a union constitution.

8    Rather than identify a contractual remedy, Plaintiff instead bases her tolling

9    argument entirely on the fact that she sent a letter to the Union demanding that the

10   Union file a Section 501 claim against its officials, and then waited for the Union to

11   respond.  Plf. 501 Opp. at 21; Compl. ¶¶19-20.[3]  But it is well established that such

12   informal, non-contractual efforts do not toll the DFR statute of limitations.  For

13   instance, in *Stone v. Writer's Guild*, the Ninth Circuit rejected equitable tolling as to

14   a DFR claim for the time a plaintiff spent trying to convince the union to provide

15   relief after a contractual remedy procedure was exhausted, because "[t]he collective

16   bargaining agreement provides for no subsequent administrative procedure which

17   appellant could have been pursuing" during that period.  101 F.3d at 1315.  Many

18   other courts have similarly rejected tolling sought by union members based upon

19   their informal letters, emails, and conversations falling outside contractual processes.

20   *See, e.g.*, *Pantoja v. Holland Motor Exp., Inc*., 965 F.2d 323, 328–29 (7th Cir. 1992)

21   (no tolling because plaintiff's letter to the union was "not the invocation of a formal

---

22

23   AFTRA Constitution because it is incorporated by reference into the complaint.  *See*
     *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

24   [3] Plaintiff also contends that she did not discover until February 5, 2020 that

25   "Defendants Carteris, White and Crabtree-Ireland disloyally misused their positions
     and Union resources to engage CWS."  Plf. 501 Opp. at 21.  But that information

26   relates solely to her Section 501 claim against those officials.  *See* Prop. FAC (Dkt.
     23-1) ¶ 121(b); *infra* at 24.  It has nothing to do with her DFR claim that the Union

27   violated its duty during the CBA negotiations, *see* Compl. ¶¶87-93 (DFR Claim),

28   and thus has nothing to do with the DFR statute of limitations.

1   union procedure," and "tolling occurs while a plaintiff pursues specific internal

2   union remedies through the designated channels; it does not occur while the plaintiff

3   seeks whatever relief might be available").[4]

4        Second, equitable tolling is even more inappropriate here than in those cases

5   because Plaintiff's Section 501 letter could not, and did not seek to, resolve her DFR

6   claim. *See Galindo*, 793 F.2d at 1510 & n.5 (tolling is only permissible if the

7   procedure pursued "could result in the relief sought by the employee"); *see also*

8   *Maurer v. IBEW, Local 569*, 200 F. Supp. 3d 1052, 1061 (S.D. Cal. 2016) (no tolling

9   where internal union appeal process offered different relief from that sought in

10  lawsuit). Plaintiff inexplicably seeks tolling of her DFR claim due to a letter she

11  wrote about a claim under a different statute, against different defendants, for

12  different remedies. Again, her Section 501 claim is necessarily against *individual*

13  *union officers* to recover for *harm to the union*; her DFR claim is necessarily against

14  the *union itself* to recover for *harm to union members*. *See* Prop. 501 Defs. Br. (Dkt.

15  26-1) at 2. Her insistence that those claims are interchangeable betrays the

16

17  ───────────────

18   [4] *Accord Spaulding v. United Transp. Union*, 279 F.3d 901, 911 (10th Cir.
     2002) (plaintiff's "informal objections and correspondence with Union" did not

19  justify equitable tolling, because they were not constitutional procedures);
     *Christiansen*, 178 F.3d at 916–17 (no tolling where plaintiff did not pursue "formal

20  or required internal procedures," but rather unilaterally "informally sought"
     resolution with the union); *Sosbe v. Delco Elecs. Div. of Gen. Motors Corp.*, 830

21  F.2d 83, 87–88 (7th Cir. 1987) (no tolling where, instead of pursuing contractual
     union remedies, plaintiff involved a lawyer and sent letters to the union); *Smith v.*

22  *United Airlines, Inc.*, No. C -14-01763(EDL), 2014 WL 4181978, at *3 (N.D. Cal.
     Aug. 22, 2014), *aff'd*, 673 F. App'x 720 (9th Cir. 2016) (no tolling for relief sought

23  outside the procedures "mandated by the collective bargaining agreement"); *Harris*
     *v. Amalgamated Transit Union Loc. 1637*, No. 2:19-cv-01537-GMN-EJY, 2020 WL

24  5775768, at *4 (D. Nev. Sept. 28, 2020) (no tolling where plaintiff's email to the
     union was not a contractual remedy); *Seitz v. Int'l Bhd. of Teamsters*, No. 20-CV-

25  05442-DMR, 2020 WL 7626412, at *6 (N.D. Cal. Dec. 22, 2020) (no tolling where
     there was not "any available administrative remedy" under the CBA) (quotation

26  omitted).

27

28

1  fundamental flaw that pervades her complaint, which repeatedly confuses the relief

2  she can seek, and the claims she can raise, against the Union versus the union

3  officials versus the Health Fund.  The only relief her demand letter requested, and

4  could obtain, was that the Union file a Section 501 lawsuit against its officials, *see*

5  Dkt. 23-2 at 3, which is plainly not relief for her DFR claim, *see* Compl. ¶95 (Prayer

6  for Relief).[5]

7       Third, equitable tolling of DFR claims is "'most appropriate when the plaintiff

8  is *required* to avail himself of an alternate course of action as a precondition to filing

9  suit.'"  *Harris v. Alumax Mill Prod., Inc*., 897 F.2d 400, 404 (9th Cir. 1990) (italics

10  in *Harris*) (quoting *Conley v. Int'l Bhd. of Elec. Workers, Loc. 639*, 810 F.2d 913,

11  915–16 (9th Cir. 1987)); *see also Walker v. Boeing Corp*., 218 F. Supp. 2d 1177,

12  1196 (C.D. Cal. 2002) ("The statute of limitations has been tolled in [DFR] cases

13  only in situations where the plaintiff is required to pursue another course of action

14  before filing suit."); *Magallanez v. Engineers & Scientists of Calif*., 2012 WL

15  2872816, at *4 (E.D. Cal. July 11, 2012) (same).  This is because allowing tolling

16  when another course of action is "merely optional" would "'frustrate the national

