UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Katie Thibodeaux | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Daniel Lifschitz
Neville Johnson
Robert Kriner, Jr.
Steven Schwartz

Attorneys Present for Defendants:

Julie Dickinson
Lisa Demodovich
Dexter Rappleye
Corinne Johnson
Danielle Leonard
Jeffrey Demain

**Proceedings:** PLAINTIFF'S APPLICATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT ADDING CLAIM PURUSANT TO 29 U.S.C. § 501(A) (Dkt. 23, filed on August 4, 2021)

MOTION TO DISMISS FILED BY DEFENDANTS JOHN CARTER BROWN, GABRIELLE CARTERIS, DUNCAN CRABTREE-IRELAND, JOHN T. MCGUIRE, LINDA POWELL, RAY RODRIGUEZ, DAVID P. WHITE (Dkt. 26, filed on October 6, 2021)

MOTION TO DISMISS FILED BY DEFENDANTS DAVID HARTLEY-MARGOLIN, MICHAEL PNIEWSKI, SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS (Dkt. 28, filed on October 6, 2021)

## I.    INTRODUCTION

On June 25, 2021, plaintiff Francis Fisher filed a verified application, pursuant to 29 U.S.C. § 501(b), to file a proposed complaint against defendants Screen Actors Guild – American Federation of Television and Radio Artists ("SAG-AFTRA"), Gabrielle Carteris, David P. White, Duncan Crabtree-Ireland, Ray Rodriguez, Michael Pniewski, David Hartley-Margolin, John T. McGuire, John Carter Brown, and Linda Powell.  Dkt. 1.  Plaintiff's proposed complaint asserted two claims: (1) breach of the duty of fair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

representation, in violation of 29 U.S.C. § 159(a), against defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Brown, and Powell; and (2) breach of fiduciary duty, in violation of 29 U.S.C. § 501(a), against defendants Carteris, White, Rodriguez, Crabtree-Ireland, McGuire, Brown, and Powell.  Dkt. 1-1.

With respect to plaintiff's Section 501(a) claim, pursuant to 29 U.S.C. § 501(b), a member of a labor organization may bring suit against "any officer, agent, shop steward, or representative" of the labor organization for violation of Section 501(a), having first made a pre-suit demand upon the labor organization or its governing board and "upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte."  29 U.S.C.A. § 501.

On July 28, 2021, the Court denied plaintiff's verified application to file the proposed complaint, without prejudice to plaintiff filing a complaint setting forth her Section 159(a) claim, alongside a verified application for leave to add a claim pursuant to Section 501(a).  Dkt. 18.

On August 3, 2021, plaintiff filed a complaint setting forth her Section 159(a) claim.  Dkt. 20 ("Compl.").  On August 24, 2021, plaintiff filed a verified application for leave to add a claim pursuant to Section 501(a).  Dkt. 23 ("App.").  With her application, plaintiff filed her proposed first amended class action complaint.  Dkt. 23-1 ("Prpsd. FAC").

On October 6, 2021, SAG-AFTRA, Pniewski, and Hartley-Margolin (collectively, the "159 Defendants") moved to dismiss plaintiff's Section 159(a) claim pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Dkt. 28 ("159 MTD").  On October 6, 2021, pursuant to Rule 12(b)(6), White, Rodriguez, McGuire, Brown, Powell, Carteris, and Crabtree-Ireland (collectively, the "Proposed 501 Defendants") moved to dismiss plaintiff's Section 501(a) claim, as well as her Section 159(a) claim.  Dkt. 26-1 ("501 MTD").

On November 22, 2021, plaintiff submitted her opposition to the 159 MTD (Dkt. 32 ("159 Opp.")), and her opposition to the 501 MTD (Dkt. 31 ("501 Opp.")).  On January 6, 2022, the 159 Defendants submitted their reply.  Dkt. 34 ("159 Reply").  On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

January 7, 2022, the Proposed 501 Defendants submitted their reply. Dkt. 35 ("501 Reply").

The Court held a hearing on January 24, 2022. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The relevant allegations are drawn from the operative complaint and, with respect to plaintiff's Section 501 claim, supplemented by additional allegations set forth in the proposed first amended complaint.

### A. The Parties

Plaintiff Fisher is a member of SAG-AFTRA. Compl. ¶ 23. She has served as First Vice President of the SAG-AFTRA Los Angeles Local and as a member of the SAG-AFTRA National Board since August 29, 2019. Id. She was a member of both SAG and AFTRA from 1976 until the 2012 Union Merger. Id.

SAG-AFTRA is a labor organization as defined under 29 U.S.C. § 402. Id. ¶ 24. SAG-AFTRA resulted from the 2012 merger of the respective SAG and AFTRA unions. Id. ¶ 3. SAG-AFTRA (the "Union") is governed by its Constitution. Id. ¶¶ 39-45. The Union's objectives, as set forth in the Constitution, include protecting the rights of entertainment and media artists in all other respects consistent with the overall objectives of the Union and doing all other things necessary and proper to advance and promote their welfare and interests. Id. ¶ 39.

At all times relevant to this dispute, Carteris served as President of SAG-AFTRA, as a SAG-AFTRA National Board member, and as a SAG-AFTRA Executive Committee member; White served as SAG-AFTRA's National Executive Director and chief negotiator and as a Union-appointed SAG-AFTRA Health Plan Trustee; Crabtree-Ireland served as Chief Operating Officer and General Counsel of SAG-AFTRA; Rodriguez served as SAG-AFTRA's Chief Contracts Officer and Union-appointed SAG-AFTRA Health Plan Trustee; McGuire served as SAG-AFTRA's National Senior Advisor and a Union-appointed SAG-AFTRA Health Plan Trustee; Hartley-Margolin served as a Union-appointed SAG-AFTRA Health Plan Trustee; Pniewski served as a Union-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

appointed SAG-AFTRA Health Plan Trustee; Powell served as a member of the SAG-AFTRA National Board and as a Union-appointed SAG-AFTRA Health Plan Trustee; and Brown served as a Union-appointed SAG-AFTRA Health Plan Trustee and as a member of the SAG-AFTRA National Board. Id. ¶¶ 25-31; Prspd. FAC ¶¶ 26-34.

    **B.**    **The SAG-AFTRA Merger and the Health Plans Merger**

In January 2012, the governing boards of the Screen Actors Guild ("SAG") and the American Federation of Television and Radio Artists ("AFTRA") agreed to merge to two unions to become SAG-AFTRA. Compl. ¶ 33. Prior to the merger, pension and health benefits were provided to the respective members of SAG and AFTRA by separate pension and welfare (health) plans, which were collectively bargained, joint-trusted labor-management trusts subject to ERISA. Id.

