UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - MOTION TO DISMISS SECOND AMENDED COMPLAINT FILED BY DEFENDANT SAG-AFTRA (Dkt. 51, filed on April 22, 2022)

MOTION TO DISMISS SECOND AMENDED COMPLAINT FILED BY DEFENDANTS GABRIELLE CARTERIS, DAVID P. WHITE, DUNCAN CRABTREE-IRELAND, RAY RODRIGUEZ, JOHN T. MCGUIRE, JOHN CARTER BROWN, LINDA POWELL, MICHAEL PNIEWSKI, AND DAVID HARTLEY-MARGOLIN (Dkt. 52, filed on April 25, 2022)

## I.     INTRODUCTION

On June 25, 2021, plaintiff Francis Fisher filed a verified application, pursuant to 29 U.S.C. § 501(b), to file a proposed complaint against defendants Screen Actors Guild – American Federation of Television and Radio Artists ("SAG-AFTRA"), Gabrielle Carteris, David P. White, Duncan Crabtree-Ireland, Ray Rodriguez, Michael Pniewski, David Hartley-Margolin, John T. McGuire, John Carter Brown, and Linda Powell. Dkt. 1. Fisher's proposed complaint asserted two claims: (1) breach of the duty of fair representation, in violation of 29 U.S.C. § 159(a), against defendants White, Rodriguez, McGuire, Hartley-Margolin, Pniewski, Brown, and Powell; and (2) breach of fiduciary duty, in violation of 29 U.S.C. § 501(a), against defendants Carteris, White, Rodriguez, Crabtree-Ireland, McGuire, Brown, and Powell. Dkt. 1-1.

With respect to the Section 501(a) claim, pursuant to 29 U.S.C. § 501(b), a member of a labor organization may bring suit against "any officer, agent, shop steward,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

or representative" of the labor organization for violation of Section 501(a), having first made a pre-suit demand upon the labor organization or its governing board and "upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte." 29 U.S.C.A. § 501.

On July 28, 2021, the Court denied Fisher's verified application to file the proposed complaint, without prejudice to her filing a complaint setting forth her Section 159(a) claim, alongside a verified application for leave to add a claim pursuant to Section 501(a). Dkt. 18.

On August 3, 2021, Fisher filed a complaint setting forth her Section 159(a) claim. Dkt. 20. On August 4, 2021, Fisher filed a verified application for leave to add a claim pursuant to Section 501(a). Dkt. 23. With her application, Fisher filed her proposed first amended class action complaint. Dkt. 23-1 ("FAC").

On October 6, 2021, SAG-AFTRA, Pniewski, and Hartley-Margolin moved to dismiss Fisher's Section 159(a) claim pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 28. On October 6, 2021, pursuant to Rule 12(b)(6), White, Rodriguez, McGuire, Brown, Powell, Carteris, and Crabtree-Ireland moved to dismiss Fisher's Section 501(a) claim, as well as her Section 159(a) claim. Dkt. 26-1.

On January 24, 2022, the Court granted Fisher leave to file her Section 501(a) claim, but dismissed Fisher's Section 159(a) claim and Section 501(a) claim with leave to amend. Dkt. 38 ("MTD Ord."). The Court found that Fisher's Section 159(a) duty of fair representation claim was time barred, was improperly brought against individual union officials, lacked standing, and failed to state a plausible claim. Id. at 12-19. Likewise, the Court found that Fisher's FAC failed to state a Section 501 claim, inter alia, because it improperly sought to "recover for harm to a subset of Union members, rather than for any harm to the Union." Id. at 24.

On February 23, 2022, plaintiffs field a second amended complaint. Dkt. 42 ("SAC"). The SAC adds David Andrews, Belinda Balaski, Stephen Hart, Raymond Harry Johnson, Anne Lockhart and Toby Stone-Mandelberg as plaintiffs. Id. ¶ 3. The SAC adds additional substantive allegations, and brings the same two claims: (1) breach of the duty of fair representation, in violation of 29 U.S.C. § 159(a), against defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**        **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

SAG-AFTRA; and (2) breach of fiduciary duty, in violation of 29 U.S.C. § 501(a), against defendants Carteris, White, Rodriguez, Crabtree-Ireland, McGuire, Brown, Powell, Pniewski, and Hartley-Margolin. Id. ¶¶ 137-152.

On April 22, 2022, SAG-AFTRA (the "Union") filed a motion to dismiss plaintiffs' Section 159(a) claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 51 ("SAG MTD"). On April 25, 2021, pursuant to Rule 12(b)(6), Carteris, White, Crabtree-Ireland, Rodriguez, McGuire, Brown, Powell, Pniewski, and Hartley-Margolin (collectively, the "501 Defendants") moved to dismiss plaintiffs' Section 501(a) claim. Dkt. 52-1 ("501 MTD").

On May 27, 2022, plaintiffs submitted their opposition to the SAG MTD (Dkt. 54 ("SAG Opp.")), and their opposition to the 501 MTD (Dkt. 53 ("501 Opp.")). Plaintiffs also filed a request for judicial notice. Dkt. 56 ("RJN"). On June 27, 2022, SAG-AFTRA submitted its reply (Dkt. 58 ("SAG Reply")), and the 501 Defendants submitted their reply (Dkt. 35 ("501 Reply")).

The Court held a hearing on July 11, 2022. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The relevant allegations are drawn from the SAC.

### A.    The Parties

Plaintiff Frances Fisher is a member of SAG-AFTRA. SAC ¶ 22. She has served as First Vice President of the SAG-AFTRA Los Angeles Local and as a member of the SAG-AFTRA National Board since 2012. Id. Fisher was a member of both SAG and AFTRA from 1976 until the 2012 merger of the two unions. Id. Fisher is and has been a participant in the Health Plan. Id. At the time of the 2019 and 2020 Union collective bargaining activities for the Commercials, Netflix and TV/Theatrical collective bargaining agreements ("CBAs"), Fisher was receiving her Union pension for which persons age sixty-five and older were eligible. Id. Under the Health Plan benefit structure changes announced in August 2020, Fisher's residuals earnings were no longer credited toward her Union health benefit eligibility. Id. The SAC alleges that Fisher

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

filed the instant action to ensure that future union leaders and staff can never again breach the fiduciary duties owed to the Union and the membership. Id.

Plaintiff Belinda Balaski has been member of SAG, and then SAG-AFTRA, for over twenty years. Id. ¶ 24. Balaski receives her Union pension. Id. Balaski lost her Senior Performer lifetime secondary coverage under the Health Plan as a result of the Benefit Amendments. Id.

Plaintiffs David Andrews, Anne Lockhart, Stephen Hart, Raymond Harry Johnson, and Toby Stone-Mandelberg have been members of SAG, and then SAG-AFTRA, for over twenty years. Id. ¶¶ 23, 25-28. They receive a Union pension. Id. They lost Health Plan coverage as a result of the Health Plan's decision to exclude residual earnings for members age sixty-five or older and taking a pension. Id.

Defendant SAG-AFTRA is a labor organization as defined under 29 U.S.C. § 402. Id. ¶ 29. SAG-AFTRA resulted from the 2012 merger of the SAG and AFTRA unions. Id. ¶ 40. SAG-AFTRA is governed by its Constitution (the "Union Constitution"). Id. ¶¶ 46-52. The Union's objectives, as set forth in the Union Constitution, include protecting the rights of entertainment and media artists in all respects consistent with the overall objectives of the Union and doing all other things necessary and proper to advance and promote their welfare and interests. Id. ¶ 46. SAG-AFTRA is authorized to appoint and at any time remove and replace the Union trustees of the Health Plan. Id. ¶ 29. The Union Constitution empowers the SAG-AFTRA National Board to appoint and remove the trustees of the Union trustees of the Health Plan. Id.