17  policy of prompt resolution of labor disputes.'"  *Harris*, 897 F.2d at 404 (quoting

18  *Conley*, 810 F.2d at 916); *see also id.* (no tolling for workers compensation claim);

19  *Conley*, 810 F.2d at 916 (no tolling for charge with National Labor Relations Board);

20  *Walker*, 218 F. Supp. 2d at 1196–97  (no tolling for actions that were not required by

21  the union constitution).  Here, Plaintiff does not and cannot contend that she was

22  required to send a demand letter prior to filing her DFR claim—that is a statutory

23  requirement for Section 501 claims only.  *See* 29 U.S.C. §501(b).  Nor does she

24  contend that she was required by the SAG-AFTRA Constitution or any CBA to send

25

26       [5] It does not matter that Plaintiff's letter erroneously demanded that the Union,
   upon bringing a Section 501 lawsuit, seek damages for individual union members, or
27  other DFR remedies.  Dkt. 23-2 at 3.  That relief is not available under a Section 501
28  claim.  *See infra* Section II.A.1.

1    a demand letter, as there is no such contractual requirement.  *See* discussion, *supra*,

2    at n.2.  Because sending the letter and awaiting SAG-AFTRA's response was

3    entirely optional for Plaintiff's DFR claim, equitable tolling here would only

4    discourage the "prompt resolution of labor disputes" and therefore should not apply.

5    *Harris*, 897 F.2d at 404 (quotation omitted).

6        In sum, Plaintiff cites *no* cases holding that a Section 501 demand letter tolls a

7    DFR claim—and understandably so, give that such a position contravenes at least

8    three fundamental principles of equitable tolling jurisprudence, as shown above.  As

9    a last-ditch effort to save her claim, Plaintiff resorts to arguing that the court should

10   not decide the issue of equitable tolling until summary judgment or trial.  Plf. 501

11   Opp. at 22.  But this argument fails on the face of her complaint, and she does not

12   identify any factual dispute that needs to be resolved in order to decide the issue.

13   Plaintiff's own allegations, taken as true, foreclose any finding of equitable tolling:

14   She relies on the Section 501 demand letter, and that letter simply does not permit

15   tolling.  Because the complaint, on its face, shows the statute of limitations has run

16   and that equitable tolling does not apply, her DFR claim must be dismissed.

17       B.    DFR claims cannot be brought against individual union officials

18       Plaintiff cannot evade the binding precedent establishing that individual union

19   officials are immune from DFR claims merely by contending that she does not seek

20   any recovery against the officials.  Plf. 501 Opp. at 24.  First, Plaintiff's complaint

21   *does* seek recovery from the officials on the DFR claim.  The Prayer for Relief on

22   her DFR claim (set forth in the operative complaint, which states only the DFR

23   claim) plainly seeks "[a]n Order compelling [Defendants] ... to restore all losses to

24   the plans which resulted from the breaches of fiduciary duty or by virtue of liability

25   pursuant to the NLRA," and "[a]n Order requiring ... (b) the disgorgement of any

26   profits or other tangible benefits obtained by any Defendant, [and] (c) a declaration

27   of a constructive trust over any assets received by any breaching fiduciary in

28   connection with their fiduciary violations of the NLRA."  Compl. ¶¶95(C), (D).

1    Moreover, Section 301(b) of the Labor Management Relations Act, 29 U.S.C.

2    § 185(b), does not merely protect individual officers from money damages, it confers

3    full immunity from DFR claims.  "In *Atkinson v. Sinclair Refining* Co., 370 U.S. 238

4    ... (1962), the Supreme Court held that individual union members are immune *from*

5    *liability* under section 301(b)[.]."  *Evangelista v. Inlandboatmen's Union of Pac*.,

6    777 F.2d 1390, 1400 (9th Cir. 1985) (italics added) (citing *Atkinson v. Sinclair*

7    *Refining Co*., 370 U.S. 238, 247-48 (1962) ("When Congress passed §301, it

8    declared its view that only the union was to be made to respond for union

9    wrongs[.]")).  "The language of section 301(b) and the Supreme Court's decision in

10   *Atkinson* [thus] provide a shield for individual union members in suits for breach of

11   the duty of fair representation."  *Evangelista*, 777 F.2d at 1400.  While "[u]nion

12   officers, employees and agents are not subject to individual liability for acts

13   performed on behalf of the union in the collective bargaining process," *Peterson v.*

14   *Kennedy*, 771 F.2d 1244, 1259 (9th Cir. 1985), the protection accorded them under

15   Section 301(b) goes beyond that:  Courts "have read *Atkinson* to *prohibit claim*s,

16   both state and federal, tort and otherwise, against individuals who are employees of

17   or acting as agents or representatives of their unions."  *Id.* at 1257 (italics added;

18   affirming judgment in favor of union official because "*Atkinson* ... preclude[s]

19   employees from maintaining a state tort claim against union officials").

20   Accordingly, courts routinely dismiss DFR claims, such as those here, brought

21   against union officials.  *See, e.g.*, *Evangelista*, 777 F.2d at 1400 (affirming dismissal

22   of DFR claim against individual officials); *Shek v. Cal. Nurses Ass'n/Caregivers &*

23   *Healthcare Emps. Union*, No. C-10-1483 EMC, 2010 WL 3155830, at *7 (N.D. Cal.

24   Aug. 9, 2010) (dismissing DFR claim because "individual union officials are

25   immune from such claims").[6]

26

27   _____

    [6] *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574 (8th Cir. 1981),

28   the sole authority cited by Plaintiff on this issue, *see* Plf. 501 Opp. at 24, does not
support her position.  *Anderson* stands for the unremarkable proposition that a union

1    C.    Plaintiff's allegations fail to state a DFR claim as a matter of law

2    Even if Plaintiff's DFR claim had been timely, her allegations would still fail.

3        1.    *Bargaining outcomes*

4    Plaintiff does not attempt to rebut the Proposed 501 Defendants' showing that

5    her allegations cannot meet the high standard for showing a breach of the DFR solely

6    based on the results of the Union's bargaining.  *See* Prop. 501 Defs. Br. at 12-13

7    (explaining that Plaintiff's allegations cannot show the CBAs were "wholly

8    irrational," discriminatory, or in bad faith).  Instead, despite pleading a claim based

9    on bargaining outcomes, *see* Compl. ¶¶13, 59-60, Plaintiff now disavows asserting a

10   DFR claim based solely on the outcomes of the three CBA negotiations at issue, Plf.

11   501 Opp. at 24-25, thereby conceding that such allegations cannot state a claim.