In early June 2016, the respective trustees of the SAG and AFTRA health plans agreed to merge the plans. Id. ¶ 34. The benefits provided under the merged plan continued Senior Performer Coverage for SAG and AFTRA members who qualified. Senior Performer Coverage provided the Union health benefit to all Union members (and their qualified dependents and surviving spouses) who were receiving a pension from either the SAG-Producers Pension Plan or the AFTRA Retirement Fund (if eligible for a pension from both, members only needed a pension from SAG to qualify), and had a certain number of Union "Retiree Health Credits" from years of qualifying for active coverage under the health plans. Id. ¶ 36. Senior Performer Coverage was secondary to Medicare unless the member regained coverage through "Earned Active Eligibility," which could be achieved by meeting the "Covered Earnings" threshold based on the member's total compensation for work covered by the operative CBAs as long as the member's earnings included at least $1 in sessional earnings. This method of obtaining "Earned Active Eligibility" considered both sessional and residual earnings[1] toward

---

[1] Residual earnings are compensation paid to members performers for use of a theatrical motion picture or television program beyond the use covered by initial compensation. Compl. ¶ 7 n. 2. While not defined in the complaint, the Court understands that sessional earnings relate to earnings acquired through active work completed in a given time period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|----------|--------------------------|------|------------------|
| Title    | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

qualifying for SAG-AFTRA Health Plan primary coverage, with Medicare as the secondary coverage provider.  Id.

At the time of the health plans merger, Carteris stated that the merger would position the new health plan "to be financially sustainable for all members for years to come."  Prpsd. FAC ¶ 37.  In a letter to SAG-AFTRA members in the summer of 2016, White stated that the Health Plans Merger "is tremendous news for our membership on many fronts.  Fully 65,000 souls who depend on these plans will become beneficiaries of a single, financially strengthened plan that offers automatic family coverage for all participants."  Id. ¶ 38.

### C.    The Health Benefit Amendments

On August 12, 2020, the SAG-AFTRA Health Plan announced modifications (the "Benefit Amendments") to its benefit structure.  Compl. ¶ 7.  The Benefit Amendments increased the SAG-AFTRA Health Plan's eligibility requirements for many Union members, disqualified residuals earnings toward earnings-based eligibility for Union members age 65 and older taking a Union pension, eliminated Senior Performer Coverage and Age and Service Eligibility (for members 40 and older with 10 years vested and $13,000 in earnings), and negatively affected those members who previously earned coverage under the lower Plan II $1,840 earnings threshold.  Id.  Additionally, the Benefit Amendments modified the earnings period for all Union members age 65 and older to run from October 1 to September 30, cutting short the time available to these members to obtain the sessional earnings necessary to meet the increased eligibility requirements and retroactively eliminating coverage for which some members had already qualified.  Id. ¶ 8.

Plaintiff alleges that the Benefit Amendments effectively eliminated benefits under the SAG-AFTRA Health Plan for thousands of Union members and their families who are now unable to qualify based on earnings where residual earnings are no longer credited toward SAG-AFTRA Health Plan eligibility, and many members face the dramatically increased hurdles for eligibility under the Health Plan in the future.  Id. ¶ 9.

One week after the Benefit Cuts' announcement, on August 19, 2020, SAG-AFTRA Health Plan Trustee Richard Masur admitted that the Benefit Cuts had been in the works for two years, and SAG-AFTRA Health Plan Trustee Barry Gordon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

highlighted that the Trustees had worked nearly every day for those two years to figure out how they could preserve the SAG-AFTRA Health Plan's benefits. Id. ¶ 10.

    **D.**    **Collective Bargaining Agreements**

    Funding to the SAG-AFTRA Health Plan is largely provided by employer contributions set by the terms of the Union's operative CBAs. Compl. ¶ 10. In the two years leading up to the Benefit Cuts, the 2019 Commercials, 2019 Netflix and 2020 TV/Theatrical CBAs that were operative on August 12, 2020 were negotiated and approved by the Union. Id.

    The Union, by law, is its members' exclusive agent in collective bargaining and is bound by the duty of fair representation under the NLRA. Id. ¶ 46. The collective bargaining agreements ("CBAs") between the Union and the employers determine the elements of compensation and value provided to Union members for their work as performers, including the amount of new money, the amount of contributions by employers to the benefit plans (including the SAG-AFTRA Health Plan) based on members' earnings, and potential diversions of wage increases to other funding such as the SAG-AFTRA Health Plan. Id. ¶ 48.

    With respect to the 2019 Commercials and the 2020 TV/Theatrical CBAs, the Union National Board appointed a Wages and Working Conditions Committee for each CBA in order to gather proposals from the national membership and formulate the Union's proposal package to exchange with the employers, including employer contributions to the SAG-AFTRA Health Plan based on all earnings of all Union members. Id. ¶ 12. Thereafter, the National Board appointed Negotiation Committees to conduct the bargaining on behalf of the Union, and the bargained terms were submitted to the National Board for approval. Id. The approved CBAs were then submitted to the membership for ratification. Id.

    The negotiation and approval process for the 2019 Netflix CBA was different, however. Id. It was negotiated entirely by Union staff led by White and Rodriguez, and was submitted to the TV/Theatrical Negotiating Committee as a take-it-or-leave-it matter. Id. Moreover, it was approved by the National Board but was not submitted to the membership for ratification. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

The 2019 Commercials CBA was ratified by members on May 8, 2019. Id. ¶ 52. The 2019 Netflix CBA was approved by the National Board on July 20, 2019, and went into effect on August 1, 2019. Id. ¶ 53. Finally, the 2020 TV/Theatrical CBA was ratified by members on July 22, 2020. Id. ¶ 54.

White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown, and Powell are and have been Union-appointed Trustees of the SAG-AFTRA Health Plan since the 2017 Health Plan Merger, and were involved in negotiating one or more of the 2019 Netflix CBA, the 2019 Commercials CBA, and the 2020 TV/Theatrical CBA.[2] Id. ¶¶ 4,11. Plaintiff alleges that through their service as SAG-AFTRA Health Plan Trustees, these defendants knew the urgent funding issues facing the SAG-AFTRA Health Plan, the level of funding required to sustain its health benefit structure, that the Union proposals and bargained terms were inadequate to sustain that health benefit structure, and that massive cuts were coming to effectively eliminate the SAG-AFTRA Health Plan's benefits for thousands of Union members and their families under the terms of the Union proposal packages and the terms of the negotiated CBAs. Id. ¶ 13. Plaintiff further alleges that White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown, and Powell bargained for and approved terms that they knew were inadequate to sustain the SAG-AFTRA Health Plan's benefit structure for the Union and its members, and failed to disclose this vital information to the other participants in the Union's collective bargaining process. Id.