At all times relevant to this dispute, Carteris served as President of SAG-AFTRA, as a SAG-AFTRA National Board member, and as a SAG-AFTRA Executive Committee member; White served as SAG-AFTRA's National Executive Director and chief negotiator and as a Union-appointed SAG-AFTRA Health Plan Trustee until June 2021; Crabtree-Ireland served as Chief Operating Officer and General Counsel of SAG-AFTRA; Rodriguez served as SAG-AFTRA's Chief Contracts Officer and Union-appointed SAG-AFTRA Health Plan Trustee; McGuire served as SAG-AFTRA's National Senior Advisor and a Union-appointed SAG-AFTRA Health Plan Trustee; Hartley-Margolin served as a Union-appointed SAG-AFTRA Health Plan Trustee; Pniewski served as a Union-appointed SAG-AFTRA Health Plan Trustee; Powell served as a member of the SAG-AFTRA National Board and as a Union-appointed Health Plan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Trustee; and Brown served as a Union-appointed Health Plan Trustee and as a member of the SAG-AFTRA National Board.  Id. ¶¶ 30-38.  The SAC alleges that the individual defendants at all times relevant hereto served as either officers, agents, shop stewards, or other representatives of SAG-AFTRA as defined under 29 U.S.C. § 402.  Id. ¶ 39.

**B.     The SAG-AFTRA Merger and the Health Plans Merger**

In January 2012, the governing boards of the Screen Actors Guild ("SAG") and the American Federation of Television and Radio Artists ("AFTRA") agreed to merge the two unions to become SAG-AFTRA.  SAC ¶ 40.  Prior to the merger, pension and health benefits were provided to the respective members of SAG and AFTRA by separate pension and welfare (health) plans, which were collectively bargained trusts subject to ERISA.  Id.

In early June 2016, the respective trustees of the SAG and AFTRA health plans agreed to merge the plans.  Id. ¶ 41.  The benefits provided under the merged plan (the "Health Plan") continued Senior Performer Coverage for SAG and AFTRA members who qualified.  Id. ¶ 43.  Senior Performer Coverage provided the Union health benefit to all Union members (and their qualified dependents and surviving spouses) who were receiving a pension from either the SAG-Producers Pension Plan or the AFTRA Retirement Fund (if eligible for a pension from both, members only needed a pension from SAG to qualify), and had a certain number of Union "Retiree Health Credits" from years of qualifying for active coverage under the health plans.  Id.  Senior Performer Coverage was secondary to Medicare unless the member regained coverage through "Earned Eligibility," which could be achieved by meeting the "Covered Earnings" threshold based on the member's total compensation for work covered by the operative CBAs, as long as the member's earnings included at least $1 in sessional earnings.  Id. ¶ 44.  This previous method of obtaining "Earned Eligibility" considered both sessional and residual earnings[1] toward qualifying for Health Plan primary coverage, with Medicare as the secondary coverage provider.  Id.

---

[1] Residual earnings are compensation paid to member performers for use of a theatrical motion picture or television program beyond the use covered by initial compensation.  SAC at 3 n. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**       **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

At the time of the health plans merger, Carteris stated that the merger would position the new health plan "to be financially sustainable for all members for years to come." Id. ¶ 41. In a letter to SAG-AFTRA members in the summer of 2016, White stated that the Health Plans Merger "is tremendous news for our membership on many fronts. Fully 65,000 souls who depend on these plans will become beneficiaries of a single, financially strengthened plan that offers automatic family coverage for all participants." Id. ¶ 42.

### C.    The Health Benefit Amendments

On August 12, 2020, the SAG-AFTRA Health Plan announced modifications (the "Benefit Amendments") to its benefit structure. SAC. ¶ 8. The Benefit Amendments increased the SAG-AFTRA Health Plan's eligibility requirements for many Union members and disqualified residuals earnings toward earnings-based eligibility for Union members age sixty-five and older taking a Union pension. Id. ¶ 9. The Benefit Amendments also eliminated Senior Performer Coverage and Age and Service Eligibility (for members forty and older with ten years vested and $13,000 in earnings) and negatively affected those members who previously earned coverage under the lower Plan II $18,040 earnings threshold. Id. ¶ 10. Additionally, the Benefit Amendments modified the earnings period for all Union members age sixty-five and older to run from October 1 to September 30, cutting short the time available to these members to obtain the sessional earnings necessary to meet the increased eligibility requirements and retroactively eliminating coverage for which some members had already qualified. Id. ¶ 11.

Plaintiffs allege that the Benefit Amendments eliminated the Union health benefits for thousands of Union members and their families who are or would be unable to qualify based on earnings if residual earnings are no longer credited toward Health Plan eligibility. Id. ¶ 12. Plaintiffs add that many members face, and will continue to face, the dramatically increased hurdles for eligibility under the Health Plan in the future. Id.

Additionally, plaintiffs allege that while employer contributions to the Health Plan for members under the 2019 and 2020 CBAs are based on a percentage of all earnings of each member and will continue to fund the Health Plan, pursuant to the Benefit Amendments, the residuals earnings of members age sixty-five and older receiving a Union pension will not count as earnings for eligibility under the Health Plan. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Plaintiffs further allege that shortly after the announcement of the Benefit Amendments, Health Plan trustee Richard Masur revealed during a Health Plan webinar that the Health Plan trustees had known of the "dire and worsening condition" of the Health Plan for two years, and that Health Plan trustee Barry Gordon stated that the Health Plan trustees had worked "nearly every day for those two years" to figure out how they could preserve the Health Plan's benefits. Id. ¶ 58.

### D.    Collective Bargaining Agreements

Funding to the SAG-AFTRA Health Plan is largely provided by employer contributions set by the terms of the Union's operative CBAs. SAC ¶ 54. In the two years leading up to the Benefit Amendments, the 2019 Commercials, 2019 Netflix and 2020 TV/Theatrical CBAs were negotiated and approved by the Union.

The collective bargaining agreements between the Union and the employers determine the elements of compensation and value provided to Union members for their work as performers, including, among other things the amount of new money, and the amount of contributions by employers to the benefit plans (including the Health Plan) based on members' earnings. Id. ¶ 54.

With respect to the 2019 Commercials and the 2020 TV/Theatrical CBAs, the Union National Board appointed a Wages and Working Conditions Committee to formulate and value the Union's proposal package. Id. ¶ 60. Thereafter, the Negotiation Committee, which was appointed by the National Board, represented the Union and membership in presenting the proposal package to the employers and bargaining the terms that determined Union members' wages, working conditions, and Health Plan funding. Id. The CBAs were then approved by the National Board and were submitted to Union members for ratification. Id.

The 2019 Commercials CBA was ratified by members on May 8, 2019. Id. ¶ 62. The 2019 Netflix CBA was approved by the National Board on July 20, 2019, and went into effect on August 1, 2019.[2] Id. ¶ 63. Finally, the 2020 TV/Theatrical CBA was ratified by members on July 22, 2020. Id. ¶ 64.

---

[2] The 2019 Netflix CBA was negotiated entirely by Union staff, and was submitted to the TV/Theatrical Negotiating Committee as a take-it-or-leave-it proposition. SAC ¶ 61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

White, Rodriguez and McGuire represented the Union and membership in the negotiations for all three CBAs, with White and Rodriguez serving as lead negotiators. Id. ¶ 65. Hartley-Margolin represented the Union and membership in the negotiations concerning the 2019 Commercials CBA. Id. Powell and Pniewski represented the Union and membership in the negotiation of the 2020 TV/Theatrical CBA. Id. Powell and Brown represented the Union and membership in voting as National Board members to approve the 2019 Commercials, 2019 Netflix and 2020 TV/Theatrical CBAs. Id.