12       2.    *Nondisclosure in bargaining and ratification*

13   In addition to bargaining outcomes, Plaintiff also alleges that the DFR was

14   breached by alleged nondisclosures during CBA negotiations.  The Proposed 501

15   Defendants demonstrated that Plaintiff did not and indeed, could not, allege the

16   causation element of that claim.  Prop. 501 Defs. Br. at 13-15.[7]  In her one-paragraph

17   response, Plaintiff does not dispute that causation is an element of her DFR claim.

18   *See* Plf. 501 Opp. at 25.[8]  Nor could she.  The Ninth Circuit has made clear that

19

20   _____

21   acts through its officials, and thus a *union* can be held liable for a breach of the DFR
     based on its officials' actions.  *See Anderson*, 641 F.3d at 578-79.  *Anderson* simply

22   did not address individual officer immunity, nor was that question presented because

23   the individual officers upon whose actions the union's liability were based *were not
     even named as defendants*.  *See id.*

24   [7] Plaintiff contends that the Netflix CBA was "covertly" negotiated "[c]ontrary

25   to all past practice," Plf. 501 Opp. at 3 n.5, but does not assert any claim challenging

26   that negotiation *per se* under any legal theory; rather, her claim relates only to the
     alleged nondisclosures during that negotiation.

27   [8] Plaintiff also spends three pages arguing that she has satisfied the breach

28   element of her DFR claim.  *See* Plf. 501 Opp. at 23-25.  But the Proposed 501
     Defendants challenged the causation element, and that issue is all the Court needs to

1   plaintiffs cannot state a DFR claim without showing causation, and that when a

2   plaintiff challenges alleged nondisclosures in negotiating and ratifyingthe CBA, the

3   causation element requires showing both that "(1) absent the [nondisclosure], the

4   outcome of the ratification vote would have been different; *and* that (2) had it been

5   different, the company would have acceded to the union's demands." *Ackley v. W.*

6   *Conf. of Teamsters*, 958 F.2d 1463, 1472 (9th Cir. 1992) (italics in original).[9]

7       Plaintiff apparently concedes that her complaint does not allege that the

8   eligibility changes to the Health Plan were caused by the Proposed 501 Defendants'

9   alleged nondisclosures.  Plf. 501 Opp. at 25.  She makes no effort to show that her

10  allegations could ever establish causation for the eligibility changes.  *See id.*  Nor

11  does she attempt to contend that her complaint alleges that the collective bargaining

12  results (specifically, the CBA terms setting the amount of the employer contributions

13  to the Health Fund) would have been different absent the alleged nondisclosures.

14  *See id.*

15      Plaintiff instead argues that the nondisclosures in some undefined way

16  "materially impaired" the "Union's CBA processes."  Plf. 501 Opp. at 25.  Plaintiff's

17  complaint, however, seeks relief for harm to the *members* caused by the Health Plan

18  changes, as well as for harm caused to the *Health Fund* by the negotiated CBAs.

19  Compl. ¶¶95(C), (D).  It is not sufficient for her to allege that the Union's processes

20

21  ————————————————

22  decide in order to dismiss her DFR claim (to the extent it is not dismissed as
    untimely or improperly asserted against union officials).

23      [9] Although the Ninth Circuit first explained the causation requirement in

24  nondisclosure and misrepresentation cases, *see Ackley*, 958 F.2d at 1472, it applies
    equally to all DFR claims.  *See, e.g.*, *Spellacy v. Airline Pilots Ass'n – Int'l*, 156 F.3d

25  120, 124-25, 130 (2d Cir. 1998); *Merritt v. Int'l Ass'n of Machinists*, No. 2:06–CV–
    14342, 2008 WL 5784439, at *14 (E.D. Mich. Sept. 22, 2008), *aff'd*, 613 F.3d 609

26  (6th Cir. 2010); *Bishop v. Air Line Pilots Ass'n, Int'l*, 1998 WL 474076, at *16-17

27  (N.D. Cal. Aug. 4, 1998) (rejecting argument that *Ackley* causation test is limited to
    the context of misrepresentations prior to contract ratification votes), *aff'd mem.*, 211

28  F.3d. 1272 (9th Cir. 2000) (table).

1   would have been different but for the nondisclosures.  Under Ninth Circuit law, she

2   must also allege that the different processes *would have had* a different result.  And

3   this she does not and cannot do.[10]  Thus, for the further reason that she has failed to

4   allege an element of her DFR claim, that claim must be dismissed.[11]

## II.   Plaintiff Lacks Good Cause to File, and Fails to State, a Section 501 Claim Because She Alleges and Seeks to Redress Harm to Union Members, Not to the Union

7          Plaintiff cannot shoehorn her allegations seeking redress for injuries to Union

8   members into a statute written by Congress to address harm to the Union.  She lacks

9   good cause to file a Section 501 claim for that reason alone, as well as because she

10  failed to provide the Union with the required statutory notice of her claim.  Even if

11  leave to file her claim is granted, her proposed complaint falls far short of stating a

12  Section 501 claim, and thus should be simultaneously dismissed.[12]

_____

14          [10] Moreover, Plaintiff's complaint does not even allege facts showing causation for the indeterminate harm she now argues.  Instead, Plaintiff asks the Court to infer that the nondisclosures "materially impaired" the CBA processes based solely on the asserted facts that (1) an ERISA lawsuit has been filed in response to the eligibility changes, and (2) one of the plaintiffs in that case is a non-Health Trustee union negotiator.  Plf. 501 Opp. at 25.  Plainly, Plaintiff has not alleged causation of anything, by any stretch of the imagination.  The second asserted fact, moreover, is not even alleged in Plaintiff's complaint, and thus in any event could not save her complaint from dismissal.