**E.    Post-Benefit Amendments Activity**

Following the Benefit Amendments, plaintiff and other Union Members formed the "SOS Health Plan" team and launched SOSHealthPlan.com as a means of providing clarity to Union members affected by the Benefit[Amendments. Compl. ¶ 63. They also launched social media pages on Twitter, Instagram, and Facebook, made a social media

---

[2] White, Rodriguez and McGuire participated in the negotiations for all three CBAs, with White and Rodriguez serving as lead negotiators. Compl. ¶ 11. Hartley-Margolin participated in the negotiations concerning the 2019 Commercials CBA. Id. Powell and Pniewski participated in the negotiation of the 2019 Netflix and 2020 TV/Theatrical CBAs. Id. Powell and Brown voted as Union National Board members to approve the 2019 Commercials, 2019 Netflix and 2020 TV/Theatrical CBAs. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

video featuring over 20 high-profile rank-and-file Union members speaking out about the draconian changes to the SAG-AFTRA Health Plan, and held two nationwide virtual "town hall" meetings advertised via word-of-mouth that were open to all Union members and the public. Id. ¶¶ 63, 64.

On December 1, 2020, in response to the Benefit Amendments Union members filed an action under 29 U.S.C. §§ 1104 and 1105 ("ERISA") in this Court on December 1, 2020, alleging breaches of fiduciary duty by the SAG-AFTRA Health Plan Trustees. Id. ¶ 15 (citing Asner et al v. The SAG-AFTRA Health Fund et al, Case No. 2:20-cv-10914 (C.D. Cal.)).

Plaintiff alleges that the defendants in this case, most of whom face claims for personal liability in the Asner action, used their fiduciary positions as Union officials and Union assets to support and defend the Benefit Cuts and the SAG-AFTRA Health Plan Trustees, and to protect themselves from personal liability. Compl. ¶ 18. On December 4, 2020, three days after the filing of Asner, the Union disseminated an email to its membership, in which it stated that the Union members were being "misled" by a "deliberate public and social media campaign spreading misinformation and fear." Id. ¶ 66. On December 14, 2020, at the direction of Defendants Carteris and White, a special meeting of the National Board was called to pass a "RESOLUTION RE: ACCURACY OF INFORMATION ABOUT HEALTH PLAN CHANGES." Id. ¶ 69. The resolution "resolved" to "take all appropriate action to ensure members are not deceived by misrepresentations" and "condemn[ed] those who seek to use the financial challenges of the Health Plan and the related [benefit] changes to generate fear or anger in furtherance of personal agendas." Id. Additionally, defendants Carteris and White directed Union staff to disseminate a press release concerning the resolution. Id. ¶ 70. The press release quoted Carteris as stating that "[l]ike many scams that target the elderly, the misinformation being spread is endangering our most vulnerable members." Id. Finally, also on December 14, 2020, the SAG-AFTRA Communications Department released a video of SAG-AFTRA member Adam Arkin "discussing Five Facts about the Health Plan change" with links to the December 4, 2020 Union message and the Union's December 14, 2020 press release. Id. ¶ 71.

On December 18, 2020, plaintiff demanded pursuant to 29 U.S.C. § 501(b) that the Union and National Board assert claims for breach of fiduciary duty under The Labor-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Management Reporting and Disclosure Act of 1959 against the Union officials who represented the Union and its members in connection with the Union's CBA negotiations and approvals, as well as those officials who used their Union positions and Union assets to support and defend the Benefit Cuts and protect themselves from personal liability (the "Demand"). Id. ¶ 19; see also Dkt. 23-2 ("Dmnd."). The Demand requested "recovery of losses to the union and members;" "recovery of any profits from the fiduciary violations;" "full disclosure to the union and membership regarding their roles in the contract negotiations and conception, design and approval of the benefit cuts;" and "such other appropriate relief on behalf of the union and membership." Dmnd. at 4-5.

The Demand was on the agenda for the Union's February 6, 2021, regularly scheduled National Board meeting. Id. ¶ 20. On February 5, 2021, Susan Davis of Cohen, Weiss & Simon LLP ("CWS"), retained by the Union to address the Demand, informed Plaintiff that, at the meeting, Plaintiff would be requested to present the Demand and would then be directed to recuse herself during Davis's presentation to the National Board. Prpsd FAC ¶ 77. Plaintiff is a member of the National Board. Id. Plaintiff requested Davis provide the basis and authority supporting recusal, but Davis did not respond. Id. CWS is representing the CB Defendants and others in the Asner action, and is opposing claims made by Union members to the EEOC relating to the Benefit Cuts. Id.

At the February 6, 2021, SAG-AFTRA National Board meeting, the National Board voted to reject the Demand. Id. ¶ 78. At the meeting, Plaintiff stated she believed the Demand did not impair her capacity or duty impartially to evaluate and consider the Demand and related information as a SAG-AFTRA National Board member and therefore she would comply with the recusal directive but only on an involuntary basis. Id. Neither the Demand, other materials relating to the Demand, nor CWS's work related to the Demand was provided to the National Board prior to or at the February 6 meeting. Id.

### III.   LEGAL STANDARD

#### A.   Rule 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004).

**B.     Rule 12(b)(6)**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely. Fed. R. Civ. P. 15(a). However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

### A.   Motions to Dismiss Plaintiff's Section 159(a) Claim

Plaintiff's complaint asserts a claim for breach of the duty of fair representation ("DFR"), in violation of 29 U.S.C. § 159(a), against defendants SAG-AFTRA, White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Brown, and Powell. Compl. ¶¶ 87-93. The 159 Defendants and the Proposed 501 Defendants named in plaintiff's DFR claim move to dismiss plaintiff's DFR claim. See 159 MTD; 501 MTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

1.    <u>Statute of Limitations</u>

The 159 Defendants and the Proposed 501 Defendants (collectively, "defendants") claim that plaintiff's DFR claim is time-barred based on the six-month statute of limitations for asserting a DFR claim.  159 MTD at 14-16; 501 MTD at 16-18. Defendants argue that whether plaintiff's DFR claim is based on the outcome of the three CBAs or on defendants' failure to disclose information about the SAG-AFTRA Health Fund's financial status, plaintiff's DFR claim is time barred given that the 2019 Commercials CBA was ratified on May 8, 2019, the 2019 Netflix CBA went into effect August 1, 2019, the 2020 TV/Theatrical CBA was ratified on July 20, 2020, the Benefit Amendments were publicly announced on August 12, 2020, and the fact that the Benefit Amendments had been in the works for two years was announced on August 19, 2020. <u>Id.</u>  Plaintiff did not file her complaint until August 3, 2021.  <u>See</u> Compl.