Plaintiffs allege that White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown and Powell knew when they accepted positions to act as representatives of the Union and membership in the three 2019 and 2020 CBA negotiations and approvals, through their service as Health Plan trustees, that the Health Plan's funding condition was dire and worsening. Id. ¶ 57. Plaintiffs further allege that these defendants knew the plan's income was insufficient to support the Union health benefit structure, the plan's reserves were diminishing and the Health Plan trustees were planning massive cuts targeting Senior members to balance plan income and costs. Id. However, plaintiffs allege that in representing the Union and membership, these defendants knew but hid from the other representatives and the membership vitally material information, including the funding needed to sustain the Health Plan's benefit structure, the inadequacy of the proposal packages and the ultimately negotiated CBA terms to sustain this benefit structure, and the fundamental drastic changes to the benefit structure all Union members would soon face under the terms of the proposal packages and ultimately negotiated terms, which would result in the discriminatory elimination of the Health Plan's benefits for thousands of Union members and their families. Id. ¶ 66.

Plaintiffs further allege that had the hidden information regarding the Health Plan funding needs and acute financial condition been disclosed in the three CBA negotiations and approvals in 2019 and 2020 by the Individual Defendants to the other Union representatives, the Union negotiators would have had to make greater funding to the Health Plan an essential objective in the CBAs by one or more of the available means. Id. ¶ 72. These available means included greater employer contributions to the Health Plan based on members' earnings, increased contribution caps (that have not been raised

Moreover, it was approved by the National Board but was not submitted to the membership for ratification. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**      **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|----------|------------------------|---|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

in forty years), a greater allocation to the Health Plan versus the pension plans, wage increase diversions to the Health Plan or a direct funding by employers to cover or reduce the Health Plan deficit. Id. In sum, plaintiffs allege that had the membership known the CBAs would doom the Union health coverage for thousands of members and their families prior to the membership ratification voting, the ballot process and debate would undoubtedly have been materially different.[3] Id. ¶ 15.

### E.   Post-Benefit Amendments Activity

Plaintiffs allege that Carteris, White, and Crabtree-Ireland breached their Section 501(a) fiduciary duties by abusing their leadership positions and Union assets to advance their personal interests. SAC ¶¶ 82-99. At the time of the Benefit Amendments in August 2020, Carteris was Union President; White was Union Executive Director; and Crabtree-Ireland was Union General Counsel. Id. ¶ 82.

Following the Benefit Amendments, Fisher and other Union members formed the "SOS Health Plan" team and launched SOSHealthPlan.com as a means of providing clarity to Union members affected by the Benefit Amendments by, among other things: offering comprehensive information on the Benefit Amendments, educating participants on secondary health insurance options apart from Via Benefits (Health Plan's promoted provider), providing Union members with periodic email updates, and fostering member communication by way of a platform for rank-and-file and high-profile Union members alike to speak out about the Benefit Amendments via videos and testimonials. Id. ¶ 83.

On December 1, 2020, participants in the Health Plan brought the Asner et al v. The SAG-AFTRA Health Fund et al, Case No. 2:20-cv-10914, action in this Court, asserting breaches of fiduciary duty against the Health Plan trustees relating to the 2017 Health Plan Merger that ultimately led to the August 12, 2020 Benefit Amendments. Id. ¶ 85. White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown and Powell are defendants in Asner. Id. Plaintiff alleges that Carteris, White and Crabtree-Ireland

---

[3] Plaintiffs note that, as of the date of the SAC, the Commercials CBA was being renegotiated. SAC ¶ 74. In the SAC, plaintiffs allege that the previously hidden condition of the Health Plan is likely driving the Union's negotiating objectives. Id. Likewise, in its oppositions, plaintiffs claim that "greater funding to sustain the benefit was obtained" in the 2022 Commercials CBA. SAG Opp. at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  '**O**'  **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

deployed the Union's resources and machinery to attempt to stifle and intimidate the "righteously panicked and outraged" members.  Id. ¶ 86.

On December 4, 2020, three days after the filing of Asner, the Union disseminated an email to its membership, in which it stated that the Union members were being "misled" by a "deliberate public and social media campaign spreading misinformation and fear."  Id.  On December 14, 2020, at the direction of Carteris and White, a special meeting of the National Board was called to pass a "RESOLUTION RE: ACCURACY OF INFORMATION ABOUT HEALTH PLAN CHANGES."  Id. ¶ 88.  The resolution "resolved" to "take all appropriate action to ensure members are not deceived by misrepresentations" and "condemn[ed] those who seek to use the financial challenges of the Health Plan and the related [benefit] changes to generate fear or anger in furtherance of personal agendas."  Id.  Additionally, plaintiffs allege that defendants Carteris and White directed Union staff to disseminate a press release concerning the resolution.  Id. ¶ 89.  The press release quoted Carteris as stating that "[l]ike many scams that target the elderly, the misinformation being spread is endangering our most vulnerable members."  Id.  Finally, also on December 14, 2020, the SAG-AFTRA Communications Department released a video of SAG-AFTRA member Adam Arkin "discussing Five Facts about the Health Plan change" with links to the December 4, 2020 Union message and the Union's December 14, 2020 press release.  Id. ¶ 90.

On December 18, 2020, Fisher demanded pursuant to The Labor-Management Reporting and Disclosure Act of 1959 that the Union and National Board sue to recover damages for breaches of fiduciary duty and the duty of fair representation against: (1) the members of Union leadership who are SAG-AFTRA Health Plan Trustees; (2) the members of Union leadership who participated in the CBA negotiations and approvals with knowledge of the ongoing activity by the SAG-AFTRA Health Plan Trustees to change the benefit structure; and (3) the members of Union leadership who approved the Benefit Amendments or who have used their Union positions and the Union to support the Benefit Amendments and oppose the claims by Union members challenging the Benefit Amendments.  Id. ¶ 92.  Plaintiffs allege that, in response to Fisher's demand (the "Demand"), Carteris, White and Crabtree-Ireland further disloyally abused their fiduciary positions and the assets and machinery of the Union to protect themselves and obstruct efforts to hold Union representatives, including themselves, accountable.  Id. ¶ 93.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

The Demand was on the agenda for the Union's February 6, 2021 National Board meeting. Id. On February 5, 2021, Susan Davis of Cohen, Weiss & Simon LLP[4] ("CWS"), retained by the Union to address the Demand, informed Fisher that, at the meeting, Fisher would be requested to present the Demand and would then be directed to recuse herself during Davis's presentation to the National Board. Id. ¶ 94. Fisher is a member of the National Board. Id. Fisher requested that Davis provide the basis and authority supporting recusal, but Davis did not respond. Id.

At the February 6, 2021 National Board meeting, Fisher followed CWS's instruction and involuntarily recused herself from the discussion, reserving all rights. Id. ¶ 95. CWS recommended the National Board vote against proceeding with the claims against the members of Union leadership for the alleged misconduct, even though the National Board did not receive any materials relating to the Demand, any materials relating to the roles of members of Union leadership in the CBA negotiations, or any information reflecting CWS's pre-meeting work on the Demand leading to its recommendation to reject the Demand. Id. Plaintiff allege that the engagement of CWS to address the Demand and advise the National Board, and the use of Union assets to do so, constituted a breach by Carteris, White and Crabtree-Ireland of their Section 501 fiduciary duties given CWS's role in actively defending White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown, Crabtree-Ireland and Powell in Asner for conduct Fisher challenged in the Demand. Id. ¶ 96.