20          [11] Plaintiff cannot avoid dismissal by pretending her complaint does not say what it plainly says.  To the extent that, contrary to her complaint, Plaintiff should seek to disavow any recovery for members or the Health Fund due to the CBA negotiation results, that would eviscerate the basis for and purpose of her DFR claim.  DFR claims require actual, concrete harm to members from the union's conduct during collective bargaining, not just the alleged failure of the union to achieve some ideal "process."  *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (describing the "highly deferential" approach courts take to union bargaining conduct challenged by DFR claims, "recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities").

27          [12] For efficiency, the Proposed 501 Defendants address the flaws in Plaintiff's attempt to bring these allegations as a Section 501 claim first (which go to both the good cause and dismissal issues), then the lack of good cause for notice.

A.     <u>Plaintiff's allegations fail to state a Section 501 claim as a matter of law</u>

The Proposed 501 Defendants' opening brief showed that, even accepting all of Plaintiff's allegations on their face, and drawing all reasonable inferences in her favor, the disputes that she raises are outside the boundaries of Section 501. Plaintiff offers no serious rejoinder to that showing.

1.     *Plaintiff's allegations of nondisclosure fail to allege harm to the Union*

Plaintiff's Section 501 claim based on alleged failures by union officials to disclose information regarding the Health Fund's financial status during collective bargaining necessarily fails because it does not—and cannot—allege any harm to the Union itself from those nondisclosures.  The law is clear and Plaintiff does not dispute it:  A Section 501 claim can only be brought to recover for harm to the union itself, not harm to individual union members.  *See* 29 U.S.C. §501(b) (only authorizing suits "to recover ... relief for the benefit of the labor organization"); *Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers ("SEIU")*, 718 F.3d 1036, 1045 (9th Cir. 2013) ("union officers owe [a] duty to the organization as a whole, not merely to the rank and file").  The only "relief granted under Section 501 is for the benefit of the real party in interest, the union[.]"  *Phillips v. Osborne*, 403 F.2d 826, 831 (9th Cir. 1968); *see also O'Hara v. Teamsters Union Local No. 856*, 151 F.3d 1152, 1161 (9th Cir. 1998) ("The real beneficiaries of a successful section 501 action are the union and its entire membership.") (quotation omitted).

Instead, Plaintiff attacks a straw man, misrepresenting the Proposed 501 Defendants' position to be that Section 501 requires monetary harm as a matter of law.  Plf. 501 Opp. at 15.  The Proposed 501 Defendants never contended that monetary harm was required.  *See* Prop. 501 Defs. Br. at 19-22.  Rather, their opening brief stated only—and accurately—that the "paradigmatic" Section 501 claim "involves a misappropriation of union funds."  *Id.* at 18 (citing *Guzman v. Bevona*, 90 F.3d 641, 647 (2d Cir. 1996)).  The Proposed 501 Defendants focused their opening arguments on the alleged monetary harm to the Health Fund and the

1    individual Union members affected by the eligibility changes because that is the only

2    concrete harm from the alleged nondisclosures Plaintiff alleges in her complaint.  *See*

3    Prop. FAC ¶¶7-9, 13, 41, 51-52, 59, 62, 102, 125(C), (D) (seeking recovery for harm

4    to the Health Fund and union members from the benefits changes).

5        Now, Plaintiff concedes that harm to the Health Fund's coffers is not harm to

6    the union, Plf. 501 Opp. at 16, and thus is not a harm that can be a basis for a Section

7    501 claim.  She also disavows seeking recovery for the injury to the Health Fund, *id.*

8    at 17—even though that is exactly what her complaint requests.  *See* Prop. FAC

9    ¶125(C).  Thus, contrary to her contention, Plf. 501 Opp. at 17, she plainly is seeking

10   to address the same injury as the ERISA claims in *Asner*.  Regardless, her belated

11   concession is correct:  The Health Fund is not union property, and thus not a basis

12   for a Section 501 claim.  *See Hearn v. McKay*, 603 F.3d 897, 902 (11th Cir. 2010).

13       Next, Plaintiff also does not dispute that a Section 501 claim cannot be

14   brought to recover for harm to a subset of individual union members, *see* Plf. 501

15   Opp. at 14, 17, and instead expressly disavows bringing any claim to recover for

16   harm to a subset of members, *id.* at 17.  Again, this contradicts her actual allegations,

17   *see* Prop. FAC ¶¶7-9, 13, 41, 51-52, 59, 62, 102, 125(D), but her concession is

18   correct:  Claims to recover harm for specific union members, as opposed to the union

19   itself, are disqualified from proceeding under Section 501.  *See Phillips*, 403 F.2d at

20   832 (dismissing Section 501 claim seeking relief for "certain union members only");

21   *O'Hara*, 151 F.3d at 1161 (affirming summary judgment against Section 501 claims

22   that "obviously were not for the benefit of the union").

23       Plaintiff therefore tries to salvage her nondisclosure claim by identifying two

24   alleged "harms" to the Union as a whole:  (1) "subversion" of the collective

25   bargaining process, Plf. 501 Opp. at 16, and (2) exposure to "liability" for a DFR

26   claim, *id.* at 16.  Neither is a proper basis for a Section 501 claim.

27       The asserted harm of "subverted" and "materially impaired" collective

28   bargaining processes is nothing more than rhetoric, a phrase Plaintiff's brief invokes

1   repeatedly, like a mantra, without explaining what it means or why it is a cognizable

2   Section 501 harm, *see* Plf. 501 Opp. at 1, 2, 3, 13, 14, 16, 17, in an attempt to

3   disguise alleged harm to a subset of members as harm to the membership as a whole.

4   It has never been the law (nor should it be) that membership voting on a collective

5   bargaining agreement must be informed of every piece of information that is

6   conceivably relevant to all of the many terms of such an agreement.[13]  Plaintiff

7   therefore needs to allege that *these particular* non-disclosures actually harmed the

8   bargaining process for *this union* in some particular, concrete way.  But neither

9   Plaintiff's proposed complaint nor her brief identifies what that harm is.  Rather, she

10  attempts to substitute slogans for substance.  Plaintiff concedes that she does not

11  allege that the bargaining parties would have agreed to greater Health Fund

12  contributions (much less great enough to avoid the eligibility changes she describes)

13  but for the alleged nondisclosures.  *See supra* at 10.  And her proposed complaint

14  does not even allege that—let alone how—the collective bargaining process would

15  have proceeded differently if the disclosures had been made.