In opposition, plaintiff claims that the limitation period was tolled until February 5, 2021, "when she learned that any Demand though the Union and National Board was futile."  159 Opp. at 15-16; 509 Opp. at 26.  Plaintiff points to <u>Galindo v. Stoody Co.</u>, where the Ninth Circuit stated that "[a]n employee should not be penalized for seeking to resolve his dispute through the grievance process before filing a suit in federal court." 793 F.2d 1502, 1510 (9th Cir. 1986).  Plaintiff also cites <u>Casumpang v. Hawaiian Com. & Sugar Co.</u>, which found that an intra-union appeal of a union decision not to arbitrate a claim tolled the limitation period.  Civ. No. 12-00694 ACK, 2013 WL 6191087, at *10 (D. Haw. Nov. 25, 2013), <u>aff'd</u>, 712 F. App'x 709 (9th Cir. 2018).  In sum, plaintiff argues that "[t]he PAC's allegations regarding Plaintiff's pursuit of intra-union remedies are sufficient at the pleadings stage to support tolling under <u>Galindo</u> (which was decided after trial) and <u>Casumpang</u> (decided on summary judgment)."  159 Opp. at 17; 509 Opp. at 28.

In reply, defendants contend that plaintiff's effort to invoke equitable tolling based on her Section 501 demand letter fails as a matter of law because "equitable tolling of DFR claims applies only where a plaintiff pursues contractual remedies, whether under a CBA or a union's constitution or bylaws, that can provide the same relief sought in the DFR claim."  501 Reply at 11; <u>see also</u> 159 Reply at 10-11.

DFR claims are subject to a six-month statute of limitations.  <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 172 (1983).  The cause of action accrues "when the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court." Allen v. United Food & Commercial Workers Int'l Union, 43 F.3d 424, 427 (9th Cir. 1994). At the latest, plaintiff's cause of action accrued on August 19, 2020, when the Union "admitted that the Benefit Cuts had been in the works for two years." Compl. ¶ 10; Prspd. FAC ¶ 10. Accordingly, the statute of limitations on plaintiff's claim expired on February 19, 2021. Plaintiff did not file her DFR claim until August 3, 2021.

In an effort to preserve her DFR claim, plaintiff argues that "the limitation period was tolled while she pursued intra-union remedies in a good-faith effort to address the misconduct and injury until February 5, 2021, when she learned that any Demand though the Union and National Board was futile." 159 Opp. at 15-16; 509 Opp. at 26. The Court disagrees. The Demand was a statutory prerequisite to plaintiff's Section 501 claim, and fails to toll the statute of limitations on her DFR claim. Plaintiff's Section 501 claim is brought against individual Union officials, and seeks relief for harm to the Union. Conversely, plaintiff's DFR claim is brought against the Union, for harm to the members of the Union. Plaintiff's Demand cannot toll the statute of limitations on her DFR claim, because the Demand "could not result in the relief that Plaintiff seeks" on her DFR claim. Maurer v. Int'l Bhd. of Elec. Workers, Loc. 569, AFL-CIO, 200 F. Supp. 3d 1052, 1061 (S.D. Cal. 2016). Moreover, equitable tolling of DFR claims is "'most appropriate when the plaintiff is *required* to avail himself of an alternate course of action as a precondition to filing suit.'" Harris v. Alumax Mill Prod., Inc., 897 F.2d 400, 404 (9th Cir. 1990)) (italics in Harris) (quoting Conley v. Int'l Bhd. of Elec. Workers, Loc. 639, 810 F.2d 913, 915–16 (9th Cir. 1987)).

The primary authority that plaintiff relies upon in support of her argument that the Demand tolls her DFR claim is Galindo, wherein the Ninth Circuit stated that "[a]n employee should not be penalized for seeking to resolve his dispute through the grievance process before filing a suit in federal court." 793 F.2d at 1510. However, in Galindo, the Ninth Circuit added that "resort to the grievance process should toll the limitations period only if the grievance is related to the alleged breach of duty of fair representation" and "could result in the relief sought be the employee. Id. at 1510 n. 5. Plaintiff cites no authority that found that a Section 501 demand letter tolls a DFR claim. Pursuant to the allegations set forth by plaintiff in her complaint and proposed first amended complaint, plaintiff's DFR claim is time-barred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

2.     Individual Union Officials

Defendants also argue that, pursuant to Section §301(b) of the Labor Management Relations Act, individual union officials are immune from lawsuits for breaches of the DFR. 159 MTD at 17; 501 MTD at 18-19. Accordingly, they argue that plaintiff's DFR claim against the individual defendants must be dismissed.

In opposition, plaintiff states that "[t]he DFR Claim does not seek recovery from the Individual Defendants for the Union's breach" and that "[t]he Individual Defendants are named on the DFR count as the agents of the Union who controlled and caused the Union actions in breach of the DFR." 159 Opp. at 20; 509 Opp. at 30. In reply, defendants reiterate that individual officers are immune from DFR claims, and note that plaintiff failed to distinguish the controlling authority requiring dismissal of the individual defendants. 159 Reply at 18; 509 Reply at 15-16.

"The language of section 301(b) and the Supreme Court's decision in Atkinson [] provide a shield for individual union members in suits for breach of the duty of fair representation." Evangelista v. Inlandboatmen's Union of Pac., 777 F.2d 1390, 1400 (9th Cir. 1985); see also Carter v. Smith Food King, 765 F.2d 916, 920–21 (9th Cir. 1985) ("It is well settled that section 301 provides the basis for an action for breach of the duty of fair representation only against a union as an entity, and not against individuals who happen to hold positions in that union."); 29 U.S.C. § 185 ("Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."). Accordingly, the only permissible named defendant on plaintiff's DFR claim is SAG-AFTRA.