During the February 6, 2021 SAG-AFTRA National Board meeting, Fisher stated she believed the Demand did not impair her capacity or duty impartially to evaluate and consider the Demand and related information as a SAG-AFTRA National Board member and therefore she would comply with the recusal directive but only on an involuntary basis reserving all rights. Id. ¶ 97. Following a presentation by CWS and related discussions, during which Fisher was recused, the National Board voted to reject the Demand. Id.

---

[4] CWS is representing Crabtree-Ireland, White, Rodriguez, Pniewski, Hartley-Margolin, McGuire, Brown, Powell, and others in the Asner action. SAC ¶ 94.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

### F.   Allegations Against SAG-AFTRA

Plaintiffs allege that the Union, by the actions and omissions of the Individual Defendants as its designated agents and representatives, breached the duty of fair representation in connection with the the Union CBA processes and deprived plaintiffs of the benefits and rights of a fully informed collective bargaining process in accordance with the Union Constitution. Id. ¶ 100. Plaintiffs add that although the Union's Constitution requires rational determinations relating to the fundamental rights of members, the Union's actions were arbitrary or in bad faith because it is not rational for the Union to negotiate and approve members' rights under the CBAs without an informed understanding of the value of certain rights, such as the health benefit, to members. Id. ¶ 102. Moreover, plaintiffs argue that the individual defendants' actions in accepting and approving CBA terms they knew were insufficient to sustain the health benefit misled members of the Union, who based on those actions believed that the health benefit was secure. Id. In sum, plaintiffs contend that the fact that none of the Individual Defendants disclosed this information to the other Union negotiators or National Board members supports an inference of bad faith in a conspiracy of silence and acceptance. Id.

Finally, plaintiffs contend that their allegations support a plausible claim that although the Benefit Amendments were announced in August 2020, the limitations period was tolled by the Union's "affirmative denial and obfuscation of misconduct and injury" and the "conflicted sham review" of Fisher's Demand for the National Board to address the misconduct, until February 6, 2021, when Fisher's Demand was rejected. Id. ¶ 104.

## III.   REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 empowers a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also Mullis v. U. S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).

Here, plaintiffs request that the Court consider (1) A corrected copy of Plaintiffs' Prayer for Relief for the Second Amended Complaint; (2) The SAG-AFTRA Constitution, effective October 11, 2019; (3) The SAG-AFTRA Health Plan Trust Agreement, effective January 1, 2017; and (4) The 2022 Commercials Contract

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title    | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Memorandum of Agreement between SAG-AFTRA and The Joint Policy Committee, LLC, effective April 1, 2022.  See RJN at 2.

The Court finds and concludes that plaintiffs' request for judicial notice, which SAG-AFTRA and the 501 Defendants do not oppose, is appropriate.  The SAG-AFTRA Constitution, the Trust Agreement of the SAG-AFTRA Health Plan, and the 2022 Commercials Contract Memorandum of Agreement are not reasonably subject to dispute.  See Fed. R. Evid. 201(b); see also Hendrix v. KTLA, LLC, No. CV 20-3520 DMG (PJWx), 2021 WL 3051979, at *4 (C.D. Cal. Jan. 3, 2021) ("Courts have routinely taken judicial notice of collective bargaining agreements when ruling on a motion to dismiss.").  Moreover, defendants do not dispute the authenticity of these documents.  Accordingly, the Court **GRANTS** plaintiffs' request for judicial notice as to these documents.  Additionally, the Court will consider plaintiffs' corrected Prayer for Relief for the Second Amended Complaint in evaluating the instant motions to dismiss.  While the Court takes judicial notice of plaintiffs' exhibits, it does not accept them for the truth of the matters asserted therein.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

## IV.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  (internal citations omitted).

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them.  Pareto

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988).  A court must read the complaint in the light most favorable to the non-movant.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials.  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).  However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely.  Fed. R. Civ. P. 15(a).  However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

## V.    DISCUSSION

### A.    Plaintiffs' Section 159(a) Claim

Plaintiffs' second amended complaint asserts a claim for breach of the duty of fair representation ("DFR"), in violation of 29 U.S.C. § 159(a), against defendant SAG-AFTRA. SAC ¶¶ 137-144. SAG-AFTRA moves to dismiss plaintiffs' DFR claim on the grounds that (1) it is time-barred, and (2) that plaintiffs' SAC fails to state a DFR claim. See SAG MTD. SAG-AFTRA also argues that plaintiffs' DFR claim should be dismissed with prejudice.

#### 1.    Statute of Limitations

DFR claims are subject to a six-month statute of limitations. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983). The cause of action accrues "when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court." Allen v. United Food & Commercial Workers Int'l Union, 43 F.3d 424, 427 (9th Cir. 1994).

SAG-AFTRA notes that, in the order dismissing the FAC, the Court found that "at the latest, plaintiff's [DFR] cause of action accrued on August 19, 2020, when the Union admitted the Benefit [Amendments] had been in the works for two years." MTD Ord. at 13; see also SAG MTD at 16. In its previous MTD order, the Court also rejected Fisher's argument that her Section 501 demand letter tolled her DFR claim. MTD Ord. at 13. SAG-AFTRA contends that the SAC's "new allegations do not alter the conclusion that the DFR claim accrued at the latest in August 2020, nor do they establish any basis for tolling." SAG MTD at 16.

In particular, SAG-AFTRA argues that the SAC's "new assertions that the Union's response to Fisher's Section 501 Demand amounted to misconduct that should toll the limitations period" do not provide any basis for equitable tolling because equitable tolling "'focuses on whether there was excusable delay by the plaintiff.'" Id. at 19 (quoting Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002)). Additionally, SAG-AFTRA argues that the discovery rule does not apply because plaintiffs "'kn[ew] or should [have known]' of the alleged breach of duty'" as soon as the Benefit Amendments were publicly announced. SAG MTD at 20 (quoting Allen v. United Food & Commercial Workers Int'l Union, 43 F.3d 424, 427 (9th Cir. 1994)). To the extent that plaintiffs argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**     **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

SAG-AFTRA engaged in "obfuscation of misconduct and injury" that tolled the SOL, SAC ¶ 43, SAG-AFTRA notes that the SAC acknowledges that "'[s]hortly after the announcement of the Benefit [Amendments], members were informed that the Health Plan trustees had known of the Plan's financial issues and the likelihood that benefits would need to be cut for two years." SAG MTD at 21 (quoting SAC ¶ 58).

In opposition, plaintiffs argue that Fisher's "pursuit of an intra-union remedy is []relevant to tolling the statute of limitations" on plaintiffs' DFR claim because "[a] legal requirement to seek an intra-union remedy is not required for tolling." SAG Opp. at 9. Plaintiffs emphasize that while Fisher's Section 501 demand "did not expressly refer to a DFR claim," it "requested the Union and National Board . . . investigate and seek accountability for the misconduct by Union representatives that is a basis for the DFR claim." Id. at 9-10. In sum, plaintiffs contend that the "Demand constituted a good faith effort to address Plaintiff[s'] allegations of misconduct by Union representatives, which substantially overlap with the basis for the Section 501 Claim, and therefore should[,] as a matter of equity[,] toll the statute of limitations until February 5, 2021, when Plaintiff[s] learned the attempt to resolve the matter within the Union was futile." Id. at 11 (citing SAC ¶ 104).