16      Rather, Plaintiff relies on *Stelling v. International Brotherhood of Electrical*

17  *Workers Loc. Union No. 1547*, 587 F.2d 1379 (9th Cir. 1978).  In *Stelling*, the

18  plaintiff alleged that union officials denied the union membership a right to vote that

19

---

20      [13] As the Ninth Circuit explained in *Ackley*, "the LMRDA does not require that
    union members be provided with 'meaningful' information prior to voting on
21  contract ratification."  958 F.2d at 1473 (addressing claims for nondisclosures about
    collective bargaining under LMRDA Section 101).  This is because "unequal access
22  to information is as inherent in the structure of the collective bargaining system as it
    is in our larger democratic system." *Id.*  at 1474.  "Union leaders, by virtue of their
23  status as collective bargaining representatives, necessarily possess more information
    about the progress and projected outcome of collective bargaining than union
24  members." *Id.*  And, "[a]t the time of a ratification vote, the officials will inevitably
    know more about the final terms of the new agreement than the rank-and-file
25  members." *Id.*  Thus, "it is the breach of the union's internal rules that must serve as
    the basis for any complaint that insufficient information was provided to the
26  membership prior to or at the time of ratification of a contract," *id.* at 1476, not some
27  generalized alleged harm to the union or its processes.

28

1    was expressly guaranteed by the union constitution, and the court held that alleging

2    denial of a constitutionally-guaranteed right to vote stated a Section 501 claim.  *Id.* at

3    1381, 1385-87.  However, the Ninth Circuit then interpreted the union's constitution

4    and upheld judgment in favor of the *union officials* because the constitution did not,

5    in fact, require a membership vote on the agreement at issue.  *Id.* at 1389.

6           To try and fit within *Stelling*, Plaintiff invokes only two exceedingly general

7    "Objectives" expressed in this Union's constitution: "Increasing the power and

8    leverage of our members in their bargaining relationships with the employers in our

9    industries," and "Organizing workers in the entertainment and media industries in

10   order to maximize our bargaining strength."  Plf. 501 Opp. at 13-14; *see* Leonard

11   Decl. Ex. 1 at 2.  Plaintiff has not alleged, and nor can she, that the nondisclosures at

12   issue violate these general provisions akin to the violation of the specific

13   constitutional right to vote that was alleged in *Stelling*.[14]

14          The Ninth Circuit did not, as Plaintiff would have the Court do here, find harm

15   to the union by speculating as to unspecified damage to the union's collective

16   bargaining "processes," but rather identified a specific right of union members

17   expressly guaranteed by their constitution, and thus, a specific requirement imposed

18   on the union officials that they had allegedly failed to perform.  *See Stelling*, 587

19   F.2d at 1387.  In contrast to *Stelling*, Plaintiff here identifies no express

20   constitutional right of which the union membership has been deprived, but instead

21   asks the Court to speculate from certain hortatory statements of the Union's

22

23   _____

24          [14] Plaintiff does not even allege that the alleged nondisclosures prevented
     those constitutional Objectives from being achieved.  *See generally* Prop. FAC.
25   There is no reason to think that internal disclosures about the Health Fund by some
     Union negotiators to other Union negotiators would have increased leverage or
26   bargaining strength against the employers, who were negotiating over allocating a
     fixed amount of money.  Nor does Plaintiff allege or attempt to explain, with regard
27   to the second Objective, what nexus the alleged nondisclosures in bargaining could
     have with union organizing.
28

1   "Objectives" some ideal bargaining process of which the Union has allegedly fallen

2   short, due to the nondisclosures.[15]  *Stelling* does not support such speculation.  *See*

3   587 F.2d. at 1389 (granting judgment against claim upon finding there was no

4   constitutional violation).  Moreover, Plaintiff's injury argument is circular.  The

5   asserted breach of duty is that the Proposed 501 Defendants did not disclose certain

6   Health Fund information during collective bargaining; and the now-argued harm to

7   the union from that breach is the same: that the Health Fund information was not

8   disclosed in collective bargaining.  Plf 501 Opp. at 13-15, 21.  That position

9   improperly reads the requirement of harm to the union out of the statute, subsuming

10  it in the "breach" element.

11        Under *Stelling*, it cannot be that every time a union officer takes some action

12  that a member disagrees with, the member can sue the officer under Section 501 for

13  harm to the entire union merely by alleging that the action (be it disclosure,

14  nondisclosure, or anything else) hindered the "process" through which the union

15  pursues some generic objective.  For instance, other Objectives in the Union's

16  Constitution include "[e]stablishing, conducting, sponsoring and maintaining such

17  educational, recreational, social and charitable enterprises as may assist our members

18  and aid in their general welfare," and "[c]ooperating, coordinating and combining

19  with other organizations whose objectives include the advancement and

20  improvement of members' compensation and working conditions."  Leonard Decl.

21  Ex. 2 at 2.  Under Plaintiff's theory, any alleged misstep in any process related to

22  those objectives (*i.e.*, a choice a plaintiff disagrees with) would be harm to the union

23  redressable under Section 501, thus subjecting union officials to almost limitless

---

25        [15] Plaintiff's reliance on *Sheen v. Screen Actors Guild* is similarly misplaced,
26  as that case alleged that union officials failed to undertake an actuarial study and to
    analyze the economic effects of a proposed merger *as required by a union board
27  resolution and the union's "governing documents*," specific rights of which the
    union membership was allegedly deprived.  *See* No. CV 12-01468 SJO AJWX, 2012
28  WL 2360923, at *7 (C.D. Cal. Mar. 28, 2012).

liability for carrying out their day-to-day operations.[16]  "No court has adopted such a limitless interpretation of section 501[.]"  *Doe #1 v. Am. Fed'n of Gov't Emps.*, No. 20-1558 (JDB), ---F.Supp.3d---, 2021 WL 355099, at *8 (D.D.C. August 11, 2021). Neither should this Court.  *See Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters*, 82 F.3d 303, 306 (9th Cir. 1996) ("There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions.").