3.     Whether Plaintiff's Allegations State a DFR Claim

Defendants argue that even if plaintiff's claims are not time barred and are properly raised against the Union, courts take a "'highly deferential' approach" to examining whether the Union has represented its members fairly, "'recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities.'" 501 MTD at 19 (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991)); see also 159 MTD at 18-19. Accordingly, defendants argue that "a union's only obligation pursuant to its duty of fair representation is to refrain from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

conduct that rises to the level of being 'arbitrary, discriminatory, or in bad faith.'" 159 MTD at 18 (quoting Marquez v. Screen Actors Guild, 525 U.S. 33, 44 (1998); see also 501 MTD at 20. Defendants add that plaintiff has not stated a claim based on arbitrary conduct, discriminatory conduct, or conduct made in bad faith. 159 MTD at 19-23; 501 MTD at 20-23. Additionally, defendants argue that plaintiff's DFR claim should be dismissed on the ground that plaintiff cannot establish causation, i.e., that Union members' injury were caused by defendants' alleged breach of the DFR. 159 MTD at 23-26; 501 MTD at 21-23.

In opposition, plaintiff contends that "[t]he PAC allegations state a plausible claim [that] the actions of the Individual Defendants and thus the Union were arbitrary and in bad faith." 159 Opp. at 19; 509 Opp. at 29-30. This is because "the actions by Defendants to accept and approve terms they knew were insufficient to sustain the benefit structure were materially misleading" and "that none of the Defendants disclosed this information to the other Union negotiators or National Board members or members supports an inference of bad faith in a conspiracy of silence and acceptance." 159 Opp. at 20; 509 Opp. at 30. With respect to causation, plaintiff argues that "[i]t is reasonable to infer, absent the alleged misconduct, the Union CBA processes would have proceeded differently in evaluating and negotiating for members' rights." 159 Opp. at 22; 509 Opp. at 31.

In reply, defendants reiterate that plaintiff must allege that the bargaining processes would have had a different result if not for the nondisclosures, and that plaintiff failed to do so. 509 Reply at 17-19; 159 Reply at 15-16. They add that plaintiff "has not alleged facts to support a plausible inference that SAG-AFTRA's conduct was arbitrary, discriminatory, or in bad faith." 159 Reply at 16-17; 509 Reply at 17.

A union's duty of fair representation, which "applies to all union activity, including contraction negotiation," is breached where the union's actions "are either arbitrary, discriminatory, or in bad faith." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (internal quotations omitted). "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46 (1998). "[A] union's conduct generally is not arbitrary when the union exercises its judgment. . . . If the challenged conduct involves the union's judgment, then the plaintiff[] may prevail only if the union's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

conduct was discriminatory or in bad faith." Demetris v. Transp. Workers Union of Am., AFL-CIO, 862 F.3d 799, 805 (9th Cir. 2017) (internal citations and quotation marks omitted). To state a claim "that the union's exercise of judgment was discriminatory," a plaintiff must allege "discrimination that is intentional, severe, and unrelated to legitimate union objectives." Beck v. United Food & Com. Workers Union, Loc. 99, 506 F.3d 874, 880 (9th Cir. 2007) (internal citation and quotation marks omitted). Finally, to state a claim that "the union's exercise of judgment was in bad faith," the plaintiff must allege "fraud, deceitful action or dishonest conduct." Id. (internal citation and quotation marks omitted). "Unions owe their members 'complete good faith and honesty.'" Demetris, 862 F.3d at 808 (quoting United Bhd. of Carpenters and Joiners of Am. v. Metal Trades Dep't, AFL-CIO, 770 F.3d 846, 848 (9th Cir. 2014)). "Even so, mere negligence and erroneous judgment calls cannot, by themselves, support an inference of bad faith." Demetris, 862 F.3d at 808.

To state a DFR claim "in a misrepresentation case—and thus in a nondisclosure case—plaintiffs must demonstrate 'a causal relationship between the alleged misrepresentations and their injury.'" Ackley v. W. Conf. of Teamsters, 958 F.2d 1463, 1472 (9th Cir. 1992) (quoting Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1397 (9th Cir. 1986). "They must show that (1) absent the misrepresentations, the outcome of the ratification vote would have been different; and that (2) had it been different, the company would have acceded to the union's demands." Ackley, 958 F.2d at 1472. The Ninth Circuit has stated that "[t]he Acri test for causality, and particularly the second prong, is difficult to satisfy, and rightly so. Generally, the union's internal election and rulemaking processes are the proper vehicle, at least initially, for addressing members' complaints regarding the adequacy of union representation during the bargaining process." Id. (citing Acri, 781 F.2d at 1399-1400 (Reinhardt, J., concurring)).

The Court finds that plaintiff's complaint fails to state a plausible DFR claim. Plaintiff argues that the proposed first amended complaint contains allegations that suggest that the actions of the Union were arbitrary and bad faith. 159 Opp. at 19; 509 Opp. at 29-30. However, "a union's conduct generally is not arbitrary when the union exercises its judgment." Demetris, 862 F.3d at 805. While the Benefit Amendments, and the outcome of the CBAs, may have benefited some at the expense of others, "a winners-and-losers compromise does not mean that the union has violated its duty of fair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

representation" (Addington v. US Airline Pilots Ass'n, 791 F.3d 967, 983 (9th Cir. 2015)), and the plaintiff's allegations fail to suggest that the Union's actions were "wholly irrational." Demetris, 862 F.3d at 805.

With respect to bad faith, plaintiff argues "that none of the Defendants disclosed this information to the other Union negotiators or National Board members or members supports an inference of bad faith in a conspiracy of silence and acceptance." 159 Opp. at 20; 509 Opp. at 30. However, as noted above, with respect to DFR claims related to misrepresentation and nondisclosure, plaintiff must allege that "(1) absent the misrepresentations, the outcome of the ratification vote would have been different; and that (2) had it been different, the company would have acceded to the union's demands." Ackley, 958 F.2d at 1472. Plaintiff's complaint fails to plead allegations that meet this causation standard. Accordingly, plaintiff's complaint and proposed first amended complaint fail to state a DFR claim.

       4.    Standing

Under Article III of the Constitution, the Court's jurisdiction over the case "depends on the existence of a 'case or controversy.'" GTE Cal., Inc. v. FCC, 39 F.3d 940, 945 (9th Cir. 1994). A "case or controversy" exists only if a plaintiff has standing to bring the claim. Nelson v. NASA, 530 F.3d 865, 873 (9th Cir. 2008), rev'd on other grounds, 131 S. Ct. 746 (2011). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

The 159 Defendants argue that plaintiff has failed to allege that she suffered a cognizable injury because the complaint contains no allegations that plaintiff was a member of the SAG-AFTRA Health Plan or that plaintiff was a one of the "group of members whose benefits were reduced, eliminated, or otherwise affected by the eligibility changes at the heart of Plaintiff's claim." 159 MTD at 28 (citing Compl. ¶ 23).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

In opposition, plaintiff argues that "[t]he PAC alleges the subversion and material impairment of the Union CBA processes injured the rights of the members to leverage collective action to maximize their compensation, and vote to ratify the terms." 159 Opp. at 23. Moreover, in an effort to establish injury-in-fact, plaintiff offers the Declaration of plaintiff Frances Fisher. See Dkt. 33 ("Fisher Decl."). Therein, Fisher states that "I am a participant in the SAG-AFTRA Health Plan," and that "[u]nder the health plan benefit structure changes announced in August 2020, my residuals earnings no longer credit toward my Union health benefit eligibility." Id. ¶ 3. Fisher adds that "[e]mployer contributions to the health plan negotiate[ted] and approved under the Commercials, Netflix and TV/Theatrical CBAs are made on my behalf based on all earnings, including residuals earnings." Id.