In reply, SAG-AFTRA reiterates that plaintiffs have not alleged any basis to toll the statute of limitations. SAG Reply at 7-8. In particular, SAG-AFTRA contends that tolling is not appropriate because a Section 501 demand is not a prerequisite to filing a DFR suit, and because a Section 501 demand could not have resulted in the relief that plaintiffs seek on the DFR claim. Id. at 8-14. In sum, SAG-AFTRA argues that "Plaintiffs still have not identified any decision holding that a union member's demand for their union to take action under Section 501 can toll the SOL for a DFR claim against the union," and that plaintiffs have not distinguished "the numerous Ninth Circuit cases rejecting tolling arguments based on the alleged pursuit of 'intraunion remedies' that were not a prerequisite for filing the DFR claim." Id. at 14.

The Court again concludes that plaintiffs' DFR claim is barred by the six-month statute of limitations. At the latest, plaintiffs' DFR cause of action accrued in August 2020, with the "sudden revelation of the dramatic changes to Union health coverage and that certain Union representatives knew for years but hid from the membership the dire and deteriorating funding condition of the Health Plan." SAC ¶ 18. Accordingly, based on the allegations in plaintiffs' SAC, the statute of limitations on plaintiff's claim expired

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**        **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

at the end of February 2021.  However, plaintiffs did not file the DFR claim until August 3, 2021.

Likewise, the Court again concludes that Fisher's Section 501 demand does not provide a basis for tolling the statute of limitations as to plaintiffs' DFR claim.  While Fisher's Demand was a statutory prerequisite to plaintiffs' Section 501 claim, it fails to toll the statute of limitations on plaintiffs' DFR claim.  This is because plaintiffs' Section 501 claim is brought against individual Union officials, and seeks relief for harm to the Union.  Conversely, plaintiffs' DFR claim is brought against the Union, for harm to the members of the Union.  Fisher's Section 501 Demand cannot toll the statute of limitations on plaintiffs' DFR claim, because the Demand "could not result in the relief" that plaintiffs seek on their DFR claim.  Maurer v. Int'l Bhd. of Elec. Workers, Loc. 569, AFL-CIO, 200 F. Supp. 3d 1052, 1061 (S.D. Cal. 2016).  Moreover, equitable tolling of DFR claims is "'most appropriate when the plaintiff is *required* to avail himself of an alternate course of action as a precondition to filing suit.'"  Harris v. Alumax Mill Prod., Inc., 897 F.2d 400, 404 (9th Cir. 1990)) (italics in Harris) (quoting Conley v. Int'l Bhd. of Elec. Workers, Loc. 639, 810 F.2d 913, 915-16 (9th Cir. 1987)).  No such requirement was present here.  See Galindo v. Stoody Co., 793 F.2d 1502, 1510 n.5. (9th Cir. 1986) ("[R]esort to the grievance process should toll the limitations period only if the grievance is related to the alleged breach of duty of fair representation" and "could result in the relief sought be the employee.").

Plaintiffs also argue that "[e]ven if the Court were to find that the announcement of the Benefit [Amendments] provided a basis for the DFR claim, Plaintiffs' allegations in the [] SAC concerning the Union's sham handling of the Demand provide a further basis for the DFR claim and were not known to [] Fisher until February 5, 2021."  SAG Opp. at 11-12.  However, despite this argument, plaintiffs acknowledge that they "do not assert a separate DFR claim based on the Union's sham handling of the allegations in the Demand."  Id. at 12.  Thus, plaintiffs acknowledge that the SAC provides no basis to extend the accrual date on plaintiffs' DFR claim beyond August 2020.  Moreover, the Court has already found that Fisher's Section 501 Demand did not toll the statute of limitations as to plaintiffs' DFR claim.

In sum, plaintiffs cite no authority supporting the proposition that a Section 501 demand on a union tolls a DFR claim.  Accordingly, pursuant to the allegations set forth by plaintiffs in the SAC, plaintiffs' DFR claim is time-barred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

2.      Whether Plaintiff's Allegations State a DFR Claim

A union's duty of fair representation, which "applies to all union activity, including contract[] negotiation," is breached where the union's actions "are either arbitrary, discriminatory, or in bad faith." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (internal quotations omitted). "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46 (1998). "[A] union's conduct generally is not arbitrary when the union exercises its judgment. . . . If the challenged conduct involves the union's judgment, then the plaintiff[] may prevail only if the union's conduct was discriminatory or in bad faith." Demetris v. Transp. Workers Union of Am., AFL-CIO, 862 F.3d 799, 805 (9th Cir. 2017) (internal citations and quotation marks omitted). To state a claim "that the union's exercise of judgment was discriminatory," a plaintiff must allege "discrimination that is intentional, severe, and unrelated to legitimate union objectives." Beck v. United Food & Com. Workers Union, Loc. 99, 506 F.3d 874, 880 (9th Cir. 2007) (internal citation and quotation marks omitted). Finally, to state a claim that "the union's exercise of judgment was in bad faith," the plaintiff must allege "fraud, deceitful action or dishonest conduct." Id. (internal citation and quotation marks omitted). "Unions owe their members 'complete good faith and honesty.'" Demetris, 862 F.3d at 808 (quoting United Bhd. of Carpenters and Joiners of Am. v. Metal Trades Dep't, AFL-CIO, 770 F.3d 846, 848 (9th Cir. 2014)). "Even so, mere negligence and erroneous judgment calls cannot, by themselves, support an inference of bad faith." Demetris, 862 F.3d at 808.

To state a DFR claim "in a misrepresentation case—and thus in a nondisclosure case—plaintiffs must demonstrate 'a causal relationship between the alleged misrepresentations and their injury.'" Ackley v. W. Conf. of Teamsters, 958 F.2d 1463, 1472 (9th Cir. 1992) (quoting Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1397 (9th Cir. 1986)). "They must show that (1) absent the misrepresentations, the outcome of the ratification vote would have been different; and that (2) had it been different, the company would have acceded to the union's demands." Ackley, 958 F.2d at 1472. The Ninth Circuit has stated that "[t]he Acri test for causality, and particularly the second prong, is difficult to satisfy, and rightly so. Generally, the union's internal election and rulemaking processes are the proper vehicle, at least initially, for addressing members' complaints regarding the adequacy of union

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**       **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

representation during the bargaining process." Id. (citing Acri, 781 F.2d at 1399-1400 (Reinhardt, J., concurring)).

In its prior order dismissing the DFR claim, the Court found that plaintiff had failed to state a plausible DFR claim because plaintiff had not alleged facts demonstrating that the Union's challenged conduct was arbitrary, discriminatory, or in bad faith.  MTD Ord. at 16-17.  The Court also found that plaintiff failed to meet the causation standard. Id. at 17.

In its motion to dismiss, SAG-AFTRA argues that "Plaintiffs have not alleged any new facts that should change or otherwise undermine the Court's prior analysis."  SAG MTD at 22.  SAG-AFTRA contends that a Union "acts lawfully so long as its decisions can rationally be found to promote the aggregate welfare of the unit," and that "Plaintiffs' conclusory assertions that the Union's actions were irrational do not make it so, nor are they sufficient under federal pleading standards."  Id. at 23-24.  SAG-AFTRA also argues that the SAC fails to adequately plead causation because "there are no allegations that the Union's membership would not have ratified the negotiated agreements absent the alleged non-disclosures or that there were specific alternative proposals the Union could have made that would have increased Health Plan funding sufficiently to avoid the need for eligibility changes or benefit cuts."  See SAG MTD at 25-29.  Moreover, SAG-AFTRA claims the SAC does not adequately plead causation because the SAC fails to allege that "the employers' representatives would have agreed to [] an alternative proposal, or that [] an alternative would not have required substantial concessions in wages and other benefits that would [not] have been rejected by the majority of the Union membership [that does] not participate in the Health Plan."  Id.