Plaintiff also tries to circumvent the requirement for harm to the union by asserting that the Proposed 501 Defendants have "exposed the Union to liability on a DFR claim."  Plf. 501 Opp. at 16.  However, by "liability" she just means her own allegations of a breach of the DFR.  Plaintiff cannot bootstrap herself into a Section 501 claim simply by simultaneously alleging a DFR claim.  No case has ever allowed this, which would turn every DFR claim into an accompanying Section 501 claim against the union officer who took the challenged action, likely because this argument entirely ignores what courts have cautioned to be the limited purpose of Section 501, as well as the purpose for the good cause threshold: to avoid harassing and disruptive claims against union officials.  *See Tile, Marble, Terrazzo, Finishers, Shopworkers & Granite Cutters Int'l Union v. Ceramic Tile Finishers Union, Local 25*, 972 F.2d 738, 744 (7th Cir. 1992) ("Section 501(a)'s primary goal is to deal with the problem of corrupt management of funds by union officials."); *Phillips*, 403 F.2d

---

[16] Plaintiff embraces that result, contending that *Stelling* held that Section 501 is a "catch-all" provision, Plf. 501 Opp. at 19 n.11, "under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them," *O'Hara*, 151 F.3d at 1161 (quoting *Phillips*, 403 F.2d at 830).  On the contrary, *Stelling* expressly confirmed: "Our decision regarding the application of s[ection] 501 *does not mean that courts have power to intervene in intra-union affairs at slight provocation or on any invitation*.  Rather we confirm the principles expressed in *Phillips v. Osborne*, 403 F.2d 826 (9th Cir. 1968), that judicial interference should be undertaken only with great reluctance."  *Stelling*, 587 F.2d at 1387 (italics added).  Plaintiff's acknowledgment that Section 501 would need to be a catch-all provision to encompass her nondisclosure claim is telling.

1   at 831 (Section 501 "seek[s] to further union democracy and thereby prevent misuses

2   of power by union leaders); *Cowger v. Rohrbach*, 868 F.2d 1064, 1068 (9th Cir.

3   1989) (the good cause "showing protects union officials from harassing and

4   vexatious litigation which has no merit ... and from unwarranted judicial intrusion in

5   the processes of union democracy").

6         Countenancing such a tactic would also eviscerate the statutory requirement

7   for actual harm to the union.  The lone case Plaintiff cites for this theory, Plf. 501

8   Opp. at 16, does not support it.  In *Hearn v. McKay*, the court held there was no

9   Section 501 claim against union officials whose actions allegedly diminished the

10   funds in ERISA benefit plans because the funds were not union property.  603 F.3d

11   897, 902 (11th Cir. 2010).  In dicta in a footnote, the court suggested that the fact the

12   union itself "suffered a substantial loss of union funds when the Defendants caused

13   the union to enter into a settlement agreement to reimburse the plans" was a

14   circumstance that "seems more likely to fall within the scope of section 501(a)."  *Id.*

15   at 902 n.7.  That speculation, which does not appear to have been followed by any

16   subsequent court, does not even justify Plaintiff's position here, where Plaintiff does

17   not, and cannot, allege any actual "loss of union funds" caused by Defendants.

18   Moreover, as a practical matter, this theory gets Plaintiff nowhere because her DFR

19   claim is meritless, *see supra* at Section I.[17]

20

21         [17] Plaintiff's attempts to distinguish the Proposed 501 Defendants' other

22   authorities are unavailing.  Proposed Section 501 Defendants cited *Hoffman v. Kramer*, 362 F.3d 308, 323 (5th Cir. 2004), for its recognition that allegations that

23   union officials did not disclose certain facts during a contract ratification vote do not

24   allege harm to the union as a whole.  Prop. 501 Defs. Br. at 21.  Although *Hoffman* also stated that "*duties* under § 501(a) relate *primarily* to the misuse of union money

25   or property," 362 F.3d at 323  (italics added); *see also id.* at 316 n.3, Proposed 501

26   Defendants did not rely on *Hoffman* for its description of the scope of Section 501fiduciary duties.  Plaintiff attempts to distinguish *Nellis v. Air Line Pilots*

27   *Association* on the basis that the union there did not violate the union's internal rules for handling an airline merger, Plf. 501 Opp. at 17, but that does not change *Nellis*'

28   point that harm to a subset of union members is not a Section 501 injury, *see* 815 F.

1   Because Plaintiff's two asserted harms do not fall within Section 501, her

2   nondisclosure claim fails on its face.

3           2.    *The challenged Union communications fall outside Section 501*

4         Plaintiff also contends that certain official Union communications represent a

5   Section 501 violation, but offers no rebuttal to the Proposed 501 Defendants'

6   argument that these official communications were not speech by any individual

7   official, but rather speech by the Union itself. Plaintiff has alleged that the

8   communications were authorized by the Union, made through official Union

9   channels, and set forth the Union's official positions. *See* Prop. FAC ¶¶69, 71-74.

10  They are thus speech by the Union itself. *See Leonard v. Clark*, 12 F.3d 885, 889

11  (9th Cir. 1993), *as amended* (Mar. 8, 1994) (speech by union officials is speech by

12  the union itself when they "have authority to represent the Union, and ... claim that

13  they are speaking for it"). A Section 501 claim cannot be asserted for actions by the

14  Union itself. *See Stelling*, 587 F.2d at 1386 n.6. Plaintiff's communications claim

15  based on the Union's communications thus fails for that reason alone.

16        Moreover, Plaintiff makes no effort to show that her communications

17  allegations meet the legal standard for a breach of Section 501 fiduciary duties. In

18  the Ninth Circuit, a union official breaches his or her fiduciary duty only if the

19  official (1) violates the union constitution, (2) expends union funds for his or her

20  direct personal benefit, or (3) otherwise acts in bad faith. *See SEIU*, 718 F.3d at

21  1049; *Carpenters Local Union 721 v. Limon*, No. CV 18-8470 DSF (MRWx), 2020

22  WL 3124222, at *7 (C.D. Cal. Apr. 23, 2020). As to the first and third prongs,

23  Plaintiff does not identify any purported violation of the SAG-AFTRA Constitution

24  and does not contend that the communications—which merely provided the Union's

25

26  _____

Supp. 1522, 1542 (E.D. Va. 1993), *aff'd*, 15 F.3d 50 (4th Cir. 1994). And, as

27  discussed above, Plaintiff does not allege any violation of binding union rules, but

just some vague "impairment" of the Union's collective bargaining "processes" that

28  would not satisfy even her own attempt to distinguish *Nellis*.