In reply, the 159 Defendants argue that "the subversion and material impairment of the Union CBA processes" is not a concrete and particularized injury, and therefore cannot support standing. 159 Reply at 12. The 159 Defendants note that plaintiff's opposition fails to assert that plaintiff lost coverage due the Benefit Amendments, and contend that "Plaintiff's argument that she suffered a redressable injury based on a change in the apportionment of employer contributions to the Health Plan lacks merit." Id. at 13-14.

The Court finds that plaintiff has not adequately alleged a "concrete and particularized" injury. Lujan, 504 U.S. at 560. While plaintiff's declaration states that, as a result of the Benefit Amendments, "[her] residuals earnings no longer credit toward [her] Union health benefit eligibility," plaintiff fails to allege that the Benefit Amendments eliminated, or reduced, her benefits, or that any such reduction or elimination is imminent. Fisher Decl. ¶ 3. Thus, she fails to allege that the outcomes of the relevant CBAs, the Benefit Amendments, or the nondisclosure of the fact the Benefit Amendments were in the works for two years, caused her a concrete and particularized injury. Even though "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," the Court finds that plaintiff's allegations fail to meet this threshold. Lujan, 504 U.S. at 561; see also Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); Keener v. Nat'l Nurses Org. Comm., 615 F. App'x 246, 250 (6th Cir. 2015) (plaintiffs lacking standing for a duty of fair representation claim where they alleged that "a pre-negotiated agreement . . . will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

adversely affect their benefits at some point"); <u>Impress Commc'ns v. Unumprovident Corp.</u>, 335 F. Supp. 2d 1053, 1059 (C.D. Cal. 2003) (plaintiffs lacked standing for their ERISA claim where they "[could not] allege that they have been provided with less disability coverage than they contracted for"); <u>Thole v. U. S. Bank N.A</u>, 140 S. Ct. 1615, 1622 (2020) (plaintiffs lacked Article III standing where "[w]inning or losing [the] suit would not change the plaintiffs' monthly pension benefits").

Plaintiff also argues that "[t]he PAC alleges the subversion and material impairment of the Union CBA processes injured the rights of the members to leverage collective action to maximize their compensation, and vote to ratify the terms." 159 Opp. at 23. However, "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 496 (2009). Accordingly, the court finds that plaintiff has failed to plead "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent" sufficient to support Article III standing. <u>Friends of the Earth, Inc.</u>, 528 U.S. at 180-81.

**B.     Plaintiff's Application for Leave to Add Section 501(a) Claim; 501 Defendants Motion to Dismiss Section 501(a) Claim**

In her verified application for leave to add a claim pursuant to 29 U.S.C. § 501(a) (the "Verified Application"), plaintiff contends that she has fulfilled all pre-suit requirements to assert her Section 501 claim on behalf of SAG-AFTRA. App. ¶¶ 30-33. Plaintiff adds that good cause for her Section 501 claim exists because the 501 Defendants "disloyally misused their fiduciary positions and the assets and machinery of SAG-AFTRA to defend the Benefit Cuts and themselves, adversely to the interests and claims of the Union and its membership arising from the breaches of fiduciary duty and breach of the Union's [DFR] relating to the Union's 2019 Commercials, 2019 Netflix, and 2020 TV/Theatricals collective bargaining process[es] and approvals under the Union Constitution." App. ¶¶ 30-33, 37.

The Proposed 501 Defendants argue that the Court should deny leave to file the Section 501 claim or, in the alternative, dismiss the Section 501 Claim. 501 MTD at 23-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

"Section 501 sets out the fiduciary responsibilities of labor organization officers and provides a cause of action against officers who breach these obligations." Cowger v. Rohrbach, 868 F.2d 1064, 1065-66 (9th Cir. 1989). "Under section 501(a), officers of a labor organization occupy positions of trust in relation to the organization and its members, and have a duty to hold its money and property solely for the benefit of the organization." Id. at 1066. In turn, "Section 501(b) gives individual members of a labor organization the right to sue any officer who violates these fiduciary duties." Id.

However, the right to sue only arises after (1) "the labor organization or its governing board [refuses or fails] 'to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so' by a member," and (2) the plaintiff obtains leave of the Court following a verified application for leave and a showing of "good cause" for filing the complaint. Cowger, 868 F.2d at 1066 (quoting 29 U.S.C. § 501(b)). This unique "good cause" provision "is designed to safeguard union officials from 'harassing and vexatious litigation brought without merit or good faith.'" Filippini v. Austin, 106 F.R.D. 425, 429 (C.D. Cal. 1985) (quoting Horner v. Ferron, 362 F.2d 224, 228 (9th Cir. 1966)).

"Section 501(b) makes it clear that relief granted under Section 501 is for the benefit of the real party in interest, the union whose officers are charged with dereliction." O'Hara v. Teamsters Union Loc. No. 856, 151 F.3d 1152, 1161 (9th Cir. 1998) (internal citations and quotation marks omitted). "[S]tatutes extending federal jurisdiction, such as Section 501(b), are narrowly construed so as not to reach beyond the limits intended by Congress." Phillips v. Osborne, 403 F.2d 826, 828 (9th Cir. 1968).

1.    Good Cause

The Proposed 501 Defendants argue that the Court should deny leave to file the Section 501 claim because plaintiff failed to comply with the statutory notice and demand requirement in that the Demand "did not identify the Union officials that she has now named in her 501 Application and Proposed FAC." 501 MTD at 25. They also argue that "[b]ecause the Plaintiff's Section 501 Application rests on allegations that on their face have no merit whatsoever under Section 501, leave to file the claim should not be granted." Id. at 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

In opposition, plaintiff argues that the Demand "unquestionably provided sufficient information for CWS to identify the targeted officials" because it "specifically defined three groups of individuals in Union leaders, and attached the <u>Asner</u> Complaint, which specifically alleges Defendants White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown and Powell were Health Plan trustees who represented the Union and membership in the Union's CBA processes without disclosing material funding information." 501 Opp. at 16.