In opposition, plaintiffs argue that they have plausibly alleged a DFR claim in connection with the "arbitrary" and "bad faith" prongs.  See SAG Opp. at 13-16.  With respect to the arbitrary prong, plaintiffs contend that "the Union acted irrationally, or without rational basis, in negotiating and approving members' rights under the CBAs without vitally material information concerning the health plan funding crisis."  Id. at 13. Plaintiffs also argue that the cases cited by SAG-AFTRA under the arbitrary prong are primarily summary judgment cases, and that "discovery is necessary before the Court can assess Plaintiffs' DFR claim, which is based on the concealment of material information that undermined the Union's decisions."  Id. at 13-14.  With respect to bad faith, plaintiffs contend that the SAC alleges that the Union "conspired to conceal vitally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

material information concerning [the] Health Plan funding crisis while representing the Union in three major CBA processes to obtain Health Plan funding," and that the SAC also alleges that "had the concealed information been disclosed during the CBA processes, the health plan's funding would have been an essential objective in the CBA processes and greater Health Plan funding would have been achieved." Id. at 14-15.

In reply, SAG-AFTRA argues that "the new allegations in the SAC related to the substance of the DFR claim are conclusory, and do not allege any specific union conduct to support the claim beyond what was alleged in the initial Complaint." SAG Reply at 15. With respect to the arbitrary prong, SAG-AFTRA contends that "the SAC allegations establish that the Union 'exercised its judgment' in negotiating the CBAs, which precludes a finding of arbitrary conduct; and (2) the contract terms ultimately negotiated by the Union, as alleged in the SAC, can rationally be found to promote the 'aggregate welfare' of the entire bargaining unit under the deferential standard that applies to DFR claims." Id. (quoting Demetris, 862 F.3d at 805; Addington v. US Airline Pilots Ass'n, 791 F.3d 967, 984 (9th Cir. 2015)). With respect to plaintiffs' argument that SAG-AFTRA's cites primarily to cases decided on summary judgment, SAG-AFTRA responds that "courts in this Circuit commonly consider cases decided after summary judgment where those cases establish the legal standard governing a plaintiff's claim that is at issue in a motion to dismiss." SAG Reply at 16. Additionally, SAG-AFTRA notes that "one of the primary cases the Union cited in addressing the issue of arbitrary conduct was indeed decided on a motion to dismiss." Id. (citing Demetris, 862 F.3d at 809). With respect to the bad faith prong, SAG-AFTRA reiterates that plaintiffs must allege that the "misrepresentations were material, which requires showing that the outcome of the negotiations would likely have been materially different if the information in question had been disclosed." SAG Reply at 19. SAG-AFTRA adds that "Plaintiffs cannot meet this [causation] standard because they have not alleged facts indicating that the Union could have negotiated sufficient Plan contribution increases that would have avoided the health benefit cuts." Id.

The Court again finds that plaintiffs' complaint fails to state a plausible DFR claim. Plaintiffs argue that they have plausibly alleged a DFR claim on the basis of the "arbitrary" and "bad faith" prongs. See SAG Opp. at 13-16. However, with respect to the arbitrary prong, "a union's conduct generally is not arbitrary when the union exercises its judgment." Demetris, 862 F.3d at 805. While the Benefit Amendments, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**       **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

outcome of the CBAs, may have benefited some at the expense of others, "a winners-and-losers compromise does not mean that the union has violated its duty of fair representation," Addington v. US Airline Pilots Ass'n, 791 F.3d 967, 983 (9th Cir. 2015), and the plaintiffs' allegations fail to suggest that the Union's actions were "wholly irrational," Demetris, 862 F.3d at 805.

Plaintiffs also argue that SAG-AFTRA's concealment of material information was arbitrary, and undermined the Union's decision-making processes. See SAG Opp. at 13-14. However, as noted above, with respect to DFR claims related to misrepresentation and nondisclosure, a plaintiff must allege that "(1) absent the misrepresentations, the outcome of the ratification vote would have been different; and that (2) had it been different, the company would have acceded to the union's demands." Ackley, 958 F.2d at 1472. In the SAC, plaintiffs only allege that "had the membership known the CBAs would doom the Union health coverage for thousands of members and their families prior to the membership ratification voting, the *ballot process and debate* would undoubtedly have been *materially different*." SAC ¶ 77 (emphasis added). Ultimately, plaintiffs' DFR claim is doomed by plaintiffs' failure to allege that, absent the nondisclosures, the outcome of the CBA negotiation processes would have been different. See Acri, 781 F.2d at 1397.

With respect to the "bad faith" prong, plaintiffs argue that "[t]he SAC alleges that Union representatives conspired to conceal vitally material information concerning Health Plan funding crisis while representing the Union in three major CBA processes to obtain Health Plan funding." SAG Opp. at 14-15. However, once again, plaintiffs cannot overcome the causation requirement, as the SAC only alleges that "approval processes would have been different," SAC ¶ 76, if concerns regarding the Health Plan's funding would have been disclosed prior to the CBA negotiation and ratification processes. In sum, the Court concludes that plaintiffs' DFR claim fails to plead allegations that meet the relevant causation standard.

**B.     Plaintiffs' Section 501(a) Claim**

"Section 501 sets out the fiduciary responsibilities of labor organization officers and provides a cause of action against officers who breach these obligations." Cowger v. Rohrbach, 868 F.2d 1064, 1065-66 (9th Cir. 1989). "Under section 501(a), officers of a labor organization occupy positions of trust in relation to the organization and its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**       **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|----------|------------------------|------|---------------|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

members, and have a duty to hold its money and property solely for the benefit of the organization." Id. at 1066. In turn, "Section 501(b) gives individual members of a labor organization the right to sue any officer who violates these fiduciary duties." Id. "Section 501(b) makes it clear that relief granted under Section 501 is for the benefit of the real party in interest, the union whose officers are charged with dereliction." O'Hara v. Teamsters Union Loc. No. 856, 151 F.3d 1152, 1161 (9th Cir. 1998) (internal citations and quotation marks omitted). "[S]tatutes extending federal jurisdiction, such as Section 501(b), are narrowly construed so as not to reach beyond the limits intended by Congress." Phillips v. Osborne, 403 F.2d 826, 828 (9th Cir. 1968).

A Section 501 breach of fiduciary duty claim may be brought "to recover . . . relief for the benefit of the labor organization." 29 U.S.C. § 501(b). "The real beneficiaries of a successful Section 501 action are the union and its entire membership." Kerr v. Shanks, 466 F.2d 1271, 1277 (9th Cir. 1972). "Often, if a union official's act has been authorized by constitution, bylaw, resolution, or by a vote of the membership, liability under [Section] 501 attaches only if: (1) the officer benefitted personally from the act; or (2) the act is patently unreasonable or taken in bad faith." Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers, 718 F.3d 1036, 1049 (9th Cir. 2013).

Plaintiffs' Section 501 claim appears to be premised upon the 501 Defendants' failure to disclose the SAG-AFTRA Health Fund's financial status during the negotiation and ratification of the relevant CBAs, and their failure to negotiate CBAs that would have provided sufficient funding to the Health Fund to avoid the Benefit Amendments. SAC ¶ 147. Plaintiffs allege that "had the hidden information been disclosed to the other representatives and the membership, additional Health Plan funding would have been an essential objective through [the] many means available, and the National Board and membership approval processes would have been different materially." Id. Additionally, plaintiffs' Section 501 claim challenges the Carteris, White and Crabtree-Ireland's use of their positions to support and defend the Benefit Amendments, and in doing so, to allegedly advance their personal interests. Id. ¶ 151.