1    response to accusations regarding the controversial topic of the Health Plan

2    eligibility changes—rise to the level of "palpably unconscionable or outrageous

3    actions" that constitute bad faith under Section 501.  *See Local No. 48, United Bhd.*

4    *of Carpenters v. United Bhd. of Carpenters*, 920 F.2d 1047, 1054, 1058 (1st Cir.

5    1990); Plf. 501 Opp. at 17-19.

6           All that remains is using union funds for the Union officials' direct personal

7    benefit.  Plaintiff's brief repeats a conclusory assertion that the three

8    communications somehow "protect[ed]" unidentified "personal interests" of certain

9    Union officials, Plf. 501 Opp. at 17-19, but she does not allege in her complaint, or

10   explain in her brief, the basis for that assertion.  *See* Prop. FAC; Plf. 501 Opp. at 17-

11   19.  That is not sufficient to state a claim under Section 501, and conclusory

12   assertions—even if alleged in a complaint—must be disregarded on a motion to

13   dismiss.  *See Daniels-Hall*, 629 F.3d at 998.  Moreover, as an example under

14   substantive Section 501 law, every union official may benefit indirectly (or even

15   directly) from particular collective bargaining terms; in many unions, the officers'

16   salaries are pegged to the collectively-bargained wages that the members receive

17   under the CBA.  But that does not render the union funds expended in that

18   bargaining a breach of fiduciary duty.  Indeed, under Section 501, union officials are

19   lawfully permitted to benefit indirectly from expenditures of union funds, so long as

20   the expenditures were authorized by and for the benefit of the union.  *Erkins v.*

21   *Bryan*, 785 F.2d 1538, 1544 (11th Cir. 1986); *Ray v. Young*, 753 F.2d 386, 391 (5th

22   Cir. 1985).  And even direct benefits to union officials are permissible unless the

23   expenditures are "manifestly unreasonable."  *See Carpenters Loc. Union* 721, 2020

24   WL 3124222 at *7 (quotation omitted).  Plaintiff does not and cannot allege a

25   violation under either standard by the Union's communications to the membership at

26   issue here.

27          Plaintiff does not contend that her allegations show the Proposed 501

28   Defendants sought or obtained any identifiable *direct* personal benefit from the

1    Union communications, or that, if they did, the expenditures were "manifestly
2    unreasonable."  *See* Plf. 501 Opp. at 17-19.  Nor could she, as the communications
3    merely discussed factual information about the eligibility changes and included just
4    one email, one press release, and one video.  *See* Prop. FAC ¶¶69, 73-74 & n.13.

5         Instead, Plaintiff appears to argue that her claim must proceed on an indirect
6    benefit theory because authorization cannot be resolved before summary judgment or
7    trial.  Plf. 501 Opp. at 19.  But that is not correct because Plaintiff's allegations
8    *themselves* plead authorization.  *See, e.g.*, Prop. FAC ¶72 (alleging a resolution
9    passed by the 80-member National Board authorized Union communications to
10   provide members information about the health benefits); Prop. 501 Defs. Br. at 23.
11   Contrary to Plaintiff's contention, Plf. 501 Opp. at 19, she must allege a lack of
12   authorization (or facts sufficient to show such a lack) in order to state a Section 501
13   claim based solely on indirect benefits to union officials.  *See Erkins*, 785 F.2d at
14   1544; *Ray*, 753 F.2d at 391.  Conceding the opposite, she cannot state a claim.[18]

15        Plaintiff asserts, without explanation, that the *SEIU* decision supports her
16   claim.  Plf. 501 Opp. at 19.  But *SEIU* concerned union officials actively using union
17   funds and resources to "weaken their own union and form a rival union," for the
18   purpose of taking over their original union's representation rights—a far cry from the
19   official union communications at issue here.  718 F.3d at 1044.  Moreover, the *SEIU*
20   court found there was no authorization for the expenditures because they were taken
21   "in direct conflict with, and in contravention of, provisions of the [union]
22   constitution."  *Id*. at 1049.  Plaintiff, in contrast, concedes the communications here
23   were authorized and does not allege they violate the SAG-AFTRA Constitution.

24        Moreover, unions have a First Amendment right to communicate with their
25   members.  *See Allee v. Medrano*, 416 U.S. 802, 819 n.13 (1974); *Am. Fed'n of Gov't*

26

27        [18] Even if authorization were viewed as a defense, it is appropriate for the
28   court to address the issue where, as here, it is obviously raised on the face of the
     complaint.  *Rivera v. Peri & Sons Farms, Inc*., 735 F.3d 892, 902 (9th Cir. 2013).

1   *Emps. Loc. 1 v. Stone*, 502 F.3d 1027, 1034 (9th Cir. 2007).  Yet in challenging the

2   Union communications here, Plaintiff has alleged nothing more substantial than her

3   disapproval of the messages at issue.  If the mere fact of spending union resources on

4   communications with which union members disagree is grounds for a Section 501

5   claim, those claims will be legion, chilling unions from exercising their First

6   Amendment right to explain their positions to their members.  The Court should not

7   condone such a plainly unconstitutional infringement on union speech.[19]

8          B.     Plaintiff does not have good cause to file a Section 501 claim

9          The good cause requirement "is intended as a safeguard to the affected union

10  against harassing and vexatious litigation brought without merit or good faith."