In reply, the Proposed 501 Defendants argue that leave to file plaintiff's Section 501 claim should be denied because plaintiff's Section 501 application "rests on allegations that are facially meritless." 501 Reply at 30. Moreover, they reiterate that attaching a 60-page complaint to a demand letter is not sufficient notice, especially where "Plaintiff seeks to bring Section 501 claims against three Union officials (out of the dozens of Union officials encompassed by the broad categories listed in her demand letter) who are not even named as defendants in the Asner complaint." <u>Id.</u> at 31.

Notice to the Union is a "condition precedent" to filing suit on a Section 501 claim. <u>Phillips</u>, 403 F.2d at 828. The Court finds that plaintiff satisfied this condition precent through the Demand, which specified identified the groups of individuals against which she demanded SAG-AFTRA and the National Board commence litigation:

> "[P]ursuant to 29 U.S.C. § 501(b), this letter constitutes a formal and immediate demand on SAG-AFTRA and the National Board to commence litigation to assert claims for breach of fiduciary duty under the LMRDA against: (1) the members of union leadership who are health plan trustees; (2) the members of union leadership who participated in the contract negotiations and approvals with knowledge of the ongoing activity by the health plan trustees to change the benefit structure; and (3) the members of union leadership who approved the health benefit changes or who have used their union positions and the union to support the benefit changes and oppose the claims by union members challenging the health benefit changes."

Dmnd. at 4. While the Demand did not identify the specific Union individuals against whom plaintiff's proposed Section 501 claim would eventually be brought against seventh months later, the Proposed 501 Defendants offer no Ninth Circuit authority suggesting that identification of specific future defendants is required. The lack of such authority is not surprising; the Demand requested "full disclosure to the union and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

membership regarding their roles in the contract negotiations and conception, design and approval of the benefit cuts" (Dmnd. at 5), which suggests that, at the time of the Demand, plaintiff may not have known against who she would eventually bring suit. The Court declines to find that plaintiff failed to meet the good cause standard in the absence of any Ninth Circuit authority suggesting that the identification of specific officials Union is mandatory.

Otherwise, defendants argue that leave to file plaintiff's Section 501 claim should not be granted because the claim is meritless. 501 MTD at 25. However, with respect to the good cause standard, "[u]nder the current Ninth Circuit approach, review is limited and designed simply to ensure that a suit is not frivolous or undertaken for the purpose of harassment." Pimentel v. Aloise, No. 18-CV-00411-EMC, 2018 WL 6025613, at *15 (N.D. Cal. Nov. 16, 2018); see also Cowger, 868 F.2d at 1068 (9th Cir. 1989) (The good cause requirement "protects union officials from harassing and vexatious litigation which has no merit."). Here, plaintiff's first amended complaint is not patently frivolous or undertaken for the purpose of harassment. Rather, it legitimately attempts to put in question whether the Proposed 501 defendants violated their Section 501 fiduciary duties. The Court **GRANTS** plaintiff leave to file her proposed first amended complaint, and proceeds to analyze plaintiff's Section 501 claim pursuant to the Rule 12(b)(6) motion to dismiss standard.

2.   Whether Plaintiff's Allegations State a Section 501 Claim

A Section 501 breach of fiduciary duty claim may be brought "to recover . . . relief for the benefit of the labor organization." 29 U.S.C. § 501(b). "The real beneficiaries of a successful section 501 action are the union and its entire membership." Kerr v. Shanks, 466 F.2d 1271, 1277 (9th Cir. 1972). "Often, if a union official's act has been authorized by constitution, bylaw, resolution, or by a vote of the membership, liability under § 501 attaches only if: (1) the officer benefitted personally from the act; or (2) the act is patently unreasonable or taken in bad faith." Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers, 718 F.3d 1036, 1049 (9th Cir. 2013).

Plaintiff's Section 501 claim appears to be premised upon the Proposed 501 Defendants failure to disclose the SAG-AFTRA Health Funds' financial status during the negotiation and ratification of the relevant CBAs, and their failure to negotiate CBAs that would have provided sufficient funding to the Health Fund to avoid the Benefit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Amendments. Prpsd. FAC ¶ 121. Additionally, plaintiff's Section 501 claim challenges the Proposed 501 Defendants' use of their positions to support and defendant the Benefit Amendments. Id. ¶ 18.

With respect to the failure to disclose the SAG-AFTRA Health Funds' financial status or the failure to negotiate CBAs that would have provided additional funding to the Health Fund, the Proposed 501 Defendants argue that "injury to a subset of members, especially one that comprises only 20% of the membership, does not constitute injury to the union as an organization, and it cannot form the basis for a Section 501 claim." 501 MTD at 28. They also argue that a Section 501 claim does not apply to harm to a benefits fund, such as the one at issue here, that is legally separate from a union. Id. In sum, the Proposed 501 Defendants argue that "[b]ecause Plaintiff's 501 Application and Proposed FAC necessarily rest entirely on a theory of harm to a mere subset of individual Union members rather than harm to the union, leave to file that claim should be denied (or the claim should be dismissed without leave to amend)." Id. at 30. With respect to the Union's communications in support of the Benefit Changes, the Proposed 501 Defendants argue that those communications do not constitute a breach of Section 501 because "an official breaches his or her fiduciary duty to the union only if the official (1) violates the union constitution, (2) expends union funds for his or her direct personal benefit, or (3) otherwise acts in bad faith." 501 MTD at 31 (citing Servs. Emps. Int'l Union, 718 F.3d at 1049).

In opposition, plaintiff argues that her allegations that "the Individual Defendants breached their duty of trust to the Union and its members by subverting and materially impairing the Union CBA processes, and by disloyally misusing their fiduciary positions and Union resources to protect their personal interests adverse to the Union and membership . . . support a plausible claim against the 501 Defendants for breaches of their fiduciary [duty] under Section 501." 501 Opp. at 19. Plaintiff points to the CBA, which states that the objectives of the Union include "[i]ncreasing the power and leverage of our members in their bargaining relationships with the employers in our industry," and "[o]rganizing workers in the entertainment and media industries in order to maximize our bargaining strength," and notes that the fidelity of the CBA ratification votes "fundamentally and obviously depends on fully informed voters." Id. at 19-20. Plaintiff adds that "causing the Union to engage CWS to address Plaintiff's Demand knowing CWS' inherent conflicts, was incompatible with their fiduciary duties." Id. at 24-25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Finally, plaintiff argues that in subverting the CBA processes under the Union Constitution, the Proposed 501 Defendants "expose[d] the Union to liability on a DFR claim." Id. at 22.