In dismissing the FAC, the Court found that the FAC failed to state a Section 501 claim because the claim arising from the alleged nondisclosures sought "to recover for harm to a subset of Union members, rather than for any harm to the Union" as a whole. MTD Ord. at 24. The Court also found that the FAC failed to allege that "any provisions of the Union constitution were violated by the CBA negotiation processes, by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

outcome of the CBAs, or by the failure to disclose the coming Benefit Amendments." Id. at 24-25.

In their motion, the 501 Defendants argue that while "Section 501(b) authorizes suits 'to recover . . . relief for the benefit of the labor organization,'" 29 U.S.C. § 501(b), plaintiffs' Section 501 claim still does not allege harm to the Union, and seeks to recover for alleged harm to a subset of Union members. 501 MTD at 12. The 501 Defendants point out that Health Plan participants make up only 20% of the members represented by the Union. Id. at 13-14 (citing SAC ¶¶ 9-11, 71, 112). Additionally, the 501 Defendants argue that plaintiffs still have not alleged that any rights provided under the Union Constitution were violated. 501 MTD at 17. With respect to the challenged Union communications allegedly made by Carteris, White, and Crabtree-Ireland, the 501 Defendants contend the SAC fails to state a Section 501 claim based on these communications because "union officials are lawfully permitted to benefit indirectly from expenditures of union funds, so long as the expenditures were authorized by and for the benefit of the union," and because "even direct benefits to union officials are permissible unless the expenditures are 'manifestly unreasonable.'" Id. at 23 (quoting Carpenters Loc. Union 721 v. Limon, No. CV 18-8470 DSF (MRWx), 2020 WL 3124222, at *7 (C.D. Cal. Apr. 23, 2020). Additionally, the 501 Defendants argue that, despite plaintiffs' allegations in the SAC related to CWS, Section 501 permits dual representation of the Union and its officers. 501 MTD at 25.

In opposition, plaintiffs argue that they do not seek to recover for harm to a subset of Union members because "[t]he Union health benefit is available to all members, [because] the CBAs fund the Health Plan with employer contributions on behalf of all members," and because "[t]he Health Plan funding provisions are enforceable monetary interests of the Union." 501 Opp. at 18-19. Accordingly, plaintiffs argue that "the SAC alleges harm to the significant monetary interest of the Union." Id. at 19. Moreover, plaintiffs argue that the SAC's allegations go above and beyond those in the FAC in that "the SAC alleges that the results of the CBA processes would have been different and obtained greater funding through one or more available means had the concealed information regarding a crisis facing an important Union benefit been disclosed." Id. at 21. Plaintiffs add that "[t]he lost opportunity to address the funding crisis harmed the Union and membership *as a whole*." Id. at 22 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**      **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

Plaintiffs also argue that "[b]ad faith conduct violates Section 501," and that defendant White, in an April 2020 communication to members, "continued the dishonest conspiracy of silence to conceal the funding crisis and imminent benefit changes in bad faith against the interest of the members." Id. at 18, 23 (citing SEIU v. Nat'l Union of Healthcare Workers, 711 F.3d 970, 983 (9th Cir. 2013)). Additionally, plaintiffs contend that Carteris, White and Crabtree-Ireland are subject to Section 501 liability because they "used their Union leadership positions and Union assets to benefit themselves and against the interest of the Union." 501 Opp. at 25.[5] Plaintiffs do not argue that these activities were manifestly unreasonable. Id. at 26. Rather, they claim that they are not required to allege manifest unreasonableness given that "Plaintiffs allege the actions which cost the Union were for the very purpose of benefiting Defendants personally and were against the Union's interest." Id. (citing Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters, AFL-CIO, 82 F.3d 303, 306 (9th Cir. 1996)). Defendants also argue that the fact that courts have permitted dual representation at the pleading stage "does not address much less support dismissal of Plaintiffs' Section 501 Claim concerning the Defendants' engagement of CWS to represent and advise the Union and National Board on the Fisher Demand" because "[t]he SAC alleges the engagement of disabled counsel to advise the Union and National Board was intentional to protect and advance Defendants' personal interests against the interest of the Union." 501 Opp. at 27-29.

In reply, the 501 Defendants reiterate that "[e]ven as amended, Plaintiffs' Section 501 claim based on nondisclosures during collective bargaining still fails to allege any harm to the Union . . . [and still] fail[s] to identify any violation of a right guaranteed by the Union constitution." 501 Reply at 6. The 501 Defendants add that "Plaintiffs' SAC still fails to allege that the bargaining outcomes would have been different if the Health Fund information had been disclosed." Id. With respect to plaintiffs' argument that the Health Plan is a significant monetary interest of the Union, the 501 Defendants assert that "the law is crystal clear that employer contributions to a separate benefits fund are not union property, and thus not a basis for a Section 501 claim," and that "the SAG-AFTRA

---

[5] With respect to Carteris, plaintiffs argue that her personal interest was "in defending her boasts of leadership and achievement in the CBAs." 501 Opp. at 26 (citing SAC ¶¶ 91, 99, 104). With respect to White and Crabtree-Ireland, according to plaintiffs, their personal interest was that they "had been sued for personal liability as [] Health Plan Trustee[s] in Asner." 501 Opp. at 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**       **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | Date | July 27, 2022 |
|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Health Fund's governing statute and document confirm that employer contributions made pursuant to a CBA are held by the independently-governed Health Fund (not the Union) in trust for the benefit of Health Plan participants (not the Union)." Id. at 14-15 (citing Hearn v. McKay, 603 F.3d 897, 902 (11th Cir. 2010)). With respect to the nondisclosure claim against White, the 501 Defendants argue that plaintiffs fail to allege that White's nondisclosures harmed the Union. 501 Reply at 21. With respect to plaintiffs' claim against Carteris, White, and Crabtree-Ireland, the 501 Defendants contend that "the SAC still fails to identify any personal benefit to the three Union officials at issue," and that "the SAC does not even attempt to remedy the defect identified by the Court that Plaintiffs failed to show the expenses were 'manifestly unreasonable.'" Id. at 7 (citing MTD Ord. at 25-26). Finally, the 501 Defendants reiterate their argument that Section 501 permits dual representation of the Union and its officers through the pleadings stage. 501 Reply at 27-29.

The Court finds that plaintiffs' SAC fails to state a Section 501 claim based on defendants' nondisclosures because plaintiffs' nondisclosure claim seeks to recover for harm to a subset of Union members, rather than for any harm to the Union. See Phillips, 403 F.2d at 832 ("In requesting direct relief for certain union members only and not 'for the benefit of the labor organization,' Phillips disqualified himself from proceeding under Section 501."); see also Nellis v. Air Line Pilots Ass'n, 815 F.Supp.1522, 1542 (E.D. Va. 1993) ("[S]ection 501 requires a showing that the union itself suffered harm. As long as a union leadership remains in compliance with the union's internal policies, then the union itself suffers no harm, even if subgroups within the union are disadvantaged.").

Although plaintiffs argue that, unlike the FAC, the SAC "alleges that Defendants['] . . . bad faith conduct harmed a significant monetary interest of the Union in Health Plan funding under the CBAs," 501 Opp. at 21, the Health Plan is a "distinct legal entity separate from the union," and is "controlled exclusively by the trustees for the benefit of the plan participants and beneficiaries." Hearn, 603 F.3d at 902; see also Dkt. 27 at Ex. 2 (SAG-AFTRA Health Fund Trust Agreement).