11  *Horner v. Ferron*, 362 F.2d 224, 228 (9th Cir. 1966).  Thus, leave to file a Section

12  501 claim should be denied where a plaintiff's application fails to state a claim, *see*

13  *Garcia v. Serv. Emps. Int'l Union*, No. 2:17-CV-01340-APGNJK, 2018 WL

14  10721071, at *3 (D. Nev. July 24, 2018), *aff'd*, 856 F. App'x 105 (9th Cir. 2021), or

15  is "frivolous," *Pimentel v. Aloise*, No. 18-CV-00411-EMC, 2018 WL 6025613, at

16  *15 (N.D. Cal. Nov. 16, 2018).  As the Proposed 501 Defendants have made clear,

17  *see* Prop. 501 Defs. Br. at 16, 18, because Plaintiff's Section 501 Application rests

18  on allegations that are facially meritless under Section 501, *see also supra* at Section

19  II.A, leave to file the claim should be denied.

20

21

22  _____

23       [19] Finally, as the Proposed 501 Defendants established in their opening brief,
Plaintiff does not allege that certain of the individual Proposed 501 Defendants

24  played any role in the challenged Union communications.  Prop. 501 Defs. Br. at 22,
n.13.  In her opposition, Plaintiff concedes that her complaint does not connect four

25  of the Defendants (Defendants Rodriguez, McGuire, Brown, or Powell) to the
challenged union communications.  Plf. 501 Opp. at 17 & n.10 (contending that the

26  Court should only infer that Defendants Carteris, White, and Crabtree-Ireland were

27  responsible for the communications).  The communications claim should be
dismissed against those four defendants for that reason as well.

28

1    In addition, leave to file should be denied because Plaintiff failed to comply

2    with the statutory notice and demand requirement, which provides that a Section 501

3    demand letter must identify the specific union officials against whom the claim is

4    brought.  *See Hanahan v. Lucassen*, 764 F. Supp. 194, 196 (D.D.C. 1991); *Commer*

5    *v. Am. Fed'n of State, Cty. & Mun. Emps.*, 272 F. Supp. 2d 332, 337 (S.D.N.Y.

6    2003), *aff'd*, 390 F.3d 203 (2d Cir. 2004).  Plaintiff attached the 60-page *Asner*

7    complaint to her demand letter, but attaching a voluminous pleading to a bare-bones

8    letter and expecting the Union to comb through it in an attempt to guess which

9    portions the letter's author believes to be relevant is not sufficient notice under any

10   definition of the word.  Moreover, Plaintiff seeks to bring Section 501 claims against

11   three Union officials (out of the dozens of Union officials encompassed by the broad

12   categories listed in her demand letter) who are not even named as defendants in the

13   *Asner* complaint, and she gives no explanation of how the Union could have been

14   expected to figure out which of the many potential additional officials at issue she

15   wished the Union to sue.  Indeed, she concedes that the Union needed to conduct a

16   "factual inquiry" to determine who she was asking the Union to sue, Plf. 501 Opp. at

17   11, which is the opposite of the notice that she was statutorily obligated to provide

18   the Union before initiating this suit.  Because she failed to comply with the statutory

19   prerequisites, Plaintiff's Section 501 Application should be denied.

20          C.    <u>Section 501 permits dual representation of the Union and its officers</u>
21                <u>through judicial determination on the merits of the pleadings</u>

22          At various points throughout her brief, Plaintiff argues that it was improper for

23   the Union to employ the law firm Cohen, Weiss, & Simon ("CWS") to investigate

24   her Section 501 demand letter because, at the time of the investigation, CWS also

25   represented certain Union officials in the *Asner* ERISA litigation.  *See* Plf. 501 Opp.

26   ///

27   ///

28   ///

at 9-11, 18, 21.[20]  That contention is wrong as a matter of law.  The same counsel may represent both a union and its officials with respect to a Section 501 claim up until a court denies the union officials' motion to dismiss.  *See Yablonski v. United Mine Workers*, 448 F.2d 1175, 1177 (D.C. Cir. 1971); *see also Doe #1*, 2021 WL 3550996, at *4 (In the "early stages of the litigation," dual representation is permissible "in order 'to ascertain the exact nature of the lawsuit and protect the interests of all defendants,'" permitting "'one lawyer [to] properly represent all defendants if a suit appears groundless.'") (quoting *Yablonski*, 448 F.2d at 1177); *Burroughs on Behalf of Operating Engineers Loc. Union No. 3 v. Marr*, 559 F. Supp. 141, 146-47 (N.D. Cal. 1982), *appeal dismissed and order vacated as moot*, 742 F.2d 509 (9th Cir. 1984).  Here, at the time of the Union's consideration of her demand letter, Plaintiff had not yet filed this lawsuit or even an application to file a Section 501 claim; nor had any court then ruled on the merits of the pleadings in the *Asner* case.[21]

### III.   The Court Should Dismiss the Complaint Without Leave to Amend

Plaintiff does not request leave to amend her complaint in the event of dismissal; nor does she contend that she *could* amend her complaint to add any allegations that would remedy the legal deficiencies identified above.  *See generally* Plf. 501 Opp.  Because leave to amend would be futile, the Court should dismiss

---

[20] This is not expressly alleged as a basis for liability in her complaint.  *See* Prop. FAC ¶¶114-116, 121.  The Proposed 501 Defendants respond here to these incorrect assertions to clarify the law and record for the Court.

[21] Plaintiff's authorities are not to the contrary.  *Milone v. English*, 306 F.2d 814 (D.D.C. 1962), and *Yablonski v. United. Mine Workers ("Yablonski II")*, 454 F.2d 1036, 1040-41 (D.D.C. 1971) (the second appeal in *Yablonski*), both concerned continued dual representation *after* a court ruling on the pleadings with respect to a Section 501 claim.  And *Stepak v. Southern Co.*, 20 F.3d 398 (11th Cir. 1994), was a shareholder derivative case that applied the business judgment rule under Delaware state law.  *See id.* at 402.  Delaware's business judgment rule is irrelevant to Plaintiff's Section 501 claim, which does not contain a similar showing as a prerequisite to filing suit.

1  Plaintiff's complaint without leave to amend.  *See Cervantes v. Countrywide Home*

2  *Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

3                                      Respectfully submitted,

4

5  Dated: January 7, 2022              /s/ *Corinne F. Johnson*
                                          Corinne F. Johnson
6
                                       JEFFREY B. DEMAIN
7                                      DANIELLE LEONARD
                                       CORINNE F. JOHNSON
8                                      Altshuler Berzon LLP
9
                                       *Attorneys for Attorneys for Defendants*
10                                     *David P. White, Ray Rodriguez, John T.*
                                       *McGuire, John Carter Brown, and Linda*
11                                     *Powell and Proposed Defendants Gabrielle*
                                       *Carteris and Duncan Crabtree-Ireland*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28