In reply, the Proposed 501 Defendants reiterate that "Plaintiff's Section 501 claim based on alleged failures by union officials to disclose information regarding the Health Fund's financial status during collective bargaining necessarily fails because it does not—and cannot—allege any harm to the Union itself from those nondisclosures." 501 Reply at 20. With respect to plaintiff's argument that the Proposed 501 Defendants subverted and impaired the Union CBA collective bargaining processes, the Proposed 501 Defendants argue that "'it is the breach of the union's internal rules that must serve as the basis for any complaint that insufficient information was provided to the membership prior to or at the time of ratification of a contract.'" Id. at 22 n. 13 (quoting Ackley, 958 F.2d at 1476). With respect to plaintiff's argument that the Proposed 501 Defendants have exposed the union to liability on the DFR claim, the Proposed 501 Defendants argue that "Plaintiff cannot bootstrap herself into a Section 501 claim simply by simultaneously alleging a DFR claim. . . . No case has ever allowed this." 501 Reply at 25. Finally, the Proposed 501 Defendants reiterate that the challenged Union communications fall outside of Section 501. Id. at 27-30.

The Court finds that plaintiff first amended complaint fails to state a Section 501 claim in that it seeks to recover for harm to a subset of Union members, rather than for any harm to the Union. See Phillips, 403 F.2d at 832 ("In requesting direct relief for certain union members only and not 'for the benefit of the labor organization,' Phillips disqualified himself from proceeding under Section 501."). Importantly, plaintiff's first amended complaint does not allege that the outcomes of the CBAs, or the nondisclosures related to the Health Plan, harmed the Union. See Nellis v. Air Line Pilots Ass'n, 815 F.Supp.1522, 1542 (E.D. Va. 1993) ("[S]ection 501 requires a showing that the union itself suffered harm. As long as a union leadership remains in compliance with the union's internal policies, then the union itself suffers no harm, even if subgroups within the union are disadvantaged.").

While plaintiff argues that "the PAC [] states a plausible claim the 501 Defendants harmed the Union and all of its members by subverting and materially impairing the Union's CBA processes under the Constitution," plaintiff's proposed first amended

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

complaint fails to allege that any provisions of the Union constitution were violated by the CBA negotiation processes, by the outcome of the CBAs, or by the failure to disclose the coming Benefit Amendments.  This failure makes her primary authorities, Sheen v. Screen Actors Guild No. CV 12-01468 SJO AJWX, 2012 WL 2360923, at *7 (C.D. Cal. Mar. 28, 2012), and Stelling v. International Brotherhood of Electrical Workers Loc. Union No. 1547, 587 F.2d 1379 (9th Cir. 1978), distinguishable.  In both Sheen and Stelling, the plaintiff alleged the violation of a right that was expressly guaranteed by the Union constitution at issue.  Sheen, 2012 WL 2360923, at *7 (Plaintiffs alleged that defendants breached their Section 501 fiduciary duty by "refusing to conduct an actuarial study prior to the merger vote, as required by SAG's governing documents," which "denied the membership its right to a meaningful vote."); Stelling, 587 F.2d at 1387 ("The allegation that appellees have denied the membership of the union the constitutionally guaranteed right to vote is a sufficient assertion of a breach of trust on the part of the appellees to invoke the jurisdiction of [Section] 501.").  While plaintiff points to certain CBA "objectives," and the "subversion and material impairment" of the Union's CBA processes, she does not allege that any rights provided under the Union constitution were violated.  This counsels in favor of dismissal.

Plaintiff also argues that "[t]he PAC also states a plausible claim that the 501 Defendants breached their fiduciary duty under Section 501 by disloyally misusing their fiduciary positions and Union resources to protect their personal interests adverse to the Union and membership."  501 Opp. at 23.  This argument appears to focus on the communications made in support of the Benefit Amendments, after they were enacted. Prpsd. FAC ¶¶ 69-80.  These communications consist of an email to members sent by the Union, a resolution of the SAG-AFTRA National Board, a press release sent in conjunction with the resolution of the SAG-AFTRA National Board, and a video released by the SAG-AFTRA communications department.  Id. ¶¶ 69-74.  Although plaintiff argues that "it is reasonable to infer Defendants Carteris, White and Crabtree-Ireland controlled and directed this conduct," plaintiff's proposed first amended complaint fails to identify how Carteris, White and Crabtree-Ireland personally benefitted from those communications[3] or allege that the expenditures associated with those communications

---

[3] For example, the proposed first amended complaint vaguely alleges that defendants "disloyally abused their fiduciary positions and the assets and machinery of the Union to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-05215-CAS (JEMx) | Date | January 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

were "manifestly unreasonable." Carpenters Loc. Union 721 v. Limon, No. CV18-8470 DSF (MRWx), 2020 WL 3124222, at *7 (C.D. Cal. Apr. 23, 2020). While plaintiff relies on Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers, 718 F.3d 1036 (9th Cir. 2013), in that case, "[t]he defendants used union resources to undermine and weaken their own union and promote a rival union." Id. at 1049. The factual allegations here, premised on communications sent through Union channels and relating to the Benefit Amendments, do not rise to the same level.

Finally, to the extent plaintiff's personal benefit argument is premised on the Proposed 501 Defendants "causing the Union to engage CWS to address Plaintiff's Demand," which plaintiff contends "was incompatible with their fiduciary duties" (501 Opp. at 24), "dual representation of the union and union officials [is] permissible at the early stages of [] litigation." Doe #1 v. Am. Fed'n of Gov't Emps., No. CV 20-1558 (JDB), 2021 WL 3550996, at *4 (D.D.C. Aug. 11, 2021) (stating that "the Court is not aware of [] any case involving breach-of-fiduciary-duty claims where dual representation of a union and the union's officials was prohibited before or at the motion-to-dismiss stage").

**V.   CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** plaintiff leave to file her Section 501 claim, and **DISMISSES** plaintiff's first amended complaint. Plaintiff must submit a second amended complaint on or before **February 23, 2022**.

IT IS SO ORDERED.

|  | 00 | : | 33 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |

---

protect themselves and obstruct challenges to their conduct" and "disloyally misused their fiduciary positions and the assets and machinery of SAG-AFTRA to defend the Benefit Cuts and themselves." Prpsd. FAC ¶¶ 76, 80.