Additionally, while plaintiffs allege that they were deprived of "a fully informed collective bargaining process in accordance with the Constitution," SAC ¶ 100, plaintiffs fail to allege that any specific provisions of the Union Constitution were violated by the relevant CBA negotiation processes, by the outcome of the CBAs, or by the failure to disclose the coming Benefit Amendments. See Ackley, 958 F.2d at 1476 ("[I]t is the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

breach of the union's internal rules that must serve as the basis for any complaint that insufficient information was provided to the membership prior to or at the time of ratification of a contract.") (addressing LMRDA Section 101(a) claim); see also Stelling v. International Brotherhood of Electrical Workers Loc. Union No. 1547, 587 F.2d 1379, 1387 (9th Cir. 1978) ("The allegation that appellees have denied the membership of the union the *constitutionally guaranteed* right to vote is a sufficient assertion of a breach of trust on the part of the appellees to invoke the jurisdiction of [Section] 501.") (emphasis added). In sum, the Court finds that dismissal of plaintiffs' Section 501 nondisclosure claim is appropriate.

With respect to plaintiffs' argument that Carteris, White, and Crabtree-Ireland breached their fiduciary duties under Section 501 because they "used their Union leadership positions and Union assets to benefit themselves and against the interest of the Union," 501 Opp. at 25, as noted previously, "if a union official's act has been authorized by constitution, bylaw, resolution, or by a vote of the membership, liability under § 501 attaches only if: (1) the officer benefitted personally from the act; or (2) the act is patently unreasonable or taken in bad faith." Servs. Emps. Int'l Union, 718 F.3d at 1049. Moreover, "[b]ad faith can be found on evidence that union officials acted contrary to the [Union's] best interest, out of self-interest, or in an unconscionable or outrageous way." Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters, AFL-CIO, 82 F.3d 303, 306 (9th Cir. 1996).

Plaintiffs' argument that Carteris, White, and Crabtree-Ireland are subject to Section 501 liability is premised on the SAC's allegations that Carteris, White and Crabtree-Ireland personally benefitted from certain communications made in support of the Benefit Amendments after they were enacted, and allegations that they personally benefitted from the hiring of CWS to advise the Union regarding Fisher's Section 501 demand given that "CWS was already defending the Health Plan trustees including White and Crabtree-Ireland in Asner." SAC ¶ 151.

In its order dismissing the FAC, the Court found that plaintiffs' claim relating to the alleged use by Carteris, White, and Crabtree-Ireland of their Union positions to benefit themselves "fail[ed] to identify how Carteris, White, and Crabtree-Ireland personally benefitted." MTD Ord. at 25. In the SAC, plaintiffs allege, inter alia, that "Carteris, White and Crabtree-Ireland had material special personal interests in defending the CBAs and actions of the Health Plan trustees in representing the Union and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**  **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

membership in the CBAs and having hidden vitally crucial information for years while plotting an ambush with the draconian Benefit [Amendments]." SAC ¶ 91. Additionally, plaintiffs' opposition brief explains that Carteris' personal interest was "defending her boasts of leadership and achievement in the CBAs," and that White and Crabtree-Ireland's personal interest was that they "had been sued for personal liability as a Health Plan Trustee in Asner." 501 Opp. at 26.

Despite plaintiffs' additional allegations and arguments on the SAC, the Court finds that the purported personal benefits that accrued to Carteris, White, and Crabtree-Ireland as a result of the challenged communications and the engagement of CWS are insufficient to state a Section 501 claim premised on bad faith.[6] Plaintiffs do not allege that Carteris, White, or Crabtree-Ireland received any personal financial benefit from the Union communications or the engagement of CWS, and are unable to point to a case that finding personal benefits of the type alleged in the SAC (which plaintiffs also refer to as actions against the Union's interest) are sufficient to state a Section 501 claim. With respect to the challenged communications, the SAC makes clear that those communications were approved by the Union's National Board. See SAC ¶ 88. Any benefit that accrued to Carteris, White, and Crabtree-Ireland as a result of those communications was indirect and incidental. Moreover, as the Court has previously noted with respect to the engagement of CWS, "dual representation of the union and union officials [is] permissible at the early stages of [] litigation." Doe #1 v. Am. Fed'n of Gov't Emps., No. CV 20-1558 (JDB), 2021 WL 3550996, at *4 (D.D.C. Aug. 11, 2021) (stating that "the Court is not aware of [] any case involving breach-of-fiduciary-duty claims where dual representation of a union and the union's officials was prohibited before or at the motion-to-dismiss stage").

Even if plaintiffs' allegations stated a personal benefit that was cognizable in the context of a Section 501 claim, "[a]uthorized conduct may violate section 501 if (a) the officer personally benefitted from the expenditure and (b) the expenditure was manifestly unreasonable." Carpenters Loc. Union 721 v. Limon, No. CV 18-8470 DSF (MRWx), 2020 WL 3124222, at *7 (C.D. Cal. Apr. 23, 2020). However, neither the dissemination

---

[6] In the context of a duty of fair representation claim against a union, the Ninth Circuit has stated that bad faith requires "fraud, deceitful action or dishonest conduct." Beck v. United Food & Com. Workers Union, Loc. 99, 506 F.3d 874, 880 (9th Cir. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

of approved communications for the stated purpose of "ensur[ing] that members are not deceived by misrepresentations," SAC ¶ 88, nor the engagement of CWS to address Fisher's Demand represent "manifestly unreasonable" expenditures.

For the aforementioned reasons, the Court concludes that plaintiffs' SAC fails to state a Section 501 claim against the 501 Defendants.

**C.     Leave to Amend**

"Generally, the Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted." <u>Winebarger v. Pennsylvania Higher Educ. Assistance Agency</u>, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019); <u>see also</u> Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).  Additionally, leave to amend is properly denied where "amendment would be futile." <u>Carrico v. City & Cty. of San Francisco</u>, 656 F.3d 1002, 1008 (9th Cir. 2011).

With respect to plaintiffs' DFR claim, SAG-AFTRA argues that amendment is futile because plaintiffs have failed to meet the applicable standards for DFR claims "over three complaints," and because the SAC's allegations "once again show that the [DFR] claim is unquestionably time barred."  SAG MTD at 29-30.  With respect to plaintiffs' Section 501 claim, the 501 Defendants argue that "leave to amend would be futile" because plaintiffs' SAC "failed to remedy the defects in their Section 501 claim identified in the Court's order dismissing the FAC, and they are plainly unable to allege facts that would do so."  501 MTD at 28.

Plaintiffs did not submit any argument regarding leave to amend in their oppositions.

With respect to plaintiffs' DFR claim, the Court finds that amendment would be futile, as plaintiffs' have been unable in successive complaints to allege facts that meet the causation standard or overcome the six-month statute of limitations.  Likewise, plaintiffs have been unable to state a cognizable Section 501 claim in successive complaints, and plaintiffs—in their briefing and in oral argument—did not proffer any further allegations that they could plead that would suggest, for example, that the 501

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**          **JS-6**

| Case No. | 2:21-cv-05215-CAS-JEMx | | Date | July 27, 2022 |
|---|---|---|---|---|
| Title | FRANCES FISHER V. SCREEN ACTORS GUILD AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | | |

Defendants' nondisclosures harmed the Union as a whole, or that Carteris, White, or Crabtree-Ireland received any personal benefits as a result of their challenged actions that could sustain a Section 501 claim.

## VI.   CONCLUSION

In accordance with the foregoing, the Court **DISMISSES** plaintiffs' second amended complaint **WITH PREJUDICE**